# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**ROBERT ATHEY, et al.,**

for themselves and on behalf of all others similarly situated,

Plaintiffs,

v.

THE UNITED STATES OF AMERICA

Defendant.

**Case No. 99-2051C**

(Senior Judge Smith)

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE SECOND AMENDED COMPLAINT

Defendant has filed a highly unusual, and inappropriate, motion pursuant to Rule 12(f), RCFC, to strike Plaintiff's Second Amended Complaint as "impertinent and scandalous" (Def. Motion, p. 3).

Plaintiffs' Second Amended Complaint combined the claims of the plaintiffs in *Archuleta* who were formerly employed by the Veterans Administration ("VA) with similar claims under the same statutes by a former employee of an agency *other than the 17 agencies that were settled in Archuleta*. The VA plaintiffs were severed from Archuleta by an Order of this Court. Defendant's objections relate to the addition of one plaintiff, Robin-Jean Solow, to the Second Amended Complaint, and to Ms. Solow's claim to represent a putative class of former employees of Federal Government agencies that were not settled in the *Archuleta* case Settlement Agreement.

Ms. Solow retired December 31, 1995 from the Resolution Trust Corporation, an agency that was not among the 17 agencies covered by the *Archuleta* settlement. Ms. Solow was not a plaintiff in the *Archuleta* case and was not known to plaintiffs' counsel until September 14, 2006, three and one-half months after the Court approved the *Archuleta* settlement and dismissed that case with prejudice.

Defendant's objections, seemingly, are in the nature of res judicata, issue preclusion or collateral estoppel, or a time-bar premised on the running of the Statute of Limitations. However, pursuant to Rule 12 (b), these objections more appropriately should be raised as affirmative defenses in the Answer, or in a motion to dismiss if they are plainly meritorious on their face. Based on the facts of this case, defendant's objections are not appropriate as a motion to strike pursuant to Rule 12(f) on the ground that Plaintiffs' Second Amended Complaint is "impertinent and scandalous". Defendant's motion is plainly out of bounds.

Therefore, plaintiffs respectfully submit that defendant's motion should be denied. Defendant has an opportunity to plead such objections in an appropriate manner.

## I. ALTERNATIVELY, NEW CLAIMS FOR FORMER EMPLOYEES WHO WERE NOT COVERED BY THE SETTLEMENT AGREEMENT ARE NOT BARRED BY RES JUDICATA, OR COLLATERAL ESTOPPEL OR ISSUE PRECLUSION

Alternatively, plaintiffs respectfully submit that the motion should be denied for the following reasons:

The *Archuleta* case began as an action against all agencies of the United States to remedy violations of 5 U.S.C. § 5551(a) with respect to the computation of lump-sum payments for unused annual leave when employees retire, separate, or die. *See*, Complaint and Amended Complaints in *Archuleta et al. v. United States*, No. 99-205C. Ultimately,

more than one hundred (100) putative class representatives became named plaintiffs; among them there were more than eighty (80) former employees of the 17 largest Federal agencies, and eight (8) former employees of the VA. After many years of negotiation, the parties agreed to settle the claims of the former employees of the largest 17 Federal Government agencies in the *Archuleta* case which was embodied in a Settlement Agreement approved by this Court on June 1, 2006.

The Settlement Agreement explicitly deals ONLY with the claims of former employees of those 17 agencies that are specifically identified in Exhibit 4 to the Settlement Agreement. Thus, Paragraph I of the Agreement specifies the "Settlement Class Definition" as: "All civilian employees who retired, died, or separated beginning April 7, 1993 and before September 7, 1999 from employment by an agency, establishment or instrumentality thereof of the 17 federal agencies identified in Exhibit 4…" (Appendix, Vol.1, p.2, to Plaintiffs' Motion For Final Approval of Settlement). Paragraph II(C) defines the class as "the named plaintiffs other than those employed by the Department of Veterans Affairs and a person who falls within the definition of the Archuleta Settlement class specified in Paragraph I…".

Footnote 1 to the "Settlement Class Definition" states: "The parties have agreed to sever the issues relating to former employees of the Department of Veterans Affairs."

