# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **ROBERT M. ATHEY, et al.,**<br><br>for themselves and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>THE UNITED STATES OF AMERICA<br><br>Defendant. | **Case No. 99-2051C**<br><br>PLAINTIFFS' CORRECTED REPLY TO DEFENDANT'S MOTION FOR ENTRY OF THE PROPOSED PROTECTIVE ORDER<br><br>(Senior Judge Smith) |

## I. INTRODUCTION

### 1. Background of Disclosure during the *Archuleta* case

The case at bar was part of the *Archuleta* case. Before any settlement was agreed to, without objection and without any demand for the entry of a protective order, the government produced several hundred of pages of detailed information and data relating to the general practices of 17 federal agencies as to each agency's pay practices and pay policies. This information and data released to Plaintiffs' counsel specifically related to agency pay policies and practices as to the computation and payment of lump-sum payments for unused annual leave to employees who had retired, died, or separated. In addition, as requested by Plaintiffs' counsel, OPM disclosed specific pay records as to the named individual Plaintiffs without the entry of any protective order and without releasing records of any other individual employees. None of the information as to the general salary and employment procedures of the 17 agencies that was disclosed to Plaintiffs' counsel involved any information at all as to the names, addresses, social

security numbers or individual wages of any former employees other than the named Plaintiffs in the *Archuleta* Complaint.

After a Settlement Agreement had been reached and approved by this Court, OPM and 17 of the largest federal agencies involved in the settlement produced detailed individualized information to Plaintiffs' counsel, and to the independent Settlement Administrator, in order to compute and pay the claims of members of the class. The information released at that time consisted of: 1) the names, social security numbers, last known home addresses, job classification, and wage grade of over 100,000 former employees, many of whom had been employed in classified positions at agencies such as the Department of Defense and the State Department. The disclosure of *that unique personal information* was governed by a "PRIVACY ACT PROTECTIVE ORDER" that was drafted by Ms. Snyder and accepted without change by Plaintiffs' counsel (Plaintiffs' Exhibit 1 attached hereto). This Court signed the *Archuleta* Privacy Act Protective Order as proposed on June 1, 2006. Two years has passed since the Archuleta Protective Order was issued. Although hundreds of thousands of units or "bytes" of confidential personnel data has been exchanged between the 17 agencies, OPM, Plaintiffs' counsel, and the Settlement Administrator during this period of time, not one breach of the confidential information has occurred.

**2. The State of Discovery In The *Athey* Case At The Present Time and Defendant's Demand for the Entry of an Unwarranted Protective Order**

Plaintiffs served their First Set of Document Requests upon Defendant on January 31, 2008 (Plaintiffs' Exhibit 2). The document requests are divided into two parts:

(1) In Document Requests 1 and 2, the 18 individual named Plaintiffs request *their own personal pay records* for the last year of their employment by the VA as well as the

record of "retroactive or supplemental payments, if any" paid to them as employees after they retired from the VA. Defendant seeks a restrictive Proposed Protective Order with respect to these records despite the fact that there is a specific exemption in the Privacy Act which recognizes that an individual is entitled under law to obtain a copy of his or her own records without any restrictions. Instead, Defendant's unwarranted Proposed Protective Order, in the guise of protecting "sensitive information", would violate the Privacy Act's protections of the rights of the individual Plaintiffs to access their own records. Defendant's Proposed Protective Order would bar them from sharing their own personal pay records even with their spouse, personal attorney, accountant, financial advisor, or any other person without the government's, or the Court's, specific permission.[1]

(2) All of the remaining documents requested by Plaintiffs relate to general agency pay practices, pay policies, regulations, blank forms, bulletins, or instructions directed to computer operators and payroll or Fiscal Department clerks which describe the VA's institutional pay practices during the period from April 7, 1993 to the present time <u>only as to the payment of lump-sum payments for unused annual leave</u>.

Defendant responded to these requests by mail, dated May 22, 2008, by agreeing to produce many. if not most, of the documents requested "without waiving any objections" (Plaintiffs' Exhibit 3). However, Defendant then made a dramatic turn-about and refused to produce any of the documents it had already agreed to produce without the entry of a radically restrictive Protective Order that is unprecedented in its scope and

---

[1]. When Plaintiffs served defendant with their First Set of Document Requests, the term "Plaintiffs" within that document was defined to include the persons who were listed as additional plaintiffs in their Motion to Add Additional Plaintiffs. However, this Court denied Plaintiffs' Motion to Add Additional Plaintiffs, thus voiding the expanded definition of the term "Plaintiffs". Plaintiffs concede that Document Requests 1 and 2 therefore are limited to the 18 named Plaintiffs in the caption of the Complaint.

application. On June 26, 2008, Defendant filed its Motion for Entry of the Proposed Protective Order, along with the specific Proposed Order which detailed its terms. Thereafter, counsel for the parties engaged in a telephone conversation in an attempt to resolve the dispute without success.

**3. The Extreme Measures Contained in Defendant's Proposed Protective Order Attempt To Shield the VA's Violations of Law from the Public, the Legal Community, Putative Class Members, the Congress, and the Media**

Defendant's Proposed Protective Order contains extreme measures with respect to VA documents that are maintained and promulgated in the normal course of business. Incredibly, the Proposed Protective Order would apply even to VA regulations that already are in the public domain. A summary of the key elements of this bureaucratic overreach is as follows:

1) The Protective Order would apply to all "confidential, privileged, or sensitive personal information (as such term is defined in 38 U.S.C. § 5727 (19)), disclosed in discovery or other proceedings in this case".
2) Material shall be deemed "Confidential Material" whenever Defendant says that it is "confidential", as described in Paragraphs 3 and 4 of the Protective Order, simply by affixing such a label to the material or informing Plaintiffs' counsel that the material is "Confidential". Defendant is not required to justify its designation at that time, nor is Defendant required at that time to obtain a Court Order approving of its unilateral designation.
3) Once any document or material is designated unilaterally by Defendant as "Confidential", Plaintiffs counsel then is required to "maintain, transmit and store all such data in encrypted form" only in Plaintiffs' counsel's office, using certain certified encryption programs pre-approved exclusively by Defendant. No person shall be allowed to remove the documents, or make a copy or summary of the material, without prior approval of the Court.
4) In the event of any "data breach" of any document unilaterally marked as "Confidential" by the Defendant, Plaintiffs must comply with specific procedures and must engage at their own expense an "independent company, pre-approved by the VA" to conduct a "risk analysis", and to recover the documents in cooperation with law enforcement and other government personnel.
5) None of the documents or data unilaterally marked as "Confidential" shall be disclosed to any of the putative members of the Class, the media, the Congress, attorneys other than Plaintiffs' counsel, or to any other members of the public.

If any of the documents or data is disclosed to any of the 18 named Plaintiffs, they must not divulge any portion of those documents to any other person such as their spouse, their personal attorney, financial advisor, accountant, etc., without being subject to penalties.

6) Subject to order of the Court, every "Confidential" document or documentary data must be placed under seal "together with that portion of any pleading, motion, deposition, transcript or other document submitted or presented to or filed with the Court containing Confidential material".

7) In order for Plaintiffs to use any such material in open court or at trial, "orally or through documents", Plaintiffs must seek a Court Order if the government does not "stipulate as to procedures for use of such Confidential material in deposition or Court proceedings".

8) Plaintiffs would be required "on an appropriate showing" to seek and obtain leave from the Court "to disclose documents or other discovery material beyond the terms of this Protective Order". Plaintiffs are not precluded "from objecting to the designation of documents or other discovery material as Confidential material. In such an event, the United States "shall have the burden to file a motion for a Protective Order demonstrating that there is good cause to designate the documents or materials as such and they properly are subject to treatment under this Protective Order" subject to an elaborate, detailed procedure preceding such a challenge. However, "[u]ntil the Court rules on the party's challenge, all parties shall provisionally treat that challenged material as Confidential material".

## II. THE LEGAL STANDARD FOR "GOOD CAUSE"

As Judge Sweeney recently summarized in *AG Innovations, Inc. et al. v. United States*, p. 11 (No. 05-776C; May 30, 2008):

> In order to establish "good cause," a party must show "that the discovery request is considered likely to oppress an adversary or might otherwise impose an undue burden." Sparton Corp. v. United States, 44 Fed. Cl. 557, 561 (1999)…Thus, broad allegations of harm, unsubstantiated by specific examples, are insufficient to justify issuance of a protective order. Forest Prods. Nw., Inc., 62 Fed. Cl. at 114; see also Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986) ("[T]he party seeking the protective order must show good cause by demonstrating a particular need for protection."); 8 Wright, Miller & Marcus, supra, § 2035 ("[C]ourts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements, in order to establish good cause.").

## III. THE PRIVACY ACT GUARANTEES THE NAMED PLAINTIFFS UNRESTRICTED ACCESS TO THEIR OWN PAY RECORDS

Section 552a(d) of the Privacy Act of 1974, as amended (5 U.S.C. § 552a(d)), allows individuals to seek untrammeled access to official records about themselves without any restrictions placed on the use of that information as is contained in the Proposed Protective Order. It provides that "upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system", each agency that maintains a system of records shall permit him "to review the record and have a copy made of all or any portion thereof in a form comprehensible to him…"

Plaintiffs' First Set of Document Requests only seeks the final year's pay records of each of the 18 named Plaintiffs. There is no request for any personal information as to any other putative class member. Of course the Court has not ruled on the issue of class certification so there is no need at this nascent stage of the litigation to enter, or even consider, any Protective Order which ultimately would be required to protect the personal records and identity of the tens of thousands of putative class members during the administration of damages to the Class.

Defendant claims that information with respect to the final year pay records of the 18 named Plaintiffs is "sensitive information regarding former employees of the Department of Veterans Affairs (VA), including information such as the names and addresses of former employees, wage and position information" in order to justify its refusal to produce the requested documents without the entry of the Proposed Protective Order. But, the names, addresses, job classification, and last place of employment of each of the 18 named Plaintiffs already are a matter of public record as contained in Exhibit 1

attached to the Plaintiffs' Fourth Amended Class Action Complaint, with their Social Security numbers redacted.[2]

Defendant's demand for a restrictive protective order in these circumstances does not remotely satisfy the requisite legal standard under RCFC 26 (c) of "just cause" that "justice requires" in order to justify a refusal to produce such relevant documents that have been requested pursuant to RCFC 26 (b)(1). *As to the named Plaintiffs' own pay records* in order to assist them to prove that they were not paid the proper amount of a lump-sum payment for unused annual leave, there is no reason whatsoever for the entry of any Protective Order inasmuch as those Plaintiffs have a statutory right to access and to use their own pay records without any restrictions.

Nor can Defendant gain any support from the recently enacted Veterans Benefits, Health Care, and Information Technology Act of 2006, 38 U.S.C. §§ 5722 *et seq* (hereinafter referred to as the "Information Technology Act"). The Information Technology Act requires the VA to implement agency-wide information security procedures to protect the VA's "sensitive personal information". It was enacted to respond to the May 2006 breach of personal data of 26.5 million veterans. The Secretary of the VA has issued new regulations to implement the provisions of the Information Technology Act. Those regulations, 38 CFR § 75.111 (April 11, 2008), make it crystal clear that the provisions of the Privacy Act of 1974, which protect the right of access to an individual's own records without restriction, are not superseded by the new Information Technology Act ("This subpart does not supersede the requirements imposed

[2] In the second paragraph of the Complaint, if the Court so requests, Plaintiffs offered to "file under seal an un-redacted exhibit containing the full social security numbers pursuant to General Order No. 42A, Part VII, paragraph 26". Certainly, such an offer obviates any necessity for the entry of a protective order of any kind.

by other laws, such as the Privacy Act of 1974…and implementing regulations of such Acts").

## IV. DEFENDANT HAS NOT CARRIED ITS BURDEN OF PROOF WITH RESPECT TO THE ENTRY OF A PROTECTIVE ORDER AS TO "GENERAL SALARY AND EMPLOYMENT PROCEDURES ADOPTED BY THE VA"

Defendant admits that the rest of the documents requested by Plaintiffs only concern "general salary and employment procedures adopted by the VA" (Def's Motion, paragraph 2).

Defendant insists that: "Such information must be protected from general dissemination beyond this litigation" (*id*.) without producing one shred of evidence, argument, or analysis as to why "general salary and employment procedures" must be filed only under seal, encrypted at all times, hidden "from general dissemination", and require Plaintiffs to absorb severe penalties for any "breach" of such information to the public.

Defendant does not, and cannot, claim that a national security interest, or a history of abuse of confidential employee information by Plaintiffs' counsel, necessitates protecting such generalized information from public view. Defendant does not even demonstrate with any particularity at all why the information sought by Plaintiffs must not be permitted from "general dissemination beyond this litigation".[3] This litigation is entirely about the VA's unlawful "salary and employment procedures"; the general public, the

[3] "Sensitive personal information" is defined by the Secretary of the VA as information about the education, financial transactions, medical history, and criminal or employment history of an individual, or "Information that can be used to distinguish or trace the individual's identity, including name, Social Security number, date and place of birth, mother's maiden name, or biometric records". 38 CFR § 75.112. The Secretary does not include "general salary and employment procedures adopted by the VA" in its definition of "sensitive personal information".

tens of thousands of putative class members, and the media have a definite right to know what the evidence produces as to why and how the VA violated the law with respect to lump-sum payments for unused annual leave for over 15 years. When a government agency attempts to stifle routine discovery from transparency in the courthouse, particularly in a class action case that directly affects thousands of putative class members who are not named Plaintiffs, it threatens one of the foundations of the rule of law enshrined within our democratic institutions.

Plaintiffs' respectfully submit that Defendant has not even come close to carrying its heavy burden of proof for "good cause shown" under RCFC 26 (c) that "justice requires" the entry of the Proposed Protective Order with respect to "general salary and employment practices" of a public agency. No trade secrets are involved; no national security interest is alleged; and no individual personal salary information would be affected.

Defendant offers no explanation as to why the documents requested in these Requests "must be protected from general dissemination beyond this litigation". Where is the showing of "good cause"? *See, Forest Prods. Nw., Inc. v. United States*, 62 Fed. Cl. 109, 114 (2004) (good cause is established "by specifically demonstrating that 'disclosure will cause a clearly defined and serious injury'" (quoting *Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 483 (3d Cir. 1995))), aff'd, 453 F.3d 1355 (Fed. Cir. 2006). The commentators have noted that the "'good cause' requirement is strict. . . . [T]he party . . . must make a particularized factual showing of the harm that would be sustained if the court did not grant a protective order." *Arthur R. Miller, Confidentiality, Protective Orders, and Public Access to the Courts,* 105 Harv. L. Rev. 427, 433 (1991).

The document requests contained in Plaintiffs' Exhibit 2, attached hereto, constitute standard discovery that is routinely requested and complied with in virtually every case brought against the United States in this court that involves general federal agency practices without the imposition of highly restrictive and secretive protective orders. The VA's Proposed Protective Order is dangerously draconian in its reach. It is apparent that the VA is attempting to shield its unlawful pay policies and practices from public scrutiny. Defendant has not carried its required burden of proof of establishing the necessity for such an extreme deviation from established practice in this Court when applied to the documents requested by Plaintiffs.

Plaintiffs strenuously object to the VA's proposed Protective Order. Plaintiffs respectfully suggest that the entry of the Proposed Protective Order presented by Defendant would set a dangerous precedent that would inhibit the free, fair and transparent exchange of information relevant to the prosecution of this case. It is unacceptable in the case at bar, and should be denied by the Court.

Dated: July 16, 2008

Respectfully Submitted,

s/Ira M. Lechner

Ira M. Lechner
Counsel for Plaintiffs
19811-4th Place
Escondido, CA 92029
(858) 864-2258