IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ATHEY, ROBERT M., et al., Plaintiffs, | ) | |
| v. | ) | C.A. No. 99-2051C (Senior Judge Smith) |
| THE UNITED STATES, Defendant. | ) | |

**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR ENTRY OF THE PROPOSED PROTECTIVE ORDER**

Pursuant to Rule 26 of the Rules of the United States Court of Federal Claims ("RCFC"), 38 U.S.C. §5727, and 5 U.S.C. §552a, defendant, the United States, respectfully submits this reply to plaintiffs' opposition to defendant's motion for entry of the proposed protective order. For the reasons stated below, the protective order proposed by defendant here is reasonable and should be entered by this Court in order to protect any sensitive, confidential documents that may be produced and utilized during the course of this litigation. Further, because the protective order proposed as an alternative by plaintiffs was designed specifically for the Archuleta litigation, within a settlement context, and does not contain language tailored to this case, it is not appropriate. Plaintiffs' objections to the proposed protective order are generally overwrought, revealing and meritless and should, therefore, be denied.

## I. INTRODUCTION

In anticipation of producing documents in response to plaintiffs' request for production of documents defendant, the United States, filed a motion for the entry of a protective order. Before we could produce any documents that we consider to contain sensitive, personnel information, or

information that the Department of Veteran's Affairs ("VA") considers to be confidential, a protective order must be entered, so that any documents so identified would be protected from general dispersal and would only be used within the context of this litigation. It is fairly standard procedure that such orders are entered in this Court and often it is the plaintiff who seeks such protections for sensitive business information and documents. Only in rare circumstances does the Government oppose such protective orders and we are always careful in handling protected, sensitive information. Thus, we were somewhat surprised at the tone of plaintiffs' opposition to the protective order here. The concerns raised by plaintiffs either ignore and distort the plain language of the proposed protective order or misapprehend the rationale for such an order.

Plaintiffs' counsel has requested the production of pay records that contain information that the VA will not release without a protective order or Court order because it includes social security numbers and other employment information the public release of which could be damaging to those individuals. There also may be information regarding VA policy that VA deems sensitive and wishes to produce under a protective order. It is not plaintiffs' counsel who makes those decisions but the agency and the Court.

Further, as we will demonstrate below, plaintiffs overstate the restrictions of the protective order and gloss over the provisions that plaintiffs can utilize if they wish to challenge any designation of confidential material. However, in the final analysis, whatever burden the protective order places upon plaintiffs is far outweighed by privacy concerns it is designed to protect.

## II. THE ATHEY CASE IS NOT THE SAME AS THE ARCHULETA CASE AND, THUS, SHOULD BE TREATED DIFFERENTLY

Plaintiffs refer frequently to the previous case before this Court which addressed lump-sum payments to former employees of the Federal government – Archuleta v. United States, No. 99-251C. However, the Archuleta case cannot be used as a catch-all template for this case. As the Court is well-aware, based upon briefing on the pay regulations applicable to Athey, Athey and Archuleta are not the same case and should be treated differently for the following reasons.

- The two cases are in entirely different postures. Comparing Archuleta – a case that did not have any significant discovery with Athey – a case where there will be significant discovery – is not useful. When defendant sought a protective order for records that would be produced, the Archuleta case had settled. The settlement administrator received information regarding the plaintiffs directly from the Office of Personnel Management ("OPM"). The information was not reviewed by plaintiffs' counsel unless there was a payment issue or claim that arose. There was little concern that documents, unwittingly or otherwise, might be disclosed in a data breach. On the other hand, the Athey case is just commencing discovery. The concern that sensitive information might be released is much greater because documents will be produced to plaintiffs and used during the course of the litigation. The need for a more restrictive protective order under the circumstances is obvious.

- Since the conclusion of the Archuleta case, the incidence of identity theft has increased calling for a heightened concern and treatment when personnel records identifying social security numbers, and other personal information, are at issue.

- Archuleta included employees who were paid pursuant to United States Code, title 5, while the Athey case includes VA employees who are paid pursuant to United States Code title 38, as well as title 5. The different pay authorities that apply to Athey introduces a complexity into the litigation here that was missing in Archuleta.
- The Archuleta plaintiffs were paid from a handful of payment offices while the VA has over 200 Field Offices responsible for computing the annual leave payments owing to VA employees who are retiring or separating, introducing another complexity into the Athey case that was missing in Archuleta.

Ignoring these distinctions, plaintiffs contend that the protective order entered in Archuleta can simply be used by the Court here without any consideration as to the posture of this case, what documents may be produced in this case, and how those documents may be used, and without even bothering to edit the language in that protective order so that it was applicable in this case. However, the Archuleta protective order is simply not applicable here. First, that order only deals with documents produced to the Settlement Administrator. There are no definitions of confidential material or confidential privacy act material. See Proposed Protective Order at §§1 and 2. The Archuleta protective order does not identify, outside of a settlement context, where documents and data should be stored or how they should be maintained. Id. at §5. The Archuleta protective order does not provide for what should be done by plaintiffs in the event that documents or data are inadvertently released outside of the litigation. Id. at §5(c) and (d). Because the information that we are concerned with deals primarily with personnel information, which can be used in unlawful ways, provisions for remedying a data breach are essential. Thus,

the additional protections afforded by the proposed protective order are designed specifically to protect the interests of the plaintiffs and putative plaintiffs and are not meant, as plaintiffs suggest, to harass or unduly burden or in some way hide information.[1]

As this Court has already recognized, the Court should continue to treat this case as an individual case and not view it through the prism of Archuleta.

## III. THE PROPOSED PROTECTIVE ORDER IS DESIGNED TO PROTECT SENSITIVE PERSONNEL INFORMATION

It goes without saying that when sensitive, confidential documents are produced in the context of litigation they are afforded particular protections by the Court. The courts have recognized the privacy interests inherent in such employment documents as those requested by plaintiffs here. An employee's privacy interest in his personnel file and information has a statutory and common law basis. In Whalen v. Roe, 429 U.S. 589, 598-600 (1977), the Supreme Court recognized an individual's privacy interest in avoiding disclosure of personnel matters. See Tavoulareas v. Washington Post Co., 724 F.2d 1010, 1019-20 (D.C. Cir. 1984). A Government employee's interest in keeping his personnel file and information confidential also is recognized in the Privacy Act, 5 U.S.C. § 552a(b), which generally forbids Federal agencies from releasing information contained in an employee's personnel records without the prior written consent of the individual to whom the record pertains.

Courts also have recognized the private and confidential nature of personnel files and

[1] Several of the provisions that plaintiffs complain about in the proposed order are in fact also included in the Archuleta order. For example, the Archuleta order restricts use of information to the Settlement administrator, attorneys, and others working with attorneys who have a need to access to the documents. However, all individuals were required to sign the Acknowledgment Form, just as is provided in the proposed order here. See Archuleta order at §4.

personal information in litigation. E.g. Stiward v. United States, 2007 WL 2417382 (E.D. La. 2007) ("Discovery of the personnel files of non-party individual employees presents special concerns about the privacy rights of the individuals involved."); Johnson v. Folino, 528 F. Supp.2d 548, 552 (E.D. Pa. 2007) ("Privacy Act's protection of certain information is still relevant to a court's exercise of discretion in resolving discovery disputes."); Miles v. Boeing Co., 154 F.R.D. 112, 115 (E.D. Pa. 1994) (personnel files are confidential and discovery of them should be limited); Gehring v. Case Corp., 43 F.3d 340, 342 (7th Cir. 1994) (upholding district court decision that releasing personnel files of others would violate privacy interests), cert. denied, 515 U.S. 1159 (1995).

In order to ensure that documents reflecting confidential information regarding plaintiffs and putative plaintiffs, if such documents are requested, are protected from disclosure, defendant has proposed the protective order.

## IV. PLAINTIFFS' MISAPPREHEND THE REACH OF THE PROTECTIVE ORDER

In articulating the so-called "extreme measures" allegedly contained in defendant's proposed protective order, plaintiffs are either inaccurate in their depictions or only provide the Court a partial summary of a particular provision of the protective order. Pl. Br. at 5-7.

For example, plaintiffs assert that defendant has unfettered, unilateral discretion as to what to mark as confidential. While it is true, as it must be, that we will identify those documents that we believe should be protected, there is a process in the protective order whereby plaintiffs may challenge any such designation and it is defendant who must justify the designation. See Proposed Protective Order at §11. The requirement that plaintiffs must use an encryption program refers only to those documents produced in electronic format. Id. at §5(a) and (b).

There are no documents that defendant intends to produce electronically in response to the current document requests. However, electronic data must be protected from disclosure just as paper documents are protected. Plaintiffs complain that, in the event of a data breach that they must be responsible for remedying that breach pursuant to §5(c) and (d) of the proposed protective order. Pl. Br. at 6. Because the data will be in the possession of plaintiffs in the event of a breach, plaintiffs, not the Government, should be responsible for remedying that breach.

It is not accurate, as plaintiffs assert, that documents may not be disclosed to putative plaintiffs. The protective order requires that:

> With the exception of attorneys for plaintiffs in the Athey case, attorneys for the United States, and persons regularly employed in such attorneys' offices, any person to whom Confidential Material is to be disclosed by the receiving party, including any plaintiff who is a party to this action, shall first be advised by an attorney for the receiving party or parties that pursuant to this Protective Order such person may not divulge any such Confidential Material to any other person not authorized under Paragraph 6 above to have access to such Confidential Material. The attorney shall secure from each person a declaration in the form attached hereto, stating that such person has read this Protective Order and agrees to be bound by it. Such declaration shall be maintained in the possession of the attorney securing the declaration until further order of the Court.

Proposed Protective Order at §7. Plaintiffs are correct that, if a document is marked confidential, it may not be disclosed to the media, Congress, other persons not relevant to these specific proceedings, and persons who have not signed the appropriate declaration in which they state that they will follow the provisions of the protective order. However, it is troubling that plaintiffs' counsel would consider disclosing documents of a sensitive, personal nature to the media. Indeed, if plaintiffs do intend to use the media as a forum, our request for a protective order is even more compelling.

Plaintiffs contend that the Privacy Act gives plaintiffs unrestricted access to their own pay records. However, the Privacy Act does not give plaintiffs' counsel the right to disseminate plaintiffs' personnel information at will. In any event, the relevant provision of the Privacy Act suggests a narrower reading than proposed by plaintiffs:

> (d) Access to records.– Each agency that maintains a system of records shall –
>
> (1) <u>upon</u> <u>request</u> by <u>any</u> <u>individual</u> to gain access to his record or to any information pertaining to him which is contained in the system, permit him and upon his request, a person of his own choosing to accompany him, to review the record and have a copy made of all or any portion thereof in a form comprehensible to him, except that the agency may require the individual to furnish a written statement authorizing discussion of that individual's record in the accompanying person's presence.

5 U.S.C. §552a (d)(1) (emphasis added).

There is no mention in the Privacy Act that provides for unfettered use by plaintiffs' attorney of personnel records, the disclosure of which could lead to identity theft and a myriad of other possible unlawful uses. While defendant does not believe that to be the intention of plaintiffs' counsel here, protections against such possibilities must be in place before documents are produced. The suggestion that no protective order needs to be in place at this point is short-sighted and ignores the potential harm in the exposure of the named plaintiffs' personnel information.

Finally, the requirement that documents marked confidential be placed under seal before they are disclosed to the Court is, as this Court is well-aware, common practice. <u>See</u> Proposed Protective Order at §8. If documents identified as confidential are filed on the Court's PACER system and not filed under seal, and basically are available to the public, it defeats the purpose of

marking those documents as confidential. Filing documents under seal, while requiring an additional step, does not burden plaintiffs in that regard when balanced against the privacy concerns at issue here.

In short, plaintiffs' complaints about the proposed protective order are a tempest in a teapot. This Court is no stranger to requests for protective orders that protect documents that are produced and the requirements in the proposed protective order are designed for the circumstances in this case.

## V. THE PROTECTIVE ORDER PROPOSED HERE IS PROPER AND SHOULD BE ENTERED BY THE COURT

While the proposed protective order is more restrictive than the protective order entered in Archuleta, for the reasons stated above it is clearly designed to protect the privacy interests of former VA employees – both the named plaintiffs and putative plaintiffs – within the litigation context. In that regard, defendant relied, in part, upon VA regulations which pertain to the protection of sensitive information. See Ex. A, VA Directive 6500, see also 38 U.S.C. § 5727. Plaintiffs assert that the proposed protective order would apply to pay regulations and policy already publically available. Pl. Br. at 4-5. However, the Government does not intend to identify as confidential publically available information. The Government intends to mark confidential any personnel data and any documents it determines are "VA sensitive data," which includes:

> All Department data, on any storage media or in any form or format which requires protection due to the risk of harm that could result from inadvertent or deliberate disclosure, alteration, or destruction of the information. The term includes information whose improper use or disclosure could adversely affect the ability of the agency to accomplish its mission, proprietary information, records about individuals requiring protection under various confidentiality provisions such as the Privacy Act and the HIPA Privacy Rule, and information that can be withheld under the Freedom of Information

> Act. Examples of VA sensitive information include individually-identifiable medical, benefits, and personnel information; financial, budgetary, research, quality assurance, confidential commercial, critical infrastructure, investigatory, and law enforcement information; information that is confidential and privileged in litigation, such as information protected by the deliberative process privilege, attorney work-product privilege, and the attorney-client privilege; and other information which, if released, could result in violation of law, harm, or unfairness to any individual or group, or could adversely affect the national interest or the conduct of Federal programs.

Ex. A, VA Directive 6500 at 5(q).

The proposed protective order is designed to protect VA produced documents, whether they be personnel information about the plaintiffs or putative plaintiffs, or documents regarding VA policy or procedures that it deems sensitive. The Court, in determining whether to enter the order, must balance the need to protect such data and documents from unfettered dissemination with the minimal burden the protective order imposes on plaintiffs. Under the circumstances, the balance here tips in favor of the additional protections afforded by the proposed protective order and for these reasons, defendant's motion for entry of a protective order should be granted.

## CONCLUSION

For the reasons stated herein, defendant moves for the entry of the proposed protective order attached to its motion.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Todd M. Hughes
TODD M. HUGHES
Deputy Director

s/Sharon S. Snyder
SHARON A. SNYDER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L St., NW, 8th Floor
Washington, D.C. 20530
(202) 616-0347

Attorneys for Defendant

OF COUNSEL:

Kimberly D. Perkins
Attorney
Office of General Counsel
U.S. Department of Veterans Affairs
801 Vermont Ave. N.W
Washington, D.C.

July 28, 2008

CERTIFICATE OF FILING

I hereby certify that on July 28, 2008 a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR ENTRY OF THE PROPOSED PROTECTIVE ORDER" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Sharon A. Snyder