IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ATHEY, ROBERT M., et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | C.A. No. 99-2051C |
| | ) | (Senior Judge Smith) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR LEAVE TO SERVE ADDITIONAL INTERROGATORIES UPON DEFENDANT**

Defendant, the United States, respectfully files this response to plaintiffs' motion for leave to serve additional interrogatories upon defendant. For the reasons stated below, the motion should be denied and the Court should issue a revised scheduling order for briefing on a motion to compel.

As the parties discussed with the Court during the telephonic status conference on June 11, 2008, the parties' fundamental disagreement regarding how this case should proceed is reflected in the discovery propounded by plaintiffs and defendant's responses to that discovery. Specifically, as we have stated in prior hearings before the Court, we believe that class certification should be decided first before proceeding with the merits of the case. The discovery that plaintiffs served is overly broad in part because it attempts to seek information on each and every employee of the Department of Veteran's Affairs ("VA") who retired or separated since April 1993. In serving entirely new discovery, disguised as "revised" interrogatories, plaintiffs do nothing to resolve the substantial differences between the parties. Rather, the agreed-upon course of action that the Court set forth in its Order dated June 20, 2008 – setting a reasonable

schedule for briefing and argument on a motion to compel – remains the proper way for the Court to hear and resolve the dispute. However, instead of complying with this Court's order, plaintiffs' counsel submitted 15 new interrogatories, ten in excess of the number permitted under the rules of the Court, without either a Court order or written stipulation as required by the Rules.

**A. Plaintiffs' New Discovery Request Does Not Comply With RCFC 33, Nor Is It Simply A "Revised" Version Of Previously Filed Discovery**

First, there has been considerable, and unfortunate, misunderstanding between counsel for the parties. There is no question that plaintiffs' counsel, pursuant to requirements pursuant to RCFC 37, attempted in good faith to resolve the discovery dispute that has arisen from plaintiffs' discovery. Plaintiffs' counsel, in a teleconference with defendant's counsel on June 9, 2008, expressed his intention to "revise" certain of the original interrogatories in an effort to address certain concerns raised in objections by defendant. However, we do not recall plaintiffs' counsel indicating that he intended to propound 15 additional interrogatories. Even if that was plaintiffs' intention, RCFC does not distinguish between original or "revised' interrogatories, and contains specific requirement in the event that the number propounded exceeded 25 that were not met here by plaintiffs. RCFC 33(c) provides clearly that:

> Without leave of court or written stipulation, any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts, to be answered by the party served or . . . .[1]

[1] Unlike RCFC 33(c), the corresponding rule regarding interrogatories in the Federal Rules of Civil Procedure does not require a "written stipulation" but states instead that "[u]nless otherwise stipulated" suggesting that a verbal stipulation would suffice. However, the rules of this Court require either a Court order or written stipulation if a party wishes to serve interrogatories greater in number than 25.

RCFC 33(c). There has been no Court order or written stipulation providing that plaintiffs may propound more than 25 interrogatories. While it is accurate that plaintiffs' counsel discussed the possibility of serving "revised" interrogatories, we never agreed to respond to an additional 10 interrogatories beyond the 20 that plaintiffs had already served. Had plaintiffs wished to serve more than 25 interrogatories, then they, as the parties seeking discovery beyond that provided in RCFC 33, should have either sought a Court order or a written stipulation.[2]

Even if we had agreed to respond to "revised" interrogatories, that is not what plaintiffs served. Rather, the additional 15 interrogatories that plaintiffs served request completely new information. A few examples will be illustrative. For example, compare Interrogatory No. 1 with Interrogatory No. 1R:

INTERROGATORY NO. 1:

> With respect to the computation of lump-sum payments for unused, accumulated and accrued annual leave to VA employees who retired, separated, or died anytime **from April 7, 1993 to, and including, April 4, 2002,** identify which of the VA field offices did not include each of the types of premium pay specified in paragraphs 7, 8, 10,11, Appendix B, VA Handbook 5007, Part IV (dated April 15, 2002), that such employees were paid regularly immediately preceding their retirement, separation, or death?

See Ex. A, Plaintiffs' First Set of Interrogatories (emphasis added).

INTERROGATORY NO. 1R:

> With respect to the computation and/or payment by the VA facility at Austin, Texas of lump-sum payments to VA employees, identify which of the VA field offices did not forward information to Austin, Texas of each of the types of

---

[2] Plaintiffs state in their motion that their counsel has routinely revised interrogatories in this Court and in other Federal courts, and that those revisions are not counted as additional interrogatories under the rules. Pl. Br. at 5. We have no knowledge of plaintiffs' counsel's routine practices.

premium pay specified in paragraphs 7, 8, 10, and 11, Appendix B, VA Handbook 5007, Part IV (dated April 15, 2002), paid to ALL such employees in the pay period immediately preceding their separation from employment at that field office?

See Plaintiffs' Revised First Set of Interrogatories, attached to Plaintiffs' Motion for Leave to Serve Additional Discovery. The time period requested in the first interrogatory is April 7, 1993 to April 4, 2002, while the time period for Interrogatory No. 1R is April 7, 1993 to the present – over six additional years. Id. at p. 7-8.

Another example is Interrogatories No. 2 and 2R:

INTERROGATORY NO. 2:

With respect to the computation of lump-sum payments for unused, accumulated and accrued annual leave to VA employees other than Registered Nurses anytime **from April 7, 1993 to, and including, April 4, 2002,** identify which of the VA field offices did not consistently include each of the "pay adjustment or increases" specified in paragraphs 1, 2, 3, 4, and 6 of Appendix B, supra, applicable to such employees that became effective during the employees' lump-sum leave period.

See Ex. A, Plaintiffs' First Set of Interrogatories (emphasis added).

INTERROGATORY NO. 2R:

When the VA facility in Austin, Texas computed and/or paid supplemental lump-sum payments to VA employees as a result of any statutory adjustments or any general system-wide increases in pay anytime from April 7, 1993 to the present time, explain the specific process or procedure by which the Austin, Texas facility determined which VA employees were eligible to receive a supplemental lump-sum leave payment and what documents or "ESI" were used to compute the amount of the supplemental lump-sum payments?

See Plaintiffs' Revised First Set of Interrogatories, attached to Plaintiffs' Motion for Leave to Serve Additional Discovery. Compare generally Plaintiffs' First Set of Interrogatories (Ex. A, hereto) with Plaintiffs' Revised First Set of Interrogatories (attached to plaintiffs' motion). Plaintiffs do not simply revise the first and second interrogatories, as they assert, but instead ask

different questions and change the relevant time period, extending it by over six years. The same can be said of each of plaintiffs' so-called "revised" interrogatories.

For plaintiffs to assert that they tried to find "common ground" with this new set of discovery is contradicted by the discovery itself. Propounding new interrogatories that are just as overly broad and tremendously burdensome as the original interrogatories does not remove or lessen the burdensome nature of that discovery. Plaintiffs continue to seek discovery that will require the Government to review the records of each and every former employee of the Department of Veteran's Affairs ("VA"), numbering in excess of 225,000 since April 1993, who has retired or separated since 1993. Most of the records that must be reviewed are on microfiche. We have objected to many of the interrogatories and document requests that plaintiffs have served because they are over broad and burdensome.[3] We expressed concerns with the Court during the January 22, 2008 status conference that proceeding with merits discovery before determining the issue of class certification would encourage plaintiffs to propound discovery that

---

[3] Several months ago, we proposed a compromise on discovery in which plaintiffs would take a sampling from some of the VA field offices first and then determine if wider discovery would be necessary. Plaintiffs refused to consider such a suggestion, preferring instead to seek discovery from more than 200 VA field offices and the Austin, Texas center. As defendant indicated to the Court during the January 22, 2008 status conference, we were concerned that plaintiffs would request discovery that would be too broad and seek information from every VA field office about every retired or separated VA employee. While plaintiffs' counsel assured the Court that he would never do that, a cursory review of the discovery here demonstrates that plaintiffs have indeed requested that the Government review each and every pay and leave statement of every VA employee who has retired, separated or died since 1993.

was burdensome. The Court stated during that status conference that it would review any such discovery.[4]

**B. The Discovery Issues Raised By Plaintiffs' Motion For Additional Discovery Should Be Brought To The Court's Attention And Resolved In The Context of A Motion To Compel**

Contrary to plaintiffs' suggestion, we are not "playing games" with the rules of discovery. Pl. Br. at 4. The parties agreed and the Court concurred during the last status conference with the Court on June 11, 2008, that certain discovery issues should be raised in a motion to compel. Plaintiffs did not indicate during that status conference that any revised discovery might obviate the need for the motion to compel. Now suddenly plaintiffs believe that those same issues can be somehow resolved by serving new discovery. However, given the burdensome nature of plaintiffs' first discovery, including interrogatories, document requests and requests for admission, and now the second set of interrogatories, and the fundamental nature of the dispute here, a second set of interrogatories will not resolve the dispute. We have repeatedly and clearly expressed our objections to the first set of discovery served by plaintiffs, both in writing and in discussions with plaintiffs' counsel. Propounding a second set of interrogatories that is just as overly broad and burdensome does nothing to clarify the issues that should in fact now be before this Court.

[4] We maintain that the Court should first determine if this case has been properly brought as a class action, rather than address merits issues first. If the Court determines that there are not common issues of fact or law, and that the case is not manageable as a class action, then plaintiffs may pursue their claims on an individual basis. If the Court certifies the case as a class action, then opt-in procedures will be initiated and then merits discovery may proceed.

CONCLUSION

For these reasons, the Government respectfully requests that the Court deny plaintiffs' motion for leave to serve additional interrogatories upon it, and issue a new schedule for briefing on a motion to compel.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Todd M. Hughes by Patricia McCarthy
TODD M. HUGHES
Deputy Director

/s/ Sharon A. Snyder
SHARON A. SNYDER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L St., NW, 8th Floor
Washington, D.C. 20530
(202) 616-0347

Attorneys for Defendant

OF COUNSEL:

KIMBERLY D. PERKINS
Attorney, PSG III
U.S. Department of Veterans Affairs
801 Vermont Ave. N.W.
Washington, D.C.

August 19, 2008

# EXHIBIT A

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **ROBERT ATHEY, et al.,**<br><br>for themselves and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>THE UNITED STATES OF AMERICA<br><br>**DEFENDANT.** | **Case No. 99-2051C**<br><br>**PLAINTIFFS' FIRST SET OF INTERROGATORIES**<br><br>**(SENIOR JUDGE SMITH)** |

**PLAINTIFFS' FIRST SET OF INTERROGATORIES**

Pursuant to Rule 33 of the Rules of the United States Court of Federal Claims, plaintiffs hereby request that defendant answer under oath the following interrogatories and serve its answers upon the undersigned within (30) days of service of these interrogatories.

Defendant has the duty to supplement its responses at such times and to the extent required by Rule 26(e) of the Rules of the United States Court of Federal Claims.

**DEFINITIONS AND INSTRUCTIONS**

In answering these interrogatories, defendant is required to furnish all information that is available to it, including information in the possession of defendant's attorney(s) or investigator(s) or anyone employed on defendant's behalf. If defendant cannot answer in full, after exercising due diligence to secure the information to do so, so state, and answer to the extent possible,

specifying the inability to answer the remainder, and stating whatever information or knowledge defendant has concerning the unanswered portions.

A. The term "Employee" or "Employees" refers to and means non-military individuals employed by the Department of Veterans Affairs who are defined as an "employee" under 5 U.S.C. 2105, including individuals appointed under authority of 38 U.S.C., chapter 73 and 74, and the term "VA" means the Department of Veterans Affairs including the "VHA".

B. The term "lump-sum payment" refers to, and is defined as, the payment of a lump-sum for unused, accumulated and accrued annual leave under 5 U.S.C. 5551 and 5552.

C. The term "lump-sum leave period" refers to, and is defined as, the number of hours of unused, accumulated and accrued annual leave to the credit of an employee ("annual leave balance") upon his or her retirement, separation, or death, projected forward from the date of retirement, separation, or death, as if the employee remained in the service of the VA for that period of time.

D. The term "pay" refers to, and is defined as, the greatest of the following rates of pay:

(1) An employee's rate of basic pay;

(2) A locality rate of pay under subpart F of

part 531 of 5 CFR or similar provision of law;

(3) A special law enforcement adjusted rate of pay;

(4) A continued rate of pay.

E. The term "pay adjustments or increases" refers to, and is defined as: (1) every type of pay increase(s) and pay adjustment(s) which became effective during the employees' "lump-sum leave period", including increases in the rate of pay as a result of adjustments to the LPS schedule from which the employee was paid immediately prior to retirement, separation, or death; and (2) special or "heightened" rates of pay identified in Paragraph 3 of Plaintiffs' Fourth Amended Complaint that became effective during the employees' "lump-sum leave period".

F. The term "field office" refers to, and is defined as, a Medical Center, an independent outpatient clinic, or an independent domiciliary facility. For the purpose of these Interrogatories, the term "field office" also specifically includes the VA payroll department or office at VA Headquarters in Washington, D.C. as well as the data processing center in Austin, Texas, and the DFAS office(s) which administer VA

payroll matters.

G. The term "hybrid employees" or "hybrids" means persons appointed under the authority of 38 U.S.C. chapter 74 who are designated as "hybrid" employees; included within this category are certified or registered respiratory therapists, licensed physical therapists, licensed practical nurses and licensed vocational nurses ("LPNs" and "LVNs"), pharmacists, and occupational therapists.

H. The term "nurses" means Registered Nurses and other health-care personnel positions referred to by 38 U.S.C. 7451(a)(2) as "covered positions".

**RELEVANT TIME PERIOD**

**Unless otherwise specified within an interrogatory, this set of interrogatories seeks information that was applicable to or existed anytime from and including April 7, 1993 to April 14, 2002, which is hereafter referred to as the "Relevant Period".** If the information supplied in response to these interrogatories pertains only to a portion of the time covered within that particular timeframe, please indicate the period of time to which that information pertains. If your response to these interrogatories is different depending on a particular time frame within the Relevant Time Period, please so indicate in your response to these interrogatories and associate the requested

information with the particular time frame.

**INTERROGATORIES**

INTERROGATORY NO. 1:

With respect to the computation of lump-sum payments for unused, accumulated and accrued annual leave to VA employees who retired, separated, or died anytime from April 7, 1993 to, and including, April 14, 2002, identify which of the VA field offices did not include each of the types of premium pay specified in paragraphs 7, 8, 10, and 11, Appendix B, VA Handbook 5007, Part IV (dated April 15, 2002), that such employees were paid regularly immediately preceding their retirement, separation, or death?

INTERROGATORY NO. 2:

With respect to the computation of lump-sum payments for unused, accumulated and accrued annual leave that were paid to VA employees **other than Registered Nurses** anytime from April 7, 1993 to, and including, April 14, 2002, identify which of the VA field offices did not consistently include each of the "pay adjustments or increases" specified in paragraphs 1, 2, 3, 4, and 6 of Appendix B, supra, applicable to such employees that became effective during the employees' lump-sum leave period?

INTERROGATORY NO. 3:

With respect to the computation of lump-sum payments to nurses who retired, separated, or died anytime from April 7, 1993 to, and including, October 29, 1998, identify which of the VHA field offices did not consistently include any applicable "pay adjustments or pay increases" that became

effective during each nurse's lump-sum period as a result of pay adjustments to the LPS schedule from which the nurse was paid immediately prior to his or her retirement, separation, or death.

INTERROGATORY NO. 4:

With respect to the computation of lump-sum payments to nurses who retired, separated, or died anytime from November 1, 1998 to, and including, January 31, 2008, identify which of the VHA field offices did not consistently include any applicable "pay adjustments or pay increases" that became effective during each nurse's lump-sum period as a result of pay adjustments to the LPS schedule from which nurses were paid immediately prior to his or her retirement, separation, or death.

INTERROGATORY NO. 5:

With respect to the computation of nurses' lump-sum payment who retired, separated, or died during the timeframe from September 15, 2000 to, and including, the day preceding the first day of the first full pay period in January, 2008, identify which of the VHA field offices did not consistently include adjustments to the rate of nurses' pay by the same percentage as any nationwide GS adjustment under 5 U.S.C. 5303 (exclusive of locality comparability payments under 5 U.S.C. 5304) that became effective during the nurses' lump-sum leave period.

INTERROGATORY NO. 6:

With respect to lump-sum payments that had been paid to VHA employees anytime from April 7, 1993 to, and including, January 31, 2008, identify which VHA facilities utilized computer payroll system(s) that subsequently generated a supplemental lump-sum payment to such employees in order to rectify the omission in the initial lump-sum payment of any pay adjustments and increases that became effective during the employees' lump-sum leave period.

INTERROGATORY No. 7:

In computing lump-sum payments to GS (including hybrid) employees, SES employees, doctors, dentists, optometrists, podiatrists, chiropractors, physician assistants (PAs), and EFDAs who retired, separated, or died anytime from April 15, 2002 to, and including, the day preceding the first day of the first full pay period in January, 2008, identify which VA field offices did not consistently include the "pay adjustments or increases" specified in paragraphs 1, 2, and 4 of Appendix B, supra, that became effective during the employees' lump-sum leave period which were applicable to such employees.

INTERROGATORY NO. 8:

In computing lump-sum payments that were paid to employees who retired, separated, or died anytime from April 15, 2002 to, and including, the day preceding the first day of the first full pay period in January, 2008, identify which VA field offices did not consistently include the "types of premium pay" specified in paragraphs 7, 8, 10, and

11 of Appendix B, supra, that were applicable to such employees.

INTERROGATORY NO. 9:

In computing lump-sum payments that were paid to employees anytime from April 7, 1993 to, and including, October 1, 2007, state whether the Cleveland VA Medical Center, and the Eastern Kansas Health Care System Leavenworth Dwight D. Eisenhower Medical Center, included the "pay adjustments or increases" specified in paragraphs 1, 2, 3, 4, and 6 of Appendix B, supra, applicable to such employees, that became effective during the employees' lump-sum leave period.

INTERROGATORY No. 10:

In computing lump-sum payments that were paid to physicians and dentists during the period anytime from April 7, 1993 to, and including, April 14, 2002, identify each of the VHA field offices that did not include special pay under 38 U.S.C. 7431 (that had not been forfeited as a result of a refund liability) that was received by doctors and dentists for the pay period immediately prior to the date the employee became eligible for a lump-sum payment.

INTERROGATORY NO. 11:

In the computation of lump-sum payments for GS employees anytime from April 7, 1993 to, and including, September 30, 1997, state whether the VA included non-overtime Sunday premium pay under § 5546(a) that was paid to such employees for the pay period immediately prior to the date the employee became eligible for a lump-sum payment.

INTERROGATORY NO. 12:

State the **total number** of General Schedule ("GS") employees (including "hybrid" employees) who retired, separated, or died during the months of November and December in the nine (9) years from 1993 to, and including, 2001.

INTERROGATORY NO. 13:

State the **total number** of doctors, dentists, and nurses who retired, separated, or died from September 1 to, and including, December 31 in the period from 1993 to, and including, 2001.

INTERROGATORY NO. 14:

Identify, by name and address, each VA field office that computed, calculated and/or paid lump-sum payments to VA employees anytime from April 7, 1993 to, and including, the day preceding the first day of the first full pay period in January, 2008.

INTERROGATORY NO. 15:

Identify the name and job classification of the **currently employed** "Person(s) Most Knowledgeable" with respect to the calculation and/or payment of lump-sum payments to VA employees at each field office identified in the Response to Interrogatory No. 14.

INTERROGATORY NO. 16:

In the computation of lump-sum payments that were paid to SES employees during the period from April 7, 1993 to, and including, April 14, 2002, identify which VA field offices did not consistently include applicable "pay

adjustments or increases" that became effective during the lump-sum leave period of the SES employees who retired, separated, or died during the relevant period.

INTERROGATORY NO. 17:

Identify the **total number** of SES employees who retired, separated, or died during the period from April 7, 1993 to, and including, April 14, 2003.

INTERROGATORY NO. 18:

Identify the name and address of the Assistant Secretary for Information and Technology, and his/her subordinate who is the most knowledgeable person with respect to the calculation, computation, and payment of lump-sum payments for unused annual leave.

INTERROGATORY NO. 19:

Identify the name and address of the Executive in Charge of the Office of Human resources and Administration, and his/her subordinate who is the most knowledgeable person with respect to the calculation, computation, and payment of lump-sum payments for unused annual leave at VA field offices during the period from 1993 to the present.

INTERROGATORY NO. 20:

Identify the name and address of the person employed by DFAS who is the most knowledgeable person with respect to the calculation, computation, and payment of lump-sum payments for unused annual leave to VA employees during the period that DFAS has administered the contract for the VA.

Dated: January 31, 2008

Respectfully Submitted,

s/ Ira M. Lechner

Ira M. Lechner
Counsel for Plaintiffs
19811-4th Place
Escondido, CA 92029
(858) 864-2258

CERTIFICATE OF FILING

I hereby certify that on August 19, 2008, a copy of the foregoing "DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR LEAVE TO SERVE ADDITIONAL INTERROGATORIES UPON DEFENDANT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Sharon A. Snyder