# In the United States Court of Federal Claims

No. 99-2051 C
(E-Filed: April 28, 2014)

|  |  |
|---|---|
| ROBERT M. ATHEY, et al., | ) Partial Summary Judgment; RCFC 56; |
|  | ) Class Action; Veterans Affairs (VA); |
|  | ) 38 U.S.C. §§ 7401, 7408; General |
| Plaintiffs, | ) Schedule Federal Employees; Accrued |
|  | ) and Accumulated Annual Leave; |
| v. | ) 5 U.S.C. §§ 6303–6304; Separation; |
|  | ) Lump-Sum Payment Statute; |
| THE UNITED STATES, | ) 5 U.S.C. §§ 5551, 5552, 5553; |
|  | ) 5 C.F.R. § 550.1205; Cost-of-Living |
| Defendant. | ) Adjustment (COLA); Locality Pay |
|  | ) Adjustment |

Ira M. Lechner, Washington, DC, for plaintiffs.

Sharon A. Snyder, Trial Attorney, with whom were Stuart F. Delery, Assistant Attorney General, Jeanne E. Davidson, Director, and Todd M. Hughes, Deputy Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. Patricia Smith, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC, of counsel.

## OPINION AND ORDER

CAMPBELL-SMITH, Chief Judge.

Plaintiffs bring this opt-in class action on behalf of former employees of the Department of Veterans Affairs (VA or Agency). 4th Am. Compl., ECF No. 44-1, at ¶¶ 1, 7. The VA allegedly miscalculated lump sums for accrued and accumulated annual leave paid to the employees upon their separation from federal service on or after April 7, 1993. Id. at ¶¶ 1–3, 7. Relying on the Lump-Sum Payment statute, 5 U.S.C. §§ 5551–5552, the Back Pay Act, 5 U.S.C. § 5596, and the Tucker Act, 28 U.S.C. § 1346(a)(2), plaintiffs seek to correct the underpayments and to recover prejudgment interest as well as attorneys' fees and costs. Id. at ¶¶ 2–5.

Before the court is Plaintiffs' Motion for Partial Summary Judgment on behalf of 3,691 members of a class of former civilian employees of the VA who separated, died or retired from the Agency between April 7, 1993 and September 20, 2010 (the subset class). Pls.' Mot. Partial Summ. J. (Pls.' Mot. PSJ), June 14, 2013, ECF No. 198, at 1–2;

see also Pls.' Mem. Summ. J. (Pls.' PSJ Mem.), June 14, 2013, ECF No. 198-1; Pls.'
Reply, Aug. 24, 2013, ECF No. 205.  Plaintiffs argue there is no genuine dispute that the
VA violated the Lump-Sum Payment statute when it failed to include cost-of-living
(COLA) and locality pay adjustments in its calculation of the lump sums paid to the
subset class.  Pls.' Mot. PSJ 1–2.  Plaintiffs also seek prejudgment interest for the subset
class under the Back Pay Act.  Id. at 1, 3.  Defendants contend summary judgment is
premature; alternatively, defendant denies the allegations.  Def.'s Resp. Pls.' Mot. PSJ
(Def.'s Resp.), Aug. 21, 2013, ECF No. 204, at 6–7.

   For the reasons set forth herein, plaintiffs' motion is **GRANTED-IN-PART**,
**DENIED-IN-PART** and **STAYED-IN-PART**.  The court **GRANTS** summary judgment
to members of the subset class, who were General Schedule (GS) employees under title 5
of the United States Code, on liability for the applicable COLA and locality pay
adjustments that were not included in their lump-sum payouts on or after April 7, 1993
through September 20, 2010.  The court **DENIES** summary judgment on liability to all
non-GS employees of the VA, regardless of separation date.  See discussion infra Part II
(explaining VA employment categories).  Further, the court **STAYS** plaintiff's motion
regarding the availability of prejudgment interest under the Back Pay Act; the court has
taken the matter under advisement to address in a separate opinion.

I.   PROCEDURAL HISTORY

   This case is an offshoot from Archuleta v. United States, Case No. 99-205 C, a
separate class action brought before this court on behalf of all former federal employees
similarly alleging the miscalculation of lump sums for accrued and accumulated annual
leave.  See Def.'s Resp. 3; Def.'s Mot. Strike 2d Am. Compl., ECF No. 8, at 1–2
(providing history of Archuleta), denied by Order, Dec. 12, 2006, ECF No. 14.  That
action concluded with a settlement for the employees of seventeen federal agencies and,
pursuant to the settlement terms, the court severed employees of the VA from the suit
without prejudice.  See Def.'s Resp. at 3, 3 n.7; Def.'s Mot. Strike 2d Am. Compl. at 1–2.
The VA employees refiled their claims as a class action and brought this case.  See Am.
Compl., June 21, 2006, ECF. No. 2.  Of note, a third class action is pending as well on
behalf of the balance of employees of other federal entities—that do not include either the
VA or the seventeen agencies that settled in Archuleta.  See Kandel v. United States,
Case No. 06-872 (originally styled Solow v. United States).

   In 2007, the government moved to dismiss the VA plaintiffs' Third Amended
Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States
Court of Federal Claims (RCFC), for lack of jurisdiction and failure to state a claim,
respectively.  That motion was denied-in-part and granted-in-part.  Athey v. United
States, 78 Fed. Cl. 157 (2007) (Smith, J.) (Athey I), clarified by Kandel v. United States,

85 Fed. Cl. 437 (2009) (Smith, J.).[1]  Judge Smith held that the six-year statute of limitations, 28 U.S.C. § 2501, did not bar the VA employees' claims because the limitations period was tolled in 1999 when Archuleta was filed.  Id. at 159–61 (also finding laches inapplicable based on facts).  Judge Smith further held that the VA plaintiffs were entitled to pursue their claims for lump-sum payments reflecting Sunday pay, under 5 U.S.C. § 5546(a), for the time period April 7, 1993 through September 30, 1997, if the employees alleging underpayment regularly and customarily performed work on a Sunday prior to their separation.  See id. at 164.  The VA plaintiffs were not entitled, however, to pursue lump sums reflecting Sunday pay on or after October 1, 1997 unless such work actually was performed.  Id. at 163–64.  Pursuant to the Appropriations Act of 1998, all federal employees were barred from recovering Sunday premium pay on or after October 1, 1997 "unless such employee actually performed work during the time corresponding to such premium pay."  Pub. L. 105-61, § 636, 111 Stat. 1272 (1997).

The VA plaintiffs were also precluded from pursuing their claims for lump sums reflecting certain "additional pay."  Id. at 163 (applying 38 U.S.C. § 7453(i), which provides that "additional pay" to which a VA employee may be entitled while working "shall not be considered as basic pay for the purposes of . . . title 5 . . . [of] Subchapter VI of chapter 55 [(the Lump-Sum Payment statute)]") (citing Curry v. United States, 66 Fed. Cl. 593, 600 (2005) ("Congress has 'with clarity' determined via section 7453(i) that lump-sum separation pay should not include additional pay.")).

Plaintiffs then filed a Fourth Amended Complaint restructuring the putative class and the relief requested, see 4th Am. Compl., to which the government responded with another Motion to Dismiss, this time arguing that the court lacked subject matter jurisdiction under RCFC 12(b)(1) because the Back Pay Act, 5 U.S.C. §§ 5551–5552, is not a money-mandating statute, Def.'s (2d) Mot. Dismiss, Jan. 27, 2011, ECF 165, at 8–9.  Alternatively, defendant argued, plaintiffs had failed to state a claim under RCFC 12(b)(6) because the Agency's former employees did not meet the Back Pay Act's definition of "employee" and the lump sums did not qualify as "pay;" therefore, the case merited dismissal.  Id. at 9–23.

The court denied this second motion to dismiss, finding that it had jurisdiction to hear plaintiffs' claims under the Back Pay Act, 5 U.S.C. § 5596, because the claims were pled in conjunction with the money-mandating Lump-Sum Payment statute, 5 U.S.C. §§ 5551–5552, and the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491.  Athey v. United States, 108 Fed. Cl. 617, 618–19, 622 (2013) (Smith, J.) (Athey II) (citing United States v. Connolly, 716 F.2d 882, 885, 887 (Fed. Cir. 1983) (holding that, standing alone, the Back Pay Act generally is insufficient to establish jurisdiction)).  The court further held

---

[1]     Defendant moved for reconsideration of the court's jurisdictional analysis, which the court denied.  Order, July 24, 2009, ECF No. 98 (denying reconsideration "for the reasons set forth in the court's Kandel v. United States, 85 Fed. Cl. 437 (2009) opinion").

that "within the Back Pay Act itself, the [p]laintiffs claims adequately [fell] within the defined terms of 'employee' and 'pay.'" Id. at 622; see id. at 619–22 (discussion). "Accordingly, both [defendant's] RCFC 12(b)(1) and 12(b)(6) motions [were] denied." Id. at 622.

After deciding the first dismissal motion and before deciding the second one, the court entered an Order, on November 5, 2010, certifying the class, approving notice to the potential class, approving class counsel, and appointing a class administrator.  Order App'g Class Certification, Nov. 5, 2010, ECF No. 164 (Certification Order).  According to defendant, notices then were mailed to potential class members, who were informed that if they met the class certification definition, they could opt-in to the class action until April 24, 2012.  Def.'s Resp. 5.

II.    BACKGROUND ON THE CLASS AND THE SUBSET CLASS NOW
        MOVING FOR SUMMARY JUDGMENT

"Chapter 74 of title 38 [of the United States Code] authorizes the VA Secretary to hire three categories of employees . . . ." Adams v. United States, 99 Fed. Cl. 700, 704 (2011); see also Athey I, 78 Fed. Cl. at 158–59 (historical background).  "The first category includes 'physicians, dentists, podiatrists, chiropractors, optometrists, registered nurses, physician assistants, and expanded-function dental auxiliaries.'" Adams, 99 Fed. Cl. at 704 (quoting 38 U.S.C. § 7401(1)).  Because these employees were hired under 38 U.S.C. § 7401(1), their employment is "'governed in significant part by chapter 74 of title 38' instead of title 5, which governs general federal civil service employees." Id. (quoting James v. Von Zemenszky, 284 F.3d 1310, 1314 (Fed. Cir. 2002)).  "The second category . . . are 'hybrids,'" various allied health professionals such as licensed practical nurses, licensed physical therapists and dental hygienists who are appointed under 38 U.S.C. § 7401(3).  Id. at 704, 704 n.4.  Their employment is governed in part by title 5 and in part by title 38.  Id. (citing Curry v. United States, 66 Fed. Cl. 593, 595 n.4 (2005)).  "The third category . . . [is comprised of] General Schedule civil service employees." Id.  They are "hired under 28 U.S.C. § 7408 . . . [and their employment is] governed by title 5." Id.

As certified, the plaintiffs' class is drawn from all three categories of VA employees, but is defined more precisely as:

General Schedule ("GS") employees, Registered Nurses ("RN"), Nurse Anesthetists ("NA"), Doctors, Dentists, Wage Grade or Prevailing Wage employees, Senior Executive Service (SES), and Board of Veteran Appeals Judges [as well as any VA employee who may be entitled to Sunday pay subject to conditions].

Certification Order 2.

Despite their employment categories, all class members are "employees[,] as defined by 5 U.S.C. § 2105[,] who retired, died, or separated . . . from employment by the [VA]" in a manner contemplated by the Lump-Sum Payment statute, 5 U.S.C. §§ 5551–5552.  Id.  The class is further limited to those who left federal service on or after April 7, 1993 to the present (the Class Period).  Id.  The court refers to these individuals collectively as having separated.

Upon separation, these employees were entitled, under the Lump-Sum Payment statute, to payments for accrued and accumulated annual leave equal to the pay they would have received had they worked their regular and customary scheduled hours through expiration of their unused leave periods.  Id. (citing 5 U.S.C. § 5551).  The VA allegedly miscalculated these lump sums by failing to include, from April 7, 1993 to present, "across-the-board annual adjustment[s] and/or locality pay adjustment[s] . . ." that became effective after the employees' separation but before the expiration of the unused leave periods, as well as non-overtime Sunday pay from April 7, 1993 to September 30, 1997.[2]  Id.

The subset class moving for partial summary judgment here is a narrower group of class members.  They are described as 3,691 former civilian employees of the VA:  (1) who timely filed opt-in claims; (2) who separated, died or retired from the VA from April 7, 1993 to September 20, 2010 (a portion of the Class Period); and (3) who, upon separation, allegedly

> had sufficient accrued unused annual leave . . . that he or she would have received a COLA [cost-of-living adjustment] pay increase and/or locality pay adjustment "had he [or she] remained in the service until expiration of the period of annual or vacation leave" [5 U.S.C. § 5551] but was not paid any supplemental lump-sum payment to reflect such pay increase as required by law.

Pls.' Mot. PSJ 1–2 (emphasis added).

Thus, the subset class is narrower than the certified class because its members seek only COLA and locality pay, whereas the class seeks Sunday pay as well.  See Pls.' Mot. PSJ 2 n.1 (explaining "further analysis is necessary" before Sunday pay claims are ripe

---

[2]     Plaintiffs' pleading, as amended, seeks other forms of "'premium' pay, and/or allowances, under Title 5, United States Code, or 'heightened' or special pay under Title 5 or Title 38, United States Code," such as "night differential premium pay" and foreign "post allowance."  4th Am. Compl. ¶¶ 2, 7(b).  Plaintiffs subsequently waived these claims as they were not included in plaintiffs' class certification motion or proposed notices, or in the court's Certification Order.  See Def.'s Resp. Pls.' Mot. PSJ (Def.'s Resp.), Aug. 21, 2013, ECF No. 204, at 2 n.5 (arguing same).

for review).  The subset class also excludes individuals who separated after September 20, 2010, even though the Class Period extends to the present (a distinction plaintiffs do not explain).

Plaintiffs offer little information on the subset members' professions or their related labor categories (whether title 5, title 38, or hybrid), other than to state that the subset "does not include WG [Wage Grade] claimants, or Registered Nurses who separated or retired before January 15, 2001." Id. at 2 n.2.  This description does not tell the court much about who is included in the subset class.  Defendant surmises that the subset class is comprised only of former GS employees (who would be governed exclusively by title 5).  See Def.'s Resp. 3, 6 n.9; see also Pls.' Reply 2 (referring to "3,691 GS class action claimants").  Even if defendant was correct about this composition of the subset class, neither party accounts for the Nurse Anesthetists, Doctors, Dentists, Prevailing Wage employees, Senior Executive Service (SES), who are part of the class as a whole but are neither expressly included nor plainly excluded from the subset class.  Thus, the scope of the subset class remains unclear.

III.    STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  RCFC 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  A fact is material if it "might affect the outcome of the suit."  Anderson, 477 U.S. at 248.  The moving party bears the initial burden of showing it is entitled to relief as a matter of law and based on material facts that are undisputed.  Dairyland Power Coop. v. United States, 16 F.3d 1197, 1202 (Fed. Cir. 1994) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986)).  All doubt over factual issues must be resolved in favor of the party opposing summary judgment.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) ("'[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'") (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); accord Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1391 (Fed. Cir. 1987).

Once the moving party meets its burden, the burden shifts to the non-moving party to show sufficient evidence of a genuine issue of material fact.  Anderson, 477 U.S. at 256; Novartis Corp. v. Ben Venue Labs., Inc., 271 F.3d 1043, 1046 (Fed. Cir. 2001).  Such evidence need not be admissible at trial; nevertheless, mere denials, conclusory statements or evidence that is merely colorable or not significantly probative is insufficient to preclude summary judgment.  See Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 249–50; Mingus, 812 F.2d at 1390–91; see also Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd., 731 F.2d 831, 835–36 (Fed. Cir. 1984) (in making a determination as to whether genuine issues of material fact exist, the court is not to accept a party's bare assertion that a fact is in dispute).  "The party opposing the motion must point to an evidentiary conflict created on the record at least by a counter statement of a

fact or facts set forth in detail in an affidavit by a knowledgeable affiant." Barmag, 731 F.2d at 836. "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, [must] set out facts that would be admissible in evidence, and [must] show that the affiant or declarant is competent to testify on the matters stated." RCFC 56(c)(4).

IV.    DISCUSSION

A.    As a Matter of Law, Lump-Sum Payments to GS Employees Should Reflect COLA & Locality Pay Adjustments

When the class separated from federal service, the VA paid out lump sums for their accrued and accumulated annual leave. Certification Order 2; see also 5 U.S.C. §§ 6303–6304 (detailing system in which federal employees accrue and accumulate annual leave). Under the Lump-Sum Payment statute, 5 U.S.C. §§ 5551–5552, the separated employees were entitled to receive these payments. Certification Order 2. The statute provides:

> An employee as defined by section 2105 of this title . . . who is separated from the service, . . . or elects to receive a lump-sum payment for leave under section 5552 of this title, is entitled to receive a lump-sum payment for accumulated and current accrued annual or vacation leave to which he is entitled by statute.

5 U.S.C. § 5551(a);[3] but see 5 U.S.C. § 6304 (capping leave accumulation).

The statute further provides that the lump-sum payment should be "equal [to] the pay . . . the employee or individual would have received had he [or she] remained in the service until [the] expiration" of the leave period. 5 U.S.C. § 5551(a). Specifically:

> The lump-sum payment shall equal the pay (excluding any differential under section 5925 and any allowance under section 5928) the employee or

---

[3]    Section 5551 of title 5 was amended twice during the Class Period (April 7, 1993 to present). See 5 U.S.C. § 5551 (1991), amended by Nat'l Defense Authorization Act For Fiscal Year 1997, Pub. L. No. 104-201, Div. A, Title XVI, § 1611(a), 110 Stat. 2738 (effective Sept. 23, 1996), amended by Federal Courts Improvement Act of 2000, Pub. L. No. 106-518, Title III, § 310, 114 Stat. 2420 (effective Nov. 13, 2000 to present). Differences in the versions are immaterial to the present motion. In addition, Section 5552—governing employees who elect to receive lump sums for leave when they separate from federal civilian service to enter active duty in the armed forces—was promulgated in 1966 and never amended. See Act of Sept. 6, 1996, Pub. L. No. 89-554, 80 Stat. 489.

individual would have received had he remained in the service until expiration of the period of the annual or vacation leave. The lump-sum payment is considered pay for taxation purposes only. The period of leave used for calculating the lump-sum payment shall not be extended due to any holiday occurring after separation.

5 U.S.C. § 5551(a); Def.'s Resp. 6 ("We agree that the [] statute provides that the [lump-sum] payment should equal the pay that a Federal employee would have earned had he remained in Federal service."); see also 5 C.F.R. § 550.1201–1207 (regulations interpreting and implementing 5 U.S.C. § 5551).[4]

A projection forward of accrued and accumulated leave involves a determination of the lump-sum payment, which should reflect not only the employee's "rate of basic pay" in effect at the time of separation, but also the "pay adjustments" that took effect after separation but before expiration of the leave period. 5 C.F.R. § 550.1205 (2007).[5] The regulations contain an exhaustive list of the "types of pay and pay adjustments" that, subject to conditions, might be included in the lump-sum calculation. See id. In addition, the VA, like other agencies, can elect to include "other kinds of pay" in the Agency's lump-sum calculation provided the additions are "consistent with 5 U.S.C. [§§] 5551, 5552, 6306, and other applicable provisions of law." See 5 C.F.R. § 550.1205(c) (vesting authority with agencies).

In this case, the class seeks only "across-the-board annual adjustment[s] and/or locality pay adjustment[s] . . ." and non-overtime "Sunday pay." Certification Order 2 (further defining these adjustments). But the subset class, now moving for summary judgment, focuses exclusively on COLA and locality pay adjustments. Thus, the court will address only these entitlements here and defer consideration of the claimed Sunday premium pay adjustment until that issue is ripe for review.

Under the plain language of the Lump-Sum Payment statute, 5 U.S.C. § 5551(a), which has been in effect during the entirety of the Class Period, General Schedule employees (governed by title 5 of the United States Code) are entitled to lump sums that

---

[4]    In 1992 Congress vested the Office of Personnel Management (OPM) with authority to "prescribe regulations necessary for the administration of [the Lump-Sum Payment statute, 5 U.S.C. §§ 5551–5552]." Tech. & Misc. Civil Service Amendments Act of 1992, Pub. L. 102-378, § 45, 106 Stat. 1346 (effective Oct. 2, 1992), codified at 5 U.S.C. § 5553. The regulations were amended throughout the Class Period. Current OPM regulations appear at 5 C.F.R. §§ 550.1201–1207.

[5]    The court cites to current regulations throughout this opinion; however, unless otherwise noted, the effective regulations when an individual separates, and/or during his or her unexpired leave period, will govern the calculation of that individual's lump sum.

reflect applicable COLA and locality pay increases.  The statute expressly provides that lump sums should "equal the pay. . . the employee . . . would have received had he remained in the service until [the] expiration of [his or her leave] period."  5 U.S.C. § 5551(a).  Had the GS employees worked through their leave periods, they would have benefited from COLA and locality pay increases.  Accordingly, as a matter of statutory interpretation, the lump sums paid to GS employees should reflect these increases as well.

OPM's current regulations specifically address this General Schedule employee entitlement.  The pertinent regulation provides:  "The agency must compute a lump-sum payment using . . . [a]n employee's rate of basic pay . . .  [as well as] [a]ny statutory adjustments in pay or any general system-wide increases in pay, such as adjustments under sections 5303 [COLA and] 5304 [Locality Pay] . . .  of title 5, United States Code, that become effective during the lump-sum leave period."  5 C.F.R. § 550.1205(b)(1)–(2).  "The agency must adjust the lump-sum payment to reflect the increased rate on and after the effective date of the pay adjustment."  Id. at § 550.1205(b)(2).  Having reviewed earlier versions of this regulation, 5 C.F.R. § 550.1205, the court has determined that this has also been the regulatory rule since the regulation was adopted on July 8, 1999 and became effective on September 7, 1999.  See 64 FR 36763, 36773 (1999) (promulgating 5 C.F.R. § 1205) (eff. Sept. 7, 1999) amended 70 FR 31314 (2005) amended by 72 FR 12036 (2007) (current version).

As plaintiffs further explain, "[u]nless blocked by the President, locality pay increases [authorized by 5 U.S.C. § 5304(d)(2)] always occurred in conjunction with the [annual] January COLA [5 U.S.C. § 5303(a)]."  Pls.' PSJ Mem. 3 n.3; see also Pls.' PSJ Mem. Ex. 2A, ECF No. 198-3 (list of COLA effective dates from 1994–2010 assembled by plaintiffs).

While COLA increases occurred across-the-board, locality pay increases "were different in each of the geographical areas."  See Pls.' PSJ Mem. 3 n.3.  "In those areas and in those years when there was a Locality Pay increase, covered employees would receive the COLA and the Locality Pay increase above the COLA."  Id.  "Some year[s], in some areas, there was no Locality Pay increase.  In those cases, the employees would receive [only] the COLA."  Id.

"[T]he VA's policy and practice was to compute and pay an initial lump-sum payment . . . based on the employee's [hourly] rate of pay as of the date of separation . . . multiplied by the number of hours of unused annual leave in their account [as] of their separation date."[6]  Pls.' PSJ Mem. 5; see Def.'s Resp. Pls.' First Req. Admissions (Def.'s

---

[6]     In addition to the basic rate of pay as of separation, the VA included in its calculation "within-grade increases where an employee, prior to separation, ha[d] completed the required period of actual service, even though the advancement [was] not

Admission No.), ECF No. 198-2, at No. 4 ("[T]he VA policy has been to include in the lump-sum payment the following: 'The lump-sum payment will be computed at the salary rate in effect on the date of separation.'") (quoting VA internal policy); <u>see also</u> 5 U.S.C. § 6304 (defining the leave cap).  However, if an adjustment, such as COLA or locality pay, became effective before the unused leave period expired, the Agency's policy was to issue a supplemental payment to cover the pay increase from the effective date of the adjustment to the expiration of the outstanding leave.  <u>See</u> Pls.' PSJ Mem. 5, 7 n.5; <u>see also</u> Def.'s Resp. 6–7.

Although necessary, this two-step payment process proved problematic in practice.  "[F]rom April 7, 1993 through April 14, 2002, the VA did not compute any supplemental lump-sum payments electronically or by computer."  Def.'s Admission No. 43.  "All such supplemental payments were tracked at VA field offices manually."  <u>Id.</u> "[U]nless . . . payroll personnel within a Payroll Office or at a VA field office affirmatively submitted a Form TT 82 that indicated that an employee was entitled to a pay adjustment that became effective during the employee['s] lump-sum leave period, the employee did not receive the pay adjustment."  Def.'s Admission No. 41.  Thus, according to plaintiffs, VA "facility personnel were supposed to keep track 'manually' of thousands of separated former employees"—in particular, their separation dates, when their leave periods expired, whether they were entitled to any COLA or locality pay adjustments before the leave expiration, and whether they were issued supplemental payments in the appropriate amounts at the appropriate times.  <u>See</u> Pls.' PSJ Mem. 7 n.5. This task was a daunting one for the Agency.  In this action, plaintiffs seek to correct the VA's underpayments.

Having reviewed the pertinent statute and regulations, the court finds, as a matter of law, that a VA General Schedule employee, who separated from federal service on or after April 7, 1993, and whose employment was governed by title 5 of the United States Code, is entitled to a lump sum for annual leave that reflects applicable COLA and locality pay adjustments that became effective during his or her leave period.

The court's finding must be limited to GS employees, however, because plaintiffs failed to define with specificity whether there were non-GS employees in the subset class and, if so, whether or how entitlements for non-GS employees might be affected by title 38 of the United States Code, or other statues or regulations.  <u>See</u> discussion <u>supra</u> Part II (discussing the title 38 and hybrid employees at the VA who fall outside the General Schedule group).

---

effective until the beginning of the next pay period."  Def.'s Resp. Pl.'s First Req. Admissions (Def.'s Admission No.), ECF No. 198-2, at No. 4.

B.      GS Employees In The Subset Class Are Entitled To Unpaid Applicable
        COLA And Locality Pay Adjustments From April 7, 1993 To
        September 20, 2010

The subset class does not challenge the VA's initial computation of their lump-sum payments.  See Pls.' PSJ Mem. 7.  Rather, the subset class argues the VA erred when it failed to issue supplemental lump-sum payments for COLA and locality pay adjustments that became effective before the expiration of their leave periods.  See id. Plaintiffs contend that their lump sums did not include all of the required pay to which the subset class was entitled, and plaintiffs assert that this underpayment violated the Lump-Sum Payment statute (5 U.S.C. § 5551).  See id.

General Schedule employees in the subset class have satisfied their initial burden of establishing "no genuine issue of material fact and entitlement to judgment as a matter of law," RCFC 56(a), as to COLA and locality pay adjustments on or after April 7, 1993. Plaintiffs support their claims, in significant measure, with the declaration of Wolfgang Wilke (Wilke Decl.), ECF No. 198-5.  See, e.g., Pls.' PSJ Mem. 5–6, 9 (relying on Wilke Decl.).  The court also relies on Mr. Wilke's declaration because it is based on Mr. Wilke's "personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the . . . declarant is competent to testify on the matters stated" therein.  See RCFC 56(c)(4).  Mr. Wilke recounts, in detail, the steps he took as a forensic examiner to cull through the VA payroll data supplied by the government to determine who, among opt-in claimants, had unexpired leave when a COLA adjustment became effective and for whom there is no evidence that the government issued a supplemental lump-sum payment.  See Wilke Decl. ¶¶ 3–13.  There were 7,702 individuals who timely filed opt-in claims, of whom 3,844 had sufficient "unused annual leave as of the date of their separation to extend . . . beyond the effective date of the next succeeding COLA."  Id. at ¶¶ 6, 12.  Of the persons with sufficient unused leave, the VA issued a supplemental lump-sum payment to 153 individuals, but there is no evidence that the VA issued supplemental payments to the remaining 3,691 individuals.  Id. at ¶¶ 13–14.

Plaintiffs ask the court to draw the conclusion that, absent evidence indicating otherwise, the government violated the Lump-Sum Payment statute, 5 U.S.C. § 5551, by failing to issue supplemental lump sums to the 3,691 individuals identified during Mr. Wilke's examination of the VA's records.  The court may draw such a conclusion with respect to the GS employees among the 3,691 individuals of interest but, without more of an evidentiary offering from plaintiffs, not with respect to others in the subset class or in the class at large.[7]

---

[7]      Non-General Schedule employees in the subset class, if any, have not carried their initial burden of establishing "entitlement to judgment as a matter of law" as required under Rule 56(a).  See discussion supra Part IV(A) (last paragraph).

To avoid summary judgment, defendant "must point to an evidentiary conflict created on the record . . . ." Barmag, 731 F.2d at 836. Defendant argues that "[p]laintiffs here have not established the fact that they are actually owed any payment from the VA[;]" rather, they "only contend that they had sufficient leave to extend into a period when a COLA increase had gone into effect and that there is no evidence that they received a supplemental payment." Def.'s Resp. 7 (citing Pls.' PSJ Mem. 5–6). The court is satisfied, however, that these facts are sufficient to satisfy plaintiffs' burden and to shift to defendant the burden to show that a genuine issue of material fact exists. See Anderson, 477 U.S. at 256; RCFC 56(a). For example, defendant might show either an employee's ineligibility for a lump-sum payment, a miscalculation in the duration of a leave period, e.g., 5 U.S.C. § 6304(a) (defining the leave cap), a misapplication of a COLA effective date, or evidence that a supplemental lump sum, in fact, did issue. In an effort to defeat summary judgment, defendant also might show that an individual re-entered federal service before the expiration of his or her unused leave term and, as a result, might be required to refund the agency an amount equal to any pay included in the lump sum. See 5 C.F.R. § 550.1206. Defendant, however, simply acknowledges that there should exist a "Record of Salary Payment" for each VA employee who separated in the Class Period, and this record would "indicate payment of a lump-sum payment or a supplemental lump-sum payment, where appropriate and applicable." Def.'s Admission No. 42.

Although the government's potential defenses are numerous, defendant has put forth only the vague and speculative suggestion that the facts are not what plaintiffs have shown. Defendant does state in a footnote that it has "review[ed] a sampling of the data provided by plaintiffs" and has determined that "out of 110 individuals . . . reviewed, 65 individuals did not receive a supplemental payment, while 45 individuals did receive a supplemental payment." Def.'s Resp. 7 n.10. Defendant does not contend, however, that any of the individuals who received the supplemental payments are among the 3,691 individuals identified in the subset class. Nor does defendant discuss the separated employees who were paid with any specificity (as by name or social security number). Defendant also makes this assertion in a footnote to its brief, not through declaration, affidavit, or other competent evidence. In the manner presented, defendant's arguments amount to no more than "mere denials, conclusory statements, or evidence that is merely colorable" and thus, lack the sufficiency to defeat plaintiffs' summary judgment motion. Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 249–50; Mingus, 812 F.2d at 1390–91; see also Barmag, 731 F.2d at 835–36 (in making a determination as to whether genuine issues of material fact exist, the court is not to accept a party's bare assertion that a fact is in dispute).

Lastly, defendant incorrectly avers that partial summary judgment is premature until plaintiffs can establish "with specificity both that they are owed . . . and what they are owed." Def.'s Resp. 7. Plaintiffs have established that GS employees in the subset class are entitled to the unpaid supplemental lump-sum payments for COLA and locality

pay adjustments that became effective during their leave periods on or after April 7, 1993 through September 20, 2010.  Damages can be determined through separate proceedings to follow.

V.     CONCLUSION

Plaintiffs' Motion for Partial Summary Judgment (ECF No. 198) is **GRANTED** as to certain claims of the General Schedule employees in the subset class.  In particular, they are entitled, under the Lump-Sum Payment statute, 5 U.S.C. § 5551, to the applicable COLA and locality pay adjustments that were not included in their lump-sum payouts and that became effective during their unexpired leave periods on or after April 7, 1993 through September 20, 2010.  Alleged entitlements, that were not the subject of this motion, will be evaluated at a later date.

Summary judgment as to liability is **DENIED** as to all non-General Schedule employees in the subset class who separated at any time in the Class Period.  With respect to this group, plaintiffs failed to carry their initial burden of establishing, under RCFC 56(a), that they are "entitled to judgment as a matter of law."

Further, the court **STAYS** plaintiffs' motion regarding the availability of prejudgment interest under the Back Pay Act.  5 U.S.C. § 5596(a).  The court has taken the matter under advisement and will address whether plaintiffs can recover prejudgment interest in a separate opinion.

IT IS SO ORDERED.

 s/ Patricia Campbell-Smith
PATRICIA CAMPBELL-SMITH
Chief Judge