No mention is made of employees of agencies other than the 17 listed agencies.

Paragraph IX of the Agreement is entitled "Interpretation and Enforcement". Subparagraph A provides: "This Settlement Agreement sets forth the entire agreement of the parties *with respect to the subject matter hereof as to all potential class members*

*formerly employed by any of the agencies listed in Attachment 4 and/or their successors and assigns*." (Emphasis added). Again, no mention was made of any other agencies.

Paragraph X (A), entitled "Jurisdiction of the Court", provides that "a Final Judgment, dismissing with prejudice, pursuant to the terms of this Settlement Agreement and Rule 41(a)(1)(B) of the Rules of the Court of Federal Claims, this case and all opt-in claims that have been made or that will be made within the time specified in the Distribution Plan in the litigation *with respect to the members of the Archuleta Settlement class or their successors and assigns*, shall be entered, subject to severance by the Court of all claims enumerated in Footnote 1" (emphasis added). The language specifically connects the "Final Judgment" dismissing this case and all opt-in claims "with prejudice" only to the "members of the Archuleta Settlement class". As demonstrated above, the "Archuleta Settlement Class" is defined in Paragraphs I and II(C) of the Agreement as composed of "the named plaintiffs" and the former employees of the 17 agencies listed in Exhibit 4. No mention is made of agencies that were not included on the list, or their former employees.

Finally, Paragraph XI, entitled "Release", provides as follows: "This Settlement Agreement shall constitute a full and complete release of all claims brought or which could have been brought against the United States, or any other agencies or instrumentalities of the United States, or any agents, employees, or officers thereof arising from the subject matter of the litigation *with respect to potential class members formerly employed by any of the agencies listed in Exhibit 4 and/or their successors and assigns*." (Appendix, Vol. 1, p. 23; emphasis added). The specificity of the agreed-upon "release" terminology, limiting

its application only to former employees of the 17 agencies listed in Exhibit 4, is self-evident.

Plainly, as demonstrated by the explicit wording of the Settlement Agreement, the resolution of the *Archuleta* case as approved by this Court did not resolve any class action claims that could be brought in the future: (1) by persons who were not named plaintiffs in *Archuleta;* (2) who were formerly employed by Federal Government agencies other than the 17 agencies listed in Exhibit 4; and (3) who were formerly employed by the Department of Veterans Affairs.

Inasmuch as the Court approved the agreement of the parties to sever the claims against the VA, plaintiffs' counsel then filed the First Amended Complaint in *Athey et al. v. United States,* which emerged as a new, distinct case (No. 2051C) that addressed only the claims of the former VA employees with respect to the computation of the lump-sum payment for unused annual leave under 5 U.S.C. § 5551(a). Thereafter, when Ms. Solow presented her claim as a former employee of the Resolution Trust Corporation (which was not one of the 17 agencies settled in *Archuleta*), plaintiffs' counsel amended the complaint in *Athey* to include the claims of former employees of other Federal Government agencies with respect to the computation of their lump-sum payments under the identical statute.

During the multi-year litigation and settlement negotiation of the *Archuleta* case, the parties never requested the Court to resolve any class certification issues with respect to former employees of the Resolution Trust Corporation and any Federal Government agencies other than the 17 agencies listed in Exhibit 4 to the Settlement Agreement. There are some smaller Federal agencies with far fewer potential class members than the 150,000 potentially eligible former employees of the 17 largest agencies, but defendant never

presented the Court with a motion for summary judgment, or with a motion under RCFC Rule 12(b), to dismiss any claims relating to those smaller agencies. Moreover, defendant never requested the Court to resolve any procedural issues, or any issues at all for that matter, with respect to the merits of the claims of former employees of any Federal Government agencies other than the 17 agencies listed in Exhibit 4. Not one shred of evidence either in favor of, or in opposition to, liability for miscalculation of lump-sum payments by any of the smaller agencies was presented to the Court during the entire history of the litigation. In all fairness, claims relating to former employees of any Federal Government agencies other than the 17 largest agencies were never actually litigated in *Archuleta*.

In sum, by its affirmative participation in consenting to the Settlement Agreement and urging the Court to adopt that specific agreement relating to the 17 identified agencies without addressing the merits of any potential claims of former employees of any other agencies, defendant simply agreed in *Archuleta* to bypass any resolution of the potential future claims of other employees. Plainly, the dismissal with prejudice barred the named plaintiffs (other than the VA plaintiffs) and the members of the well-defined "Archuleta Settlement Class" from bringing a subsequent action with respect to the subject matter of the case, or from relitigating the merits of the approval of the *Archuleta* Settlement Agreement, but res judicata does not apply to Ms. Solow or to any other members of the putative class that she attempts to represent. The terms of the definition of the Settlement Class quoted above from Paragraphs I and II (C) of the Agreement, and the terms mandating "Interpretation and Enforcement"," Final Judgment", the "Jurisdiction of the Court", and the "Release" of individual claims quoted above from Paragraphs IX (A), X

(A), and XI, speak for themselves with undeniable clarity. In no way could it be said that such terminology constitutes res judicata as applied to a claim brought by a new plaintiff, such as Ms. Solow, in the *Athey* case on behalf of former employees of the Resolution Trust Corporation and other small agencies that were not among the 17 listed agencies. The parties to *Archuleta* and to the instant case obviously are not identical or in privity, the *Archuleta* case did not proceed to final judgment on the merits with respect to former employees of smaller agencies, and the claim asserted by Ms. Solow in the case at bar certainly is not based on the same set of transactional facts as the facts in *Archuleta* inasmuch as the policy and practices of the Resolution Trust Corporation or any of the other smaller agencies was never litigated in any manner in *Archuleta* with respect to the computation of lump-sum payments to their employees. *Land Grantors In Henderson etc. v. United States*, 64 Fed. Cl. 661, 714 (2005).

Nor is a new plaintiff barred from litigating such claims by virtue of collateral estoppel or issue preclusion. *See*, *Id.*; *Franklin Savings Corp. v. United States*, 56 Fed. Cl. 720, 736 (2003), *aff'd*. 97 Fed. Appx. 331 (Fed. Cir. 2004); *Dana III v. E.S. Originals, Inc.,* 342 F.3d 1320 (Fed. Cir. 2003); *Armour of America v. United States*, No. 04-1731C (Ct. Cl. Oct. 17, 2006). It is well-settled that issue preclusion bars re-litigation of issues only that were "actually litigated and necessarily determined by a court." *Davis & Cox v. Summa Corp*., 751 F.2d 1507, 1518 ( 9th cir. 1985) (citing *Montana v. United States*, 440 U.S. 147,153 (1979)).

Defendant cites *Valerio v. Boise Cascade Corp.,* 80 F.R.D. 626 (N.D. Cal; 1978), aff'd, 645 F.2d 699 ( 9th Cir. 1981), cert. denied, 454 U.S. 1126 (1981), but that decision is distinguishable on its face. In *Valerio*, plaintiffs were included in the definition of the class

that was certified pursuant to a settlement agreement approved by the court, but they did not opt-out from that class as was their right pursuant to Rule 23, FRCP. Four years later, they brought an action attempting to reopen the class action settlement that covered them, but the court barred the claims on grounds of "finality".

By contrast, Ms. Solow was not a named plaintiff in *Archuleta*, and she was not a member of the "Archuleta Settlement Class" because she was not employed by one of the 17 agencies.

In addition, there is even further irrefutable evidence that the class action claims contained in the original and amended complaints in Archuleta relating to the agencies other than the 17 listed agencies were not resolved with finality. There were five (5) named plaintiffs in the *Archuleta* case who were former employees of smaller Federal agencies, such as the Interstate Commerce Commission, the Nuclear Regulatory Commission, and the Arms Control and Disarmament Commission that were not included in the list of 17 larger agencies. But, defendant explicitly agreed to include *all named plaintiffs* as individuals in the definition of the "*Archuleta* Settlement Class" together with any eligible former employees of the 17 agencies who file a timely claim in the future with the settlement administrator. Defendant's agreement in this respect permitted those five named plaintiffs who were not employed by one of the 17 listed agencies to participate individually as members of the "*Archuleta* Settlement Class". Their claims as putative class representatives were mooted. Paragraph II of the Settlement Agreement, entitled "Definitions", provides: "For purposes of this Agreement, the terms set forth below will have the following meanings:…**C.** "Archuleta Settlement Class member" or "class member" means *the named plaintiffs other than those employed by the Department of*

*Veterans Affairs* and a person who falls within the definition of the Archuleta Settlement class specified in Paragraph I, or their heirs and/or their legal representatives, and who elects to opt-into the settlement class by submitting a claim pursuant to the directions set forth in the Distribution Plan" (emphasis added).

Under these circumstances, and considering the specific terms of the Settlement Agreement quoted above, Ms. Solow's claim as a former employee of an agency not listed in Exhibit 4 is not barred by res judicata or issue preclusion.

## II. MS. SOLOW'S CLASS ACTION CLAIM AS A FORMER EMPLOYEE OF AN AGENCY OTHER THAN ONE OF THE 17 LISTED AGENCIES IS NOT BARRED BY THE STATUTE OF LIMITATIONS

Ms. Solow retired from the Resolution Trust Corporation on December 31, 1995, and thus her claim normally would be barred by the Statute of Limitations, 28 U.S.C. § 2501. However, the Supreme Court in *American Pipe v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), established an equitable tolling rule that is applicable here. Under the tolling doctrine of *American Pipe*, relevantly similar claims of putative plaintiffs are tolled during the pendency of a class action suit in order to further one of the fundamental purposes of Rule 23, FRCP, namely, the avoidance of a multiplicity of individual suits being filed with respect to the same substantive claims.

In *American Pipe*, the Court noted: "Not until the existence and limits of the class have been established does a class member have any duty to take note of the suit or to exercise any responsibility with respect to it in order to profit from the eventual outcome of the case" 414 U.S. at 552. Putative class members can rely on the filing of the class action to vindicate their rights without filing protective actions of their own to prevent time-bars until the court has ruled on viability of the initial class action and the "limits of

the class". As declared in *American Pipe,* and in the subsequent reaffirmation of the doctrine in *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 349, 103 S.Ct. 2392, 76 L.Ed.2d 628(1983), the suspension of the time-bar would not violate the underlying policy interests protected by the Statute of Limitations, and it *would* promote the policy purposes of Rule 23. The Court reasoned that the defendant is not prejudiced by the tolling rule in such circumstances because the filing of the initial class action complaint serves to notify the defendant of the specifics of the litigation it would have to defend against, whereas a decision not to toll the limitations period would result potentially in a multiplicity of duplicative protective actions.

*American Pipe*, of course, was decided in the context of opt-out class actions under the Federal Rules of Civil Procedure, and specifically involved intervention by new class representatives following the denial of class status to the original self-declared class representatives. *American Pipe* tolling principles are applicable to the filing of a new class action even where class certification was denied in the prior suit provided that the denial of class certification in the prior suit was based on the lead plaintiffs' deficiencies to serve in a representative capacity. Such tolling, however, is not applicable where certification was denied based on deficiencies in the purported class itself. *See*, *Yang v. Odom*, 392 F.3d 97 (3d Cir. 2004)(tolling permitted where the court denied class certification in the earlier class action only because of a deficiency in the class representative; Circuit Judge Alito concurred in the result with respect to permitting tolling where prior class certification denial was not based on deficiencies of the class itself); *Catholic Social Services, Inc. v. Immigration and Naturalization Service*, 232 F.3d 1139(9th Cir. 2000)(tolling permitted where the earlier class action was dismissed due to

ripeness concerns, not because of any deficiencies in the class itself). Significantly, with respect to defendant's objections to Ms. Solow's claim, the Ninth Circuit in *Catholic Social Services* noted that tolling would not be applicable where the later class action case "is no more than an attempt to relitigate the correctness of the earlier class certification decision". *Id.,* 232 F.3d at 1147.

In the case at bar, plaintiffs respectfully submit: (1) as the putative representative of former employees of smaller agencies not listed in Exhibit 4, Ms. Solow does not attempt to relitigate the correctness of this Court's decision in *Archuleta;* (2) the Court did not resolve any class action issues with respect to the smaller agencies; and (3) the settlement class in *Archuleta* unquestionably did not include Ms. Solow.

In *Yang v. Odom*, the Third Circuit held (392 F.3d at 112):

> Since *American Pipe*, it has been well-settled that would-be class members are justified—even encouraged—in relying on a class action to represent their interests with respect to a particular claim or claims, and in refraining from the unnecessary filing of repetitious claims. See *American Pipe*, 414 U.S. at 550. The policy objectives of the class action devices—efficient deployment of court resources and the ability to consolidate claims which would otherwise be too small to warrant individual lawsuits—continue to obtain after the rejection by a court of the proposed class representatives.
>
> Drawing the line arbitrarily to allow tolling to apply to individual claims but not to class claims would deny many class plaintiffs with small, potentially meritorious claims the opportunity for redress simply because they were unlucky enough to rely upon an inappropriate lead plaintiff. For many, this would be the end result, while others would file duplicative protective actions in order to preserve their rights lest the class representative be found deficient under Rule 23. Either of these outcomes runs counter to the policy behind Rule 23 and, indeed, to the reasoning employed by the Supreme Court in *American Pipe* and *Crown, Cork & Seal*.

In *Land Grantors*, *supra*, at 714, this court had the opportunity to consider the tolling principles of *American Pipe* and its progeny. The case at bar presents the issue in the context of a subsequent class action brought by Ms. Solow who was not a party to,

nor covered by, a prior class action settlement. The principles enunciated by these decisions are fully applicable to class actions such as the instant case under Rule 23, RCFC. The objectives of Rule 23, RCFC, are furthered by an appropriate application of tolling by restraining individual putative class plaintiffs from rushing to the courthouse to file their own class action for fear of the running of the Statute of Limitations. Judicial economy and harmony in the decision making process are promoted by adoption of this eminently reasonable tolling principle.

In *Archuleta*, the Government settled the case by insisting on narrowing the scope of the initial allegations of the case in order to resolve the claims of potentially 150,000 former employees of the 17 largest agencies **without litigating or adjudicating in any way the claims that were presented later by Ms. Solow in *Athey* with respect to employees of other smaller agencies**. The Court dismissed the *Archuleta* action with prejudice, based in part on the Government's agreement, not because of any deficiencies of the class action itself, but rather because the class settlement was approved as fair, reasonable and in the best interests of the specific class that was carefully and fully defined in the paragraphs I, II (C), IX(A), X(A), and XI of the Settlement Agreement. The Government cannot be heard now to claim that the Settlement Agreement to which it agreed barred with finality any and all future claims by persons who were not named plaintiffs and who were not former employees of the 17 listed agencies.

Ms. Solow's claim with respect to computation of a lump-sum payment for unused annual leave pursuant to 5 U.S.C. § 5551 began to run on January 1, 1996 and continued for three years, three months and seven days until April 7, 1999 when the Archuleta case was first filed containing a class action claim against *all agencies* of the

United States under precisely the same statute, thereby triggering the *American Pipe* tolling doctrine. Ms. Solow's claim was tolled until the Court approved the settlement on June 1, 2006. The Statute of Limitations began to run again for approximately four additional months until Ms. Solow's claim was filed in this court on September 29, 2006. In total, adjusting for the period of time that her claim was tolled pursuant to *American Pipe* tolling principles, Ms. Solow's claim was filed three years, seven months and six days after her claim arose when she retired from the Resolution Trust Corporation, well before the expiration of the six-year limitations period of 5 U.S.C. § 2501.

**III. <u>DEFENDANT'S CLAIM THAT PLAINTIFFS' AMENDED COMPLAINT WAS FILED IN VIOLATION OF RCFC RULE 15 (A) IS WITHOUT MERIT</u>**

Defendant also complains that plaintiffs filed a Second Amended Complaint improperly because they did not seek leave of Court or written consent from the Government.

The Court entered its Order permitting severance of the claims of VA employees, and directed plaintiffs to file "an Amended Complaint" in a new case with a separate docket number. Plaintiffs then filed their initial Complaint in the new case of *Athey et al. v. United States* on June 19, 2006, but plaintiffs' counsel erroneously misnamed it as "*First Amended* Class Action Complaint For Money Damages" (emphasis added). The appropriate caption should have been "Plaintiffs' Class Action Complaint For Money Damages". Thereafter, defendant sought and received an unopposed enlargement of time within which to file its Answer by October 20, 2006. On September 29, 2006, plaintiffs amended their initial Complaint for the first time, but plaintiffs' counsel perpetuated the earlier, erroneous misnomer by entitling it as "Second Amended Class Action Complaint For Money Damages".

Inasmuch as plaintiffs' amendment was filed *before* defendant filed an Answer or other responsive pleading, plaintiffs were in conformity with both the letter and the spirit of RCFC Rule 15(a) by amending their initial Complaint in *Athey* "once as a matter of course at any time before a responsive pleading is served" without seeking leave of Court or written consent from the defendant. Moreover, plaintiffs' counsel consulted appropriate court personnel before filing the amendment to ensure that leave of court was not required under these circumstances.

**IV. <u>PLAINTIFFS HAVE NO OBJECTION TO SEVERANCE OF MS. SOLOW'S CLASS ACTION CLAIM AS CLASS REPRESENTATIVE OF FORMER EMPLOYEES OF OTHER THAN THE 17 LISTED FEDERAL AGENCIES</u>**

Ms. Solow's class action claim with respect to the computation of lump-sum payment for unused annual leave rests entirely upon the same statute—5 U.S.C. § 5551—as the claims of the former VA employees. Therefore, plaintiffs' counsel believed it was appropriate to combine those claims into a single Amended Complaint. However, defendant asserts that the agreement to sever the VA plaintiffs into a separate case was "advisable because VA employees are governed by different statutes relating to annual leave issues, as well as specific regulations promulgated by the Secretary of Veterans Affairs". (Def. Mot. To Strike, p. 4).

In view of defendant's strenuous objection, in the interests of comity plaintiffs have no objection to severance of Ms. Solow's claims (and the claims of any other similarly situated former employee who was not employed by the VA) into a separate case in order to avoid what defendant terms is "an element of unnecessary confusion". Thus, we simultaneously have filed "Plaintiffs' Motion For Severance Of the Claims of Robin-Jean Solow", together with a Proposed Severance Order as Exhibit 1.

In the event the Court agrees with this procedural approach and grants the severance of Ms. Solow's claim, plaintiffs will: (1) file a new Complaint within ten days in the new *Solow* case confined to class action issues pertaining only to former employees of agencies not listed in Exhibit 4 of the *Archuleta* settlement, and (2) file another Amended Complaint in *Athey* that will be confined to class action issues only with respect to VA employees.

**V. CONCLUSION**

The underlying question that completely refutes defendant's inappropriate motion to dismiss plaintiffs' Second Amended Complaint is as follows: if the United States intended that this Court's dismissal of *Archuleta* with prejudice would serve as a complete bar to future actions by persons who were NOT employed by any of the 17 agencies listed in Exhibit 4, why would it agree to specific language contained in the "Definitions", "Interpretation and Enforcement", "Jurisdiction of the Court", and "Release" clauses of the contract that the class action claims ONLY of former employees of the 17 agencies listed in Exhibit 4 were settled in the *Archuleta* Settlement Agreement?

WHEREFORE, plaintiffs respectfully submit that defendant's Motion To Strike Plaintiffs' Second Amended Class Action Complaint as "impertinent and scandalous", pursuant to RCFC, Rule 12(f), be denied, and that the class action claims of Robin-Jean Solow be severed pursuant to RCFC, Rule 21.

Respectfully submitted,

s/Ira M. Lechner
Ira M. Lechner

September 26, 2006

Attorney for Plaintiffs
19811- 4th Place
Escondido, CA 92029
Telephone: (858) 864-2258