# In the United States Court of Federal Claims

(E-Filed:  August 31, 2015)

|  |  |  |
|---|---|---|
| ROBERT M. ATHEY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 99-2051C |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | Lump-Sum Payment for Annual |
| | ) | Leave; 5 U.S.C. §§ 5551–5553; |
| Defendant. | ) | 5 C.F.R. § 550.1202; |
| | ) | Back Pay Act; Interest; |
| | ) | 5 U.S.C. § 5596; |
| GERALD K. KANDEL, et al., | ) | 5 C.F.R. § 550.803 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 06-872C |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Ira M. Lechner, Washington, D.C., for plaintiffs in both Athey and Kandel.  Steven W. Winton, San Diego, CA, of counsel for plaintiffs in Kandel.

Hillary A. Stern, Senior Trial Counsel, with whom were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Robert E. Kirschman, Jr., Director, and Reginald T. Blades, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for defendant in Athey.

Mikki Cottet, Senior Trial Counsel, with whom were Joyce R. Branda, Acting Assistant Attorney General, Robert E. Kirschman, Jr., Director, and Reginald T. Blades, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for defendant in Kandel.

OPINION AND ORDER

CAMPBELL-SMITH, Chief Judge

Pending before the court are two class actions, <u>Athey v. United States</u>, No. 99-2051C, and <u>Kandel v. United States</u>, No. 06-872C, comprised of former federal civilian employees of a variety of agencies who retired, died, or separated from federal civilian service at different times, during the years 1993 through 1999.  Upon separation, these individuals were statutorily entitled to lump-sum payments for their accrued but unused annual leave.  5 U.S.C. §§ 5551 <u>et seq.</u> (lump-sum payment statute).  They allege the government miscalculated these payments and should be liable for their correction, plus interest and attorneys' fees.  <u>See generally</u> 4th Am. Comp., ECF No. 44-1, <u>Athey</u>; Compl., ECF No. 1, <u>Kandel</u> (formerly titled, <u>Solow v. United States</u>).  The court consolidated the two cases for the limited purpose of addressing liability for interest under the Back Pay Act (BPA), 5 U.S.C. § 5596, which the court now addresses in the posture of cross-motions for partial summary judgment.

I.      UNDISPUTED LAW AND FACTS

Federal employees covered by the lump-sum payment statute who separate from federal civilian service are entitled to a lump-sum payment for their accrued and accumulated unused annual leave.  <u>See</u> 5 U.S.C. §§ 5551(a), 5552.[1]  The lump sum must equal the pay the employee would have received had the individual worked his or her regular and customary scheduled hours until expiration of the unused leave period.  <u>See</u> <u>id.</u> § 5551(a) (noting some limitations); <u>see also</u> 5 C.F.R. §§ 550.1201–07 (regulations interpreting and implementing 5 U.S.C. §§ 5551–52).[2]

---

[1]     Congress has twice amended Section 5551 of title 5 since 1993.  <u>See</u> 5 U.S.C. § 5551 (1991), <u>amended by</u> National Defense Authorization Act For Fiscal Year 1997, Pub. L. No. 104–201, Div. A, Title XVI, § 1611(a), 110 Stat. 2738 (effective Sept. 23, 1996), <u>amended by</u> Federal Courts Improvement Act of 2000, Pub. L. No. 106–518, Title III, § 310, 114 Stat. 2420 (effective Nov. 13, 2000 to present).  Differences in the versions are immaterial to this dispute.  Section 5552—governing employees who elect to receive lump sums when they leave federal civilian service for active military duty—was adopted in 1966 and has never been amended.  <u>See</u> Act of Sept. 6, 1966, Pub. L. No. 89–554, 80 Stat. 489.

[2]     The court cites to the current version of the lump-sum payment regulations for convenience.  These regulations have been in effect, in one form or another, since 1992 when Congress vested the Office of Personnel Management (OPM) with authority to adopt them.  <u>See</u> Technical & Miscellaneous Civil Service Amendments Act of 1992, Pub. L. No. 102–378, § 2(45)(A), 106 Stat. 1346 (codified at 5 U.S.C. § 5553).  Differences between the current version and earlier versions, in effect between 1993 and

To calculate the lump sum, the Office of Personnel Management (OPM) instructs that the agency first determine the leave period by projecting the unused leave from the first workday after separation and counting all subsequent workdays and holidays until exhausted. 5 C.F.R. § 550.1204(a). The agency should then "multipl[y] the number of hours of accumulated and accrued annual leave by the applicable hourly rate of pay, including other applicable types of pay listed in paragraph (b) of this section." Id. § 550.1205(a). In turn, paragraph (b) provides that the lump sum calculus shall include, at a minimum, an individual's "rate of basic pay" at separation as defined by 5 C.F.R. § 550.1202 and within-grade increases as defined by 5 U.S.C. §§ 5335, 5343(e)(2). See id. § 550.1205(b)(1), (4); see also id. § 550.1205(c) (vesting agency heads with discretion to include other types of pay as well by adopting agency-specific regulations or other standards). Lastly, individuals are also entitled to any cost-of-living adjustments (COLAs) and locality pay adjustments that take effect after the employee's separation date but before the expiration of his or her unused leave term. See id. § 550.1205(b)(2). In that instance, "[t]he agency must adjust the lump-sum payment to reflect the increased rate on or after the effective date of the pay adjustment." Id.

In practice, agencies appear to have computed and paid an initial lump sum based on the salary rate in effect on the date of separation, including any other applicable types of pay. See Def.'s Admis. Nos. 4, 53, ECF No. 198-2, Athey (citing VA policies not in the record); Andrus Decl. ¶ 3, ECF No. 98-3, Kandel. If a COLA or locality pay adjustment later took effect before an individual's unused leave period expired, the agency's policy was to issue a supplemental payment to cover the pay increase from the effective date of the adjustment to expiration of the outstanding leave. See VA Handbook 5007/30, part IV, app. B ¶ 2, ECF No. 198-6, Athey; Andrus Decl. ¶ 3, ECF No. 98-3, Kandel.

The VA explains that its field offices manually processed both the initial and supplemental lump sums for employees separating from the VA. Def.'s Admis. Nos. 43, 44, ECF No. 198-2, Athey. "[U]nless . . . payroll personnel within a Payroll Office or at a VA field office affirmatively submitted a Form TT 82 that indicated that an employee was entitled to a pay adjustment that became effective during the employee['s] lump-sum leave period, the employee did not receive the pay adjustment." Def.'s Admis. No. 41, ECF No. 198-2, Athey. This appears to have been a daunting task. The VA explains "[t]here are over 200 Veterans Administration (VA) field offices and over 225,000 VA employees who retired, separated, or died (from April 7, 1993 to April 14, 2002)." Def.'s Admis. No. 1, ECF No. 198-2, Athey. Likewise, the Government Accountability Office (GAO) explains that throughout the relevant period, "payments, such as awards, bonuses, lump sum leave payments, and dual rate payments for accrued leave," also known as

_____

1999 when class members separated from their agencies, are immaterial to this opinion unless otherwise noted.

supplemental lump sums, "were processed manually by GAO employees in the Human Capital Office." Andrus Decl. ¶ 2, ECF No. 98-3, Kandel.  An initial lump-sum payment would issue based on an individual's rate of pay at separation; then, a second lump sum would issue reflecting COLA and locality pay adjustments if and when appropriate. Id. ¶ 3.  The record does not contain any evidence regarding the processing of lump-sum payments at other agencies, but the court assumes that other agencies employed, or intended to employ, similar two-step processes.

Neither the Athey plaintiffs nor the Kandel plaintiffs challenge any agency's computation and payment of the initial lump sums.  Rather, plaintiffs in both cases complain about their agencies' alleged failures to issue supplemental lump sums to eligible individuals reflecting applicable COLAs, locality pay adjustments, and non-overtime Sunday pay.

II.     PROCEDURAL POSTURE

A.      The Athey Action

The Athey class is comprised of former employees of the Department of Veteran Affairs (VA), who were eligible for lump-sum payments for unused annual leave when they retired, died, or separated from the VA on or after April 7, 1993.  See Order App'g Class Certification 2, ECF No. 164, Athey.  The court has determined it has jurisdiction over the Athey plaintiffs' claims under the lump-sum payment statute, 5 U.S.C. § 5551 et seq.  Athey v. United States (Athey I), 78 Fed. Cl. 157, 159–61 (2007) (Smith, J.), recons. denied, Order, July 24, 2009, ECF No. 98 (Smith, J.) (denying reconsideration "for the reasons set forth in the [c]ourt's Kandel v. United States [(Kandel I)], 85 Fed. Cl. 437 (2009) opinion").  However, their claims for supplemental lump sums reflecting certain "additional" or "premium" pay did not survive defendant's Rule 12(b)(6) challenge.  Id. at 161–63.  This left the Athey plaintiffs with their claims for supplemental payments reflecting (i) non-overtime Sunday pay, for the time period April 7, 1993 through September 30, 1997, provided they regularly and customarily performed work on a Sunday prior to their separation, which survived defendant's motion to dismiss; and (ii) COLAs and locality pay adjustments, which defendant never challenged in its motion to dismiss.  See id. at 162–64.

The court has also held it has jurisdiction over the Athey plaintiffs' claim for interest under the Back Pay Act.  Athey v. United States (Athey II), 108 Fed. Cl. 617, 618–19 (2013) (Smith, J.).  Further, the court determined that the Athey plaintiffs had stated a claim for relief under the BPA because, the court reasoned, their claims "adequately fall within the [Act's] defined terms of 'employee' and 'pay.'"  Id. at 622.

Finally, the court also granted partial summary judgment to a sub-set of the Athey class, finding that the VA violated the lump-sum payment statute to the extent it failed to include COLAs and locality pay adjustments in supplemental lump sums for any of the

agency's qualifying former General Schedule (GS) employees.  Athey v. United States (Athey III), 115 Fed. Cl. 739, 744–48 (2014) (Campbell-Smith, J.).  Liability to non-GS employees, as well as so-called "hybrid" employees, for COLAs and locality pay adjustments remains outstanding, as does liability to the entire class for non-overtime Sunday pay.  See id. at 743, 748.  The parties currently are engaged in damages discovery.

B.    The Kandel Case

The Kandel class is comprised of former employees of "all" other agencies, excepting the VA covered in Athey; seventeen agencies who settled in earlier litigation, Archuleta v. United States, No. 99-205C; and sixty others expressly excluded.  Order App'g Class Certification 2 & Ex. A, ECF No. 123, Kandel.  The class is further limited to those who separated on or after April 14, 1993 but before September 7, 1999.  Id. at 2.  They seek supplemental lump sums reflecting COLAs and locality pay increases, non-overtime Sunday pay, and foreign post allowances.  See id. at 2–3.

To date, the court has issued numerous opinions.  See Solow v. United States, 78 Fed. Cl. 86 (2007) (Smith, J.) (finding action not barred by res judicata, laches, or the statute of limitations, which was tolled), recons. granted-in-part sub nom. Kandel v. United States (Kandel I), 85 Fed. Cl. 437 (2009) (Smith, J.) (holding equitable tolling was not available but that the limitations period was still subject to statutory tolling), recons. denied by Order, May 29, 2009, ECF No. 54; see also Kandel v. United States (Kandel II), 115 Fed. Cl. 749 (2014) (Campbell-Smith, J.) (denying plaintiffs' motion to amend class notices to state that BPA interest was available); Kandel v. United States (Kandel III), 115 Fed. Cl. 752 (2014) (Campbell-Smith, J.) (denying partial summary judgment to four named plaintiffs on lump-sum liability).  Procedurally, notice to potential class members was mailed in June 2015 and the period for opting into the class is scheduled to close in the fall of 2015.  See Order, July 13, 2015, ECF No. 197, Kandel.

C.    Consolidation & Present Motions

On March 30, 2015, the court consolidated the two cases for the limited purpose of addressing liability for interest under the Back Pay Act.  Order, ECF No. 230, Athey; Order, ECF No. 192, Kandel; see also R. Ct. Fed. Cl. (RCFC) 42(a) (consolidation authority).  Now before the court are the parties' cross-motions for partial summary judgment regarding whether the Back Pay Act, 5 U.S.C. § 5596, provides a basis for prejudgment interest on the violations of the lump-sum payment statute alleged in this case.  The parties' cross-motions, responses, replies, and other submissions on the subject of interest are scattered across a myriad of filings in Athey, see ECF Nos. 198, 204, 205; see also ECF Nos. 183, 186, 173, 194, 233, 237, as well as in Kandel, see ECF Nos. 98, 141, 142, 143, 149, 150, 151, 161, 163; see also ECF Nos. 129, 132, 137, 139.  For ease of reference, the court will cite to these materials by merely the generic "Pls.' Br." or "Def.'s Br."

III.    LAW OF THE CASE

Before the court considers the merits of the cross-motions for summary judgment, it must address a preliminary question.  Plaintiffs invoke the law of the case doctrine, arguing that the court has already resolved plaintiffs' entitlement to Back Pay Act interest as a matter of law and cannot revisit it now.  See generally Pls.' Br., ECF Nos. 198-1, 205, 233, 237, Athey; Pls.' Br., ECF Nos. 129, 141-1, Kandel.  They refer to Judge Smith's decision in Athey II, which denied defendant's Rule 12(b)(6) motion to dismiss the Athey plaintiffs' BPA interest claim because, the court reasoned, plaintiffs' claims "adequately fall within the [BPA's] defined terms of 'employee' and 'pay'" so as to state a claim under the Act.  Athey II, 108 Fed. Cl. at 622.  Plaintiffs argue that this decision did more than merely gauge the facial plausibility of plaintiffs' BPA claim.  Pls.' Br. 3, ECF No. 233, Athey.  They allege it created the law of the case with respect to at least two findings—(i) plaintiffs qualified as "employee[s]" under the Act; and (ii) lump-sum payments for annual leave qualified as "pay" under the Act.  See id. at 3–6.  Plaintiffs further contend that as a result of these findings, Athey II essentially stands for the much broader holding that defendant is in fact liable to plaintiffs for BPA interest on an agency's violation of the lump-sum payment statute and, therefore, there is no need for any further briefing or decision on the subject of interest.  See Pls.' Br. 9, ECF No. 205, Athey; Pls.' Br. 2–4, ECF No. 129, Kandel (seeking to amend the class notice to state "interest is due and payable" based on Athey II).  Defendant responds that Athey II cannot be the law of the case because its conclusions with respect to "employee" and "pay" are clearly erroneous and, further, plaintiffs fail to satisfy the additional BPA criteria that they have suffered from an "unjustified or unwarranted personnel action."  See Def.'s Br. 3–6, ECF No. 137, Kandel; Def.'s Br. 9–10 n.4, ECF No. 149, Kandel.

A.      The Law of the Case Doctrine

The "law of the case" doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."  Arizona v. California, 460 U.S. 605, 618 (1983), supplemented by 466 U.S. 144 (1984); see also Agostini v. Felton, 521 U.S. 203, 236 (1997) (citing Messinger v. Anderson, 225 U.S. 436, 444 (1912)).  By discouraging re-litigation of decided issues, the doctrine protects the parties' settled expectations, promotes orderly development of a case, fosters judicial efficiency, and discourages endless litigation.  Suel v. Sec'y of Health & Human Servs., 192 F.3d 981, 984–85 (Fed. Cir. 1999); see also Toro Co. v. White Consol. Indus., Inc., 383 F.3d 1326, 1335 (Fed. Cir. 2004).  It also fosters fairness because "a litigant given one good bite at the apple should not have a second."  Suel, 192 F.3d at 985 (quoting Perkin–Elmer Corp. v. Computervision Corp., 732 F.2d 888, 900 (Fed. Cir. 1984)); see also Toro, 383 F.3d at 1335 (citing United States v. Turtle Mountain Band of Chippewa Indians, 612 F.2d 517, 520 (Ct. Cl. 1979) ("No litigant deserves an opportunity to go over the same ground twice, hoping that the passage of time or changes in the composition of the court will provide a more favorable result the second time.")).

6

The doctrine only precludes reconsideration of "issues that were actually decided, either explicitly or by necessary implication, in the earlier litigation," Toro, 383 F.3d at 1335, and in practice, it is applied "more or less strictly depending on the circumstances of the case," Jamesbury Corp. v. Litton Indus. Products, Inc., 839 F.2d 1544, 1550 (Fed. Cir. 1988), overruled on other grounds by A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020 (Fed. Cir. 1992). "When a judgment of a trial court has been appealed, the decision of the appellate court determines the law of the case, and the trial court cannot depart from it on remand." Jamesbury, 839 F.2d at 1550; see also Banks v. United States, 741 F.3d 1268, 1276 (Fed. Cir. 2014) ("The mandate rule, encompassed by the broader law-of-the-case doctrine, dictates that 'an inferior court has no power or authority to deviate from the mandate issued by an appellate court.'" (quoting Briggs v. Pa. R. Co., 334 U.S. 304, 306 (1948))). The doctrine also applies "especially to 'transfer decisions of coordinate courts,' because 'transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation.'" Taylor v. United States, 73 Fed. Cl. 532, 538 (2006) (quoting Christianson v. Colt Indust. Operating Corp., 486 U.S. 800, 816 (1988)).

"At the trial level however, the law of the case is little more than a management practice to permit logical progression toward judgment." Jamesbury, 839 F.2d at 1550 (quotation marks omitted). Thus, at least in the context of interlocutory decisions, "[i]t is well accepted that the application of the law of the case doctrine is discretionary" and "should not be applied woodenly in a way inconsistent with substantial justice." Hudson v. Principi, 260 F.3d 1357, 1363–64 (Fed. Cir. 2001); accord Arizona, 460 U.S. at 618. This discretion comports with the court's inherent power to revise its own decisions at any time before the entry of judgment. See Jamesbury, 839 F.2d at 1550; C.W. Over & Sons, Inc. v. United States, 48 Fed. Cl. 342, 347 (2000); see also RCFC 54(b).

That said, while "a court has the power to revisit prior decisions of its own . . . in any circumstance, . . . [it] should be loath[] to do so in the absence of extraordinary circumstances." McGuire v. United States, 707 F.3d 1351, 1365 (Fed. Cir. 2013) (Reyna, J., concurring) (quoting Christianson, 486 U.S. at 817). "Reasons that may warrant departure from the law of the case . . . include [1] the discovery of new and different material evidence . . . , or [2] an intervening change of controlling legal authority, or [3] when the prior decision is clearly incorrect and its preservation would work a manifest injustice." Intergraph Corp. v. Intel Corp., 253 F.3d 695, 698 (Fed. Cir. 2001) (citing Smith Int'l, Inc. v. Hughes Tool Co., 759 F.2d 1572, 1576 (Fed. Cir. 1985)).

B.     Athey II is Not Dispositive on Summary Judgment

The court first addresses plaintiffs' argument that Athey II, which denied defendant's 12(b)(6) motion to dismiss, somehow ipso facto also found liability to plaintiffs for BPA interest without the need for further argument or decision. Plaintiffs' attempt to conflate a ruling on a motion to dismiss with one on summary judgment lacks merit. An initial denial of a motion to dismiss does not foreclose, as the law of the case,

the court's later consideration of those claims on summary judgment.  See Behrens v. Pelletier, 516 U.S. 299, 309 (1996); Gould, Inc. v. United States, 66 Fed. Cl. 253, 266 (2005) ("The 'law of the case,' therefore, is that these allegations survive a motion to dismiss for failure to state a claim upon which relief can be granted.  Whether the merits of those very same claims survive summary judgment is an entirely different and undecided matter.").[3]  The law of the case does not apply because a motion to dismiss and a motion for summary judgment require consideration of different "legally relevant factors."  See Behrens, 516 U.S. at 309.  A different factual record and a different standard of review governs each motion.  See id.  Blurring the line between the motions "would senselessly rob parties of the protection afforded by Federal Rule of Civil Procedure 56."  Tse v. Ventana Med. Sys., Inc., 123 F. Supp.2d 213, 222 (D. Del. 2000) (quoting McIntyre v. Philadelphia Suburban Corp., 90 F. Supp.2d 596, 603 n.5 (E.D. Pa. 2000)), aff'd, 297 F.3d 210 (3d Cir. 2002); see also C. Sanchez & Son, Inc. v. United States, 6 F.3d 1539, 1541 n.2 (Fed. Cir. 1993) (explaining that RCFC 56 is, in pertinent part, identical to Federal Rule of Civil Procedure 56).

The prior denial of a motion to dismiss may still prove to be an indicator of later findings on liability, but the two rulings are not synonymous.  Courts have examined the extent to which the "legally relevant factors" referenced in Behrens overlap or differ in prior and subsequent motions to dismiss or for summary judgment.  See, e.g., Toro, 383 F.3d at 1336–37 (concluding prior claim construction was not law of the case for later analysis of disclosure-dedication rule because disclosed but unclaimed subject matter relevant in the later analysis was not at the crux of the court's earlier claim construction opinion); C.W. Over & Sons, 48 Fed. Cl. at 347 (finding law of the case was not applicable where current motion for summary judgment relied on different grounds than prior motion for summary judgment); Samuel T. Isaac & Assocs., Inc. v. United States, 3 Cl. Ct. 524, 527–28 (1983) (same); accord McKenzie v. Bellsouth Telecomms., Inc., 219 F.3d 508, 513 (6th Cir. 2000) (finding prior "holding on a motion to dismiss does not establish the law of the case for purposes of summary judgment, when the complaint has been supplemented by discovery"); Equal Rights Ctr. v. Equity Residential, 798 F. Supp.2d 707, 721 (D. Md. 2011) (explaining that "[a] denial of a motion to dismiss

---

[3]     Numerous courts agree that a prior denial of a motion to dismiss does not preclude a subsequent grant of summary judgment to defendant.  See Stonecipher v. Valles, 759 F.3d 1134, 1148 n.9 (10th Cir. 2014), cert. denied, 135 S. Ct. 881 (2014); Maraschiello v. City of Buffalo Police Dep't, 709 F.3d 87, 97 (2d Cir. 2013), cert. denied, 134 S. Ct. 119 (2013); Parmelee Transp. Co. v. Keeshin, 292 F.2d 794, 797 (7th Cir. 1961); see also Fin. Res. Network, Inc. v. Brown & Brown, Inc., 754 F. Supp.2d 128, 155 (D. Mass. 2010); Schneyder v. Smith, 709 F. Supp. 2d 368, 384 (E.D. Pa. 2010), aff'd, 653 F.3d 313 (3d Cir. 2011); Conopco, Inc. v. McCreadie, 826 F. Supp. 855, 867 n.5 (D.N.J. 1993), aff'd, 40 F.3d 1239 (3d Cir. 1994); Kostiuk v. Town of Riverhead, 570 F. Supp. 603, 607 (E.D.N.Y. 1983).

would only be dispositive of a later summary judgment motion, . . . if the factual showing were essentially congruent with the factual allegations made in the complaint," which was not the case there).

Athey II held that defendant failed to carry its burden of proving that plaintiffs' facts—assumed true for purposes of the motion—did not under law entitle defendant to dismissal of plaintiffs' claims. Athey II did not affirmatively state that plaintiffs are entitled to BPA interest as a matter of law. Athey II also cannot be dispositive on summary judgment where it only weighed two of four criteria necessary for BPA relief because the doctrine can apply only to issues actually decided. Athey II considered only whether plaintiffs were "employee[s]" and the lump sum was "pay," but never addressed whether this court was an "appropriate authority" under the facts of this case or whether the procedural errors at issue in this case amounted to "unwarranted or unjustified personnel action[s]." See 5 U.S.C. § 5551(a). Thus, Athey II's BPA analysis is incomplete for purposes of summary judgment.

C.    Athey II Erred In Concluding the Lump Sum Was "Pay"

In any event, whether BPA interest is available for violations of the lump-sum payment statute is an issue of largely first impression; thus, this court will not so woodenly apply the law of the case doctrine to preclude a thorough review of the claim. See Jamesbury, 839 F.2d at 1551 (stating the doctrine did not preclude revisiting a non-appealable denial of summary judgment if "further reflection may allow a better informed ruling in accordance with the conscience of the court") (quoting Corporacion de Mercadeo Agricola v. Mellon Bank Int'l, 608 F.2d 43, 48 (2d Cir. 1979)); Adams v. United States, 48 Fed. Cl. 602, 604 (2001) (revisiting a prior interlocutory order that held BPA interest was not available to plaintiffs who succeeded in recovering overtime pay under the FLSA because "the issue is important and the law is unsettled").

This is especially true where, as here, the court finds clear error in one of Athey II's principle findings that otherwise might have qualified for deference as law of the case. Athey II erroneously held that the lump-sum payment for annual leave was "pay" for purposes of the Back Pay Act. 108 Fed. Cl. at 619–20. The lump-sum payment statute plainly and unambiguously states that the "lump-sum payment is considered pay for taxation purposes only." 5 U.S.C. § 5551(a) (emphasis added). Thus, by definition, it is not "pay" for other purposes, including the Back Pay Act. See Sharp v. United States, 580 F.3d 1234, 1238 (Fed. Cir. 2009) ("[W]e must 'give effect, if possible, to every clause and word of a statute' and should avoid rendering any of the statutory text meaningless or as mere surplusage." (quoting Duncan v. Walker, 533 U.S. 167, 174 (2001)). The plaintiffs now even concede, "the lump-sum payment is not 'pay' by virtue of the specific limitation to taxation included in the lump-sum statute." Pls.' Br. 2, ECF No. 139, Kandel (switching gears to argue the lump-sum payment falls, instead, within "allowances, or differentials" as those terms are defined in the BPA); Pls.' Br. 15–16, ECF No. 141-1, Kandel (same).

Case law provides further support for this conclusion.  See Erickson v. United States & Metro. Life Ins. Co., 178 Ct. Cl. 183 (1967) ("It is expressly provided by [a predecessor] statute that such a [lump-sum] payment is not to be regarded as salary except for purposes of taxation;" thus, the unused leave that triggered it did not extend the plaintiff's retirement date); Nagle v. United States, 135 F. Supp. 424, 425 (Ct. Cl. 1955) (quoting the predecessor 1944 Act that provided, "the lump-sum payment . . . shall not be regarded, except for purposes of taxation, as salary or compensation").

In American Federation of Government Employees, AFL-CIO v. United States, for example, the district court considered "whether the lump-sum payment for military leave," payable under 37 U.S.C. § 501(b)(1), "constitute[d] deferred compensation, or [was] an ancillary fringe benefit afforded persons employed by the military."  622 F. Supp. 1109, 1115 (N.D. Ga. 1984), aff'd sub nom. Am. Fed'n of Gov't Employees v. United States, 780 F.2d 720 (Fed. Cir. 1986).  Given the similarities between Section 501(b)(1) and the civilian equivalent at 5 U.S.C. § 5551(a), the court compared the two statutes and concluded that they both authorized "a benefit, and not deferred compensation, to government and military employees."  Id.  First, Congress explicitly stated that the lump-sum payment is "pay for taxation purposes only," 5 U.S.C. § 5551(a), much like unused military leave "is not considered as service for any purpose," 37 U.S.C. § 501(c).  Id.  Second, "these statutes provide that the lump-sum amount may be paid only upon separation or discharge."  Id. (citing 5 U.S.C. § 5551(a); 37 U.S.C. § 501(b)(1)).  Third, "[b]oth statutes provide limitations, 37 U.S.C. § 501(b)(3) (payment for no more than sixty days); 5 U.S.C. § 5551(a) (period of leave not extended due to post-separation holiday)."  Id.

In addition, even if the lump-sum payment statute and the BPA were found to be in conflict on this point,[4] the lump-sum payment statute's specific definition of the lump sum would take precedence over the Back Pay Act's more general use of the term "pay."  "Specific terms prevail over the general in the same or another statute which otherwise might be controlling."  Thiess v. Witt, 100 F.3d 915, 919 (Fed. Cir. 1996), exceptions sustained in part (Jan. 2, 1997) (quoting D. Ginsberg & Sons, Inc. v. Popkin, 285 U.S. 204, 208 (1932)); see also Long Island Care at Home, Ltd. v. Coke, 551 U.S. 158, 170 (2007) (explaining in the context of competing regulations that "normally the specific

---

[4]     In Athey II, the court found that lump-sum payments fell within the BPA's definition of "pay" because 1981 OPM regulations interpreting "pay, allowances, differentials" under the Back Pay Act broadly defined the phrase to mean "monetary and employment benefits to which an employee is entitled by virtue of the performance of a Federal function."  108 Fed. Cl. 617, 620 (2013) (quoting Pay Administration (General); Back Pay Regulations, 46 Fed. Reg. 58,271-02, 58,275 (Dec. 1, 1981)).  Furthermore, comments accompanying the final rule expressly excluded retirement benefits, but did not expressly exclude lump-sum payments for annual leave.  46 Fed. Reg. 58,272.

governs the general").  This canon applies "without regard to priority of enactment."
Thiess, 100 F.3d at 919 (quoting Bulova Watch Co. v. United States, 365 U.S. 753, 758
(1961)); Anchor Sav. Bank, FSB v. United States, 121 Fed. Cl. 296, 327 (2015) (quoting
Morton v. Mancari, 417 U.S. 535, 550–51 (1974)).  The lump-sum payment statute has
defined the lump sum as "pay for taxation purposes only" since such payments were first
authorized by Congress in 1944.  See Act of Dec. 21, 1994, ch. 632 § 1, 58 Stat. 845
("That the lump-sum payment herein authorized shall not be regarded, except for
purposes of taxation, as salary or compensation and shall not be subject to retirement
deductions") (codified at 5 U.S.C. Supp. III, § 61(a) (1944)); see also Act of Sept. 6,
1966, Pub. L. 89-554, 80 Stat. 488 (re-codifying the statute at 5 U.S.C. § 5551(a)).  The
Back Pay Act, including its reference to the arguably ambiguous "pay, allowances, or
differentials," was adopted later.  See Erickson v. U.S. Postal Serv., 759 F.3d 1341,
1350–51, 1351 n.3 (Fed. Cir. 2014) (explaining that the original Back Pay Act of 1966,
Pub. L. No. 89-380, 80 Stat. 94, then codified at 5 U.S.C. § 652, was "enacted to
consolidate authorities for awarding back pay to employees subjected to unjustified
personnel actions" (quoting Andress v. U.S. Postal Serv., 56 M.S.P.R. 501, 507 (Mar. 10,
1993) (citing legislative history))), cert. denied, 135 S. Ct. 2919 (2015); see also Act of
Sept. 11, 1967, Pub. L. 90-83, § 1(34)(C), 81 Stat. 203 (transferring the Back Pay Act of
1966 to 5 U.S.C. § 5596).  The later-adopted BPA cannot be interpreted to supersede the
earlier lump-sum payment statute because the law is clear that "repeals by implication are
not favored" absent clear congressional intent, Canadian Lumber Trade Alliance v.
United States, 517 F.3d 1319, 1343 (Fed. Cir. 2008) (quoting United States v. United
Cont'l Tuna, 425 U.S. 164, 168 (1976)), and there is no evidence of such intent here.

Thus, the lump-sum payment for annual leave is not "pay" for purposes of the
Back Pay Act, and the court cannot defer to Athey II's contrary conclusion as the law of
the case.

D.     Athey II's Conclusion That Plaintiffs Are "Employees" Is the Law of the
Case

Under the law of the case doctrine, the court will defer to Athey II's finding that
plaintiffs are "employee[s]" for purposes of the Back Pay Act.  As Athey II explains, to
recover under the Back Pay Act, an individual must qualify as an "employee" as that term
is defined in 5 U.S.C. § 2105(a).  See 108 Fed. Cl. at 620.  Section 2105(a) defines an
"employee" to mean "an officer and an individual" who is (1) "appointed in the civil
service" by one of several listed officials; (2) "engaged in the performance of a Federal
function under authority of law or an Executive act;" and (3) "subject to the supervision
of [the appointing official] while engaged in the performance of the duties of his

position."[5]  These three elements are cumulative and a person must satisfy all three to qualify as an "employee."  Athey II, 108 Fed. Cl. at 620–21 (citing Ainslie v. United States, 355 F.3d 1371, 1374–75 (Fed. Cir. 2004)); see also Costner v. United States, 665 F.2d 1016, 1020 (Ct. Cl. 1981).  Furthermore, under OPM's 1981 regulations—in effect during the class periods (1993–1999)—"employee" includes current employees, but may also include former employees under appropriate circumstances.  See id. at 621; Pay Administration (General); Back Pay Regulations, 46 Fed. Reg. 58,271-02, 58,275 (Dec. 1, 1981) (amending 5 C.F.R. § 550.803 (1981)).

In concluding that plaintiffs herein—who are all former employees—fit within the BPA, Athey II turned to two Federal Circuit decisions for direction.  In Wallace v. Office of Personnel Management, 283 F.3d 1360, 1362–64 (Fed. Cir. 2002), a former federal employee brought suit two years after he retired from federal service seeking interest on miscalculated retirement benefits.  The Federal Circuit denied plaintiff relief under the BPA, reasoning that the BPA "appl[ies] only to payments made to individuals on account of unjustified or unwarranted personnel actions that occurred while those persons were 'employees,' i.e., individuals engaged in the performance of a federal function.  Wallace was not such a person when he was retired." Id. at 1362.

In contradistinction, Muniz v. United States, 972 F.2d 1304, 1311–13 (Fed. Cir. 1992), involved a former employee's claim to correct an error in the computation of his lump-sum payment for annual leave.  The central issue before the court was whether plaintiff's path to relief was through the courts or instead through the grievance procedures of his collective bargaining agreement.  Neither the Back Pay Act nor section 2105's definition of "employee" was at issue.  But the case nevertheless turned on whether plaintiff was an employee, or already retired, at the time his claim for his lump sum arose.  The Federal Circuit concluded that plaintiff's lump-sum payment for annual leave was due upon severance and based on rights that had accrued and vested during his employment.  Thus, he was still an "employee" at the time his claim arose and his dispute with respect to the lump sum's calculation was a grievable matter within his collective bargaining agreement.

Despite the factual differences between Wallace and Muniz, Athey II reasoned that both cases "articulate[] the same legal test."  Athey II, 108 Fed. Cl. at 622.  "[B]oth cases ask whether the employee's claim arose during Federal employment and whether the claim was in connection with that period of employment."  Id.  Applying that test to this case, the court concluded plaintiffs "seek back pay for a lump-sum payment, which relates to due compensation from active Federal service."  Id. at 621.  Similar to Muniz, here plaintiffs' claims for miscalculation of lump sums were due upon severance and are

---

[5]      This definition has remained materially unchanged since it was first adopted in 1966.  See Act of 1966, Pub. L. No. 89-554, 80 Stat. 409 (codified as amended at 5 U.S.C. § 2105(a)).

based on rights that accrued and vested while they were still "employees" for purposes of the Back Pay Act. Id. at 622. The court is not aware of any "clear error" or other reason that would justify not applying this Athey II finding as the law of the case.

## IV.    STANDARD OF REVIEW

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). When weighing a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). "This standard is not changed when the parties bring cross-motions for summary judgment, [as] each non[-]movant receiv[es] the benefit of favorable inferences." Chevron U.S.A. Inc. v. Mobil Producing Texas & New Mexico, 281 F.3d 1249, 1253 (Fed. Cir. 2002) (citing Murphy Exploration & Production Co. v. Oryx Energy Co., 101 F.3d 670, 673 (Fed. Cir. 1996)). "[O]n cross-motions for summary judgment, [if] no genuine issues of material fact [are] in dispute, [the trial judge's] duty [is] to grant judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Lima Surgical Assocs., Inc., Voluntary Employees' Beneficiary Ass'n Plan Trust, Huntington Nat. Bank v. United States, 944 F.2d 885, 888 (Fed. Cir. 1991) (citing trial court opinion quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

## V.    LEGAL SOURCES FOR INTEREST AWARDS

### A.    The No-Interest Rule Generally Precludes Interest Awards Against the Government

"The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941). "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied. Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." Lane v. Peña, 518 U.S. 187, 192 (1996) (internal citations omitted).

Arising from this fundamental principle is the corollary "no-interest rule[,] . . . to the effect that interest cannot be recovered in a suit against the Government in the absence of an express waiver of sovereign immunity from an award of interest." Library of Congress v. Shaw, 478 U.S. 310, 311 (1986); Doyle v. United States, 931 F.2d 1546, 1550 (Fed. Cir. 1991). Thus, the waiver as to interest must be separate from the waiver as to underlying liability. Shaw, 478 U.S. at 314; see England v. Contel Adv. Sys., Inc., 384 F.3d 1372, 1379 (Fed. Cir. 2004) ("The no-interest rule can be waived only by 'specific provision by contract or statute, or express consent by Congress.'" (quoting Shaw, 478 U.S. at 317)). Codified for this court is the following: "Interest on a claim

against the United States shall be allowed in a judgment of the United States Court of Federal Claims only under a contract or Act of Congress expressly providing for payment thereof." 28 U.S.C. § 2516(a) (2012); Shaw, 478 U.S. at 317.

"This requirement of a separate waiver reflects the historical view that interest is an element of damages separate from damages on the substantive claim." Shaw, 478 U.S. at 314. Its "purpose," moreover, "is to permit the Government to occupy an apparently favored position by protecting it from claims for interest that would prevail against private parties." Shaw, 478 U.S. at 315–16 (internal citations and quotations omitted).

With regard to interest, the Supreme Court has expressly held that "[t]here can be no consent by implication or by use of ambiguous language." Shaw, 478 U.S. at 318 (quoting United States v. N.Y. Rayon Importing Co. (N.Y. Rayon), 329 U.S. 654, 659 (1947)); see also United States v. Thayer–West Point Hotel Co., 329 U.S. 585, 590 (1947) (stating that an interest waiver "must be affirmative, clear-cut, [and] unambiguous"). "Nor can an intent on the part of the framers of a statute or contract to permit the recovery of interest suffice where the intent is not translated into affirmative statutory or contractual terms." Shaw, 478 U.S. at 318 (quoting N.Y. Rayon, 329 U.S. at 659); see also United States v. Nordic Vill., Inc., 503 U.S. 30, 37 (1992) ("[L]egislative history has no bearing on the ambiguity point. . . . [T]he 'unequivocal expression' of elimination of sovereign immunity that we insist upon is an expression in statutory text. If clarity does not exist there, it cannot be supplied by a committee report."). Waivers, therefore, are limited to their plain language. Shaw, 478 U.S. at 318 (explaining that a court may "not enlarge the waiver 'beyond what the language requires'" (quoting Ruckelshaus v. Sierra Club, 463 U.S. 680, 685–86 (1983))). Ambiguities in language must be construed in favor of the sovereign's immunity. United States v. Williams, 514 U.S. 527, 531 (1995).

"[W]hen Congress waives sovereign immunity from interest, the waiver is typically in the statute itself." Adams v. United States, 48 Fed. Cl. 602, 604 (2001), aff'd, 350 F.3d 1216 (Fed. Cir. 2003). "There is no rule, however, that prevents the waiver from being found in a separate statute." Id. Thus, while it is plain that the lump-sum payment statute lacks a waiver for prejudgment interest, see 5 U.S.C. §§ 5551 et seq., the question remains whether the Back Pay Act might provide the requisite waiver based on the facts of this case, see 5 U.S.C. § 5596.

B.     BPA Interest May Be Available if the Statutory Elements Are Met

The Federal Circuit has not expressly addressed whether the Back Pay Act waives sovereign immunity for interest on violations of the lump-sum payment statute that occurred between 1993 and 1999.

The BPA's interest provision was added in 1987.  Appropriations Act of 1987, Pub. L. No. 100–202, § 623, 101 Stat. 1329–428 (codified as amended at 5 U.S.C. § 5596(b)(2)(A) ("An amount payable under paragraph (1)(A)(i) of this subsection shall be payable with interest.")).  Prior to 1987, there was plainly no statute authorizing interest for violations of the lump-sum payment statute.  See Quillo v. United States, 2 Cl. Ct. 242, 243 (1983) (holding former civilian federal employee was not entitled to interest on lump-sum award for 128 hours of unused annual leave accumulated during his last tour of duty, where neither statute nor constitutional provision required award of interest); cf. Rasmussen v. United States, 543 F.2d 134, 142 n.20 (Ct. Cl. 1976) (holding the Back Pay Act provided a vehicle for allowing back pay for an improper reduction-in-force but denying interest "since no statute so provide[d] in this kind of case").

Likewise, since 2000 there has been no statute authorizing interest on miscalculations of the lump-sum payment because in that year OPM amended its BPA regulations to exclude from the Back Pay Act lump-sum payments for annual leave as well as other payments due upon an employee's separation.  See DeOcampo v. Dep't of the Army, 551 F. App'x 1000, 1003 (Fed. Cir. 2014) ("The Back Pay Act's implementing regulation defines the terms 'pay, allowances, and differentials,' and specifically excludes monetary benefits 'payable to separated or retired employees based upon a separation from service, such as retirement benefits, severance payments, and lump-sum payments for annual leave.'" (quoting 5 C.F.R. § 550.803 (2000)).

For separations occurring in the interim years critical to this litigation (1993–1999), however, authority is sparse and either not definitive or not controlling in this circuit on whether a violation of the lump-sum payment statute may also be cognizable under the Back Pay Act in effect at that time.  See, e.g., Am. Fed'n of Gov't Employees, AFL-CIO, 622 F. Supp. at 1115 (holding that the lump-sum payment for unused military leave due upon a service member's separation did not qualify as pay in the context of a challenge to the constitutionality of a statute); Jacobs v. Morgan, No. C 00-2490 JL, 2001 WL 536559, at *2 (N.D. Cal. May 2, 2001) (denying plaintiff's claim for BPA interest on the delayed payment of a lump sum, reasoning that the "lump sum payment was entirely for accrued but unused annual leave, not for back pay").  Accordingly, this court turns to analyze liability under the Back Pay Act, element by element.

VI.    BPA APPLICATION TO THIS CASE

The Back Pay Act permits interest on an amount payable to "[a]n employee of an agency who . . . is found by appropriate authority . . . to have been affected by an unjustified or unwarranted personnel action which had resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee."  5 U.S.C. § 5596(b)(1)(A), (2)(A) (emphasis added).

A.     "Employee"

For the reasons set forth in <u>Athey II</u>, 108 Fed. Cl. 620–22, and in section III.D, <u>supra</u>, plaintiffs' claims for miscalculation of their lump-sum payments for annual leave were payable upon separation and based on rights that accrued and vested before they separated from federal service.  Therefore, plaintiffs meet the definition of "employee" for purposes of the Back Pay Act.

B.     "Appropriate Authority"

Before plaintiffs may recover under the Back Pay Act, an "appropriate authority" must make a predicate determination that plaintiffs suffered an unjustified and unwarranted personnel action.  5 U.S.C. § 5596(b)(1).  In the Back Pay Act's early years, the Civil Service Commission interpreted an "appropriate authority" to include "a court having jurisdiction" as well as other entities.  Pay Administration (General), 42 Fed. Reg. 16,127, 16,128 (Mar. 25, 1977), <u>as amended by</u> 44 Fed. Reg. 48,954 (Aug. 21, 1979) (codified at 5 C.F.R. § 550.803).  Then in 1981, OPM revised its back pay regulations to implement back pay amendments of the then-newly passed Civil Service Reform Act of 1978 (CSRA), Pub. L. No. 95-454, 92 Stat. 1111.  <u>See</u> Pay Administration (General); Back Pay Regulations, 46 Fed. Reg. 58271-02 (Dec. 1, 1981).  In relevant part, OPM modified the definition of "appropriate authority" to mean "an entity having authority in the case at hand to correct or direct the correction of an unjustified or unwarranted personnel action, including . . . a court."  <u>Id.</u> at 58275 (amending 5 C.F.R. § 550.803); <u>see Gavette v. Office of Pers. Mgmt.</u>, 808 F.2d 1456, 1469 (Fed. Cir. 1986) (discussing same).

Shortly thereafter, "[t]he Supreme Court held in <u>United States v. Fausto</u>, 484 U.S. 439, 454 (1988), that the enactment of the CSRA operated to deprive a Tucker Act court of jurisdiction it would otherwise have over certain actions."  <u>Worthington v. United States</u>, 168 F.3d 24, 26 (Fed. Cir. 1999).  But the Court of Federal Claims retains jurisdiction to consider claims not covered by the CSRA.  <u>Id.</u>  Thus, whether this court is an "appropriate authority" in any particular case depends on whether the alleged personnel action at issue is one over which the CSRA has deprived this court of jurisdiction in favor of administrative review channels.  <u>See id.</u> at 26–27; <u>see also Salinas v. United States</u>, 323 F.3d 1047, 1049 (Fed. Cir. 2003); <u>Abramson v. United States</u>, 42 Fed. Cl. 326, 332 (1998).  The CSRA encompasses three general types of personnel actions:  (i) removals or reductions in grade for "unacceptable job performance," <u>Fausto</u>, 484 U.S. at 445–46 (citing 5 U.S.C. § 4303(b)(1)); (ii) "prohibited personnel practices, including unlawful discrimination, coercion of political activity, nepotism, and reprisal against so-called whistleblowers," <u>id.</u> at 446 (citing 5 U.S.C. § 2302); and (iii) adverse personnel actions taken against employees for the "efficiency of the service," i.e., for misconduct, such as suspensions, furlough, reductions in grade or pay, or removal, <u>id.</u> at 446–47 (citing 5 U.S.C. §§ 7501–04, 7511–14); <u>accord</u> <u>Bosco v. United States</u>, 931 F.2d 879, 883 (Fed. Cir. 1991); <u>King v. United States</u>, 81 Fed. Cl. 766, 770–72 (2008).

In <u>Salinas v. United States</u>, the Federal Circuit considered "whether the Court of Federal Claims correctly dismissed for lack of jurisdiction a government employee's suit seeking back pay for the period during which he had been suspended following his indictment in a state court." 323 F.3d at 1047. It found that plaintiff's suspension was covered by Chapter 75 of the CSRA. <u>Id.</u> at 1049. Therefore, plaintiff should have tried to bring his first appeal to the Merit Systems Protection Board and then to the Federal Circuit, not to the Court of Federal Claims. <u>See id.</u> In other cases, however, the Court of Federal Claims and the Federal Circuit have recognized certain BPA claims in which the court is an "appropriate authority." <u>See</u> <u>Worthington</u>, 168 F.3d at 26–27 (holding court was empowered to hear BPA claim arising from procedurally improper reassignment to compressed work schedule); <u>Alaniz v. OPM</u>, 728 F.2d 1460, 1470 (Fed. Cir. 1984) (holding employees subjected to reduction in COLA rates as a result of OPM's improper COLA methodology were entitled to recover under the BPA and remanding for a damages computation); <u>Dustin v. United States</u>, 113 Fed. Cl. 366, 370 (2013) (finding court was an appropriate authority to review agency's failure to continue making plaintiff's student loan payments); <u>Abramson</u>, 42 Fed. Cl. at 332 (finding court could review plaintiffs' back overtime pay claim arising from allegation that agency's use of compensatory time off in lieu of overtime pay was improper under the Kiess Act).

Here, a dispute arising from the alleged procedural failure to issue supplemental lump-sum payments for annual leave is outside any of the CSRA-covered actions. Accordingly, this court is an "appropriate authority" under the BPA to consider plaintiffs' BPA claim.

C.      "Unjustified or Unwarranted Personnel Action"

As an "appropriate authority" in this case, the court turns to decide whether the government's failure to properly calculate lump-sum payments for annual leave qualifies as an "unjustified or unwarranted personnel action" within the meaning of the Back Pay Act. <u>See</u> 5 U.S.C. § 5596(b)(1). Since 1978, the Back Pay Act has defined a "personnel action" to "include[] the omission or failure to take an action or confer a benefit." <u>See</u> Civil Service Reform Act of 1978, Pub. L. 95-454, § 702, 92 Stat. 1111, <u>amended in relevant part by</u> Appropriations Act of 1987, Pub. L. No. 100-202, § 101(m) [Title VI, § 623(a)(1)], 101 Stat. 1329, <u>amended in relevant part by</u> Strom Thurmond Nat'l Def. Auth. Act For FY 1999, Pub. L. No. 105-261, § 1104(a)(1), 112 Stat. 1920 (Oct. 17, 1998) (codified as amended at 5 U.S.C. § 5596(b)(5)). In turn, OPM has elaborated that an "'unjustified or unwarranted personnel action' means an act of commission or an act of omission (i.e., failure to take an action or confer a benefit) that an appropriate authority subsequently determines, on the basis of substantive or procedural defects, to have been unjustified or unwarranted under applicable law, . . . rule, [or] regulation." Pay Administration (General); Back Pay Regulations, 46 Fed. Reg. 58,271-02, 58,275–76 (Dec. 1, 1981) (codified at 5 C.F.R § 550.803). "Such actions include personnel actions and pay actions (alone or in combination)." <u>Id.</u> at 58,276.

As the Supreme Court has explained, the BPA "was intended to grant a monetary cause of action only to those who were subjected to a reduction in their duly appointed emoluments or position." United States v. Testan, 424 U.S. 392, 407 (1976).  Adverse actions commonly within the BPA involve employee hiring, promotion, demotion, resignation, and termination. Abramson, 42 Fed. Cl. at 332 (citing Testan, 424 U.S. at 405–06).  But the Federal Circuit has recognized that an "unjustified or unwarranted personnel action" also encompasses procedural errors and failures to pay.  In Romero v. United States, the Federal Circuit held that plaintiffs were entitled to recover under the BPA for the government's unlawful withholding of funds for income tax purposes pursuant to an invalid withholding agreement between the United States and the Commonwealth of Puerto Rico.  38 F.3d 1204, 1210–12 (Fed. Cir. 1994).  Similarly, in Alaniz v. Office of Personnel Management, the Federal Circuit held that plaintiffs were entitled to recover under the BPA for OPM's invalid reduction in their COLAs because OPM failed to follow the notice and comment procedures of the Administrative Procedure Act in setting new rates.  728 F.2d at 1462, 1467–70; accord Crimaldi v. United States, 651 F.2d 151, 153–54 (2d Cir. 1981) (noting "that 'unwarranted personnel action' may result from errors of procedure, not simply those of substance," but finding the procedural error at issue was harmless and therefore no back pay was due).

Consistent with Federal Circuit precedent, this court has also recognized procedural errors and failures to pay to be an "unjustified or unwarranted personnel action."  In Adde v. United States, for example, this court concluded that a nurse posted to an international health organization by the National Institutes of Health (NIH) was the victim of an "unjustified personnel action" under the BPA where NIH had failed to pay the nurse her retroactive foreign post allowances for over three years.  98 Fed. Cl. 517, 522 (2011).  The court rejected defendant's argument that the nurse was not the victim of an adverse action but "merely the victim of delayed payment, because the government eventually conceded its liability and agreed to pay . . . her retroactive pay allowances." Id. at 522.  It was also irrelevant, the court found, that the government's delay might be attributed to a "'number of complicating issues,' the 'difficult legal issue' of retroactive pay, 'unique circumstances,' and 'an administrative nightmare.'" Id.  "[T]he fact remain[ed] that [the nurse] did not obtain post allowances required by statute until well after she had commenced litigation and the government had denied her right to such post allowances in its pleadings before this court."  Id.; cf. Dustin, 113 Fed. Cl. at 370 (finding that the VA's failure to resume repayment of plaintiff's student loans was an "unjustified or unwarranted personnel action"); Crowley v. United States, 57 Fed. Cl. 376, 380–82 (2003) (holding a federal investigator who established entitlement to premium locality pay under the Federal Law Enforcement Pay Reform Act (FLEPRA) was also entitled to BPA interest because denial of premium pay constituted an adverse action resulting in lost pay), aff'd in part & rev'd in part on other grounds, 398 F.3d 1329 (Fed. Cir. 2005) (holding the Court of Federal Claims had jurisdiction to determine FLERPA eligibility but erred in holding plaintiff qualified, and further noting that the appellate court need not reach whether BPA interest was available, as the issue had become moot); Abramson, 42

Fed. Cl. at 332–33 (holding that plaintiffs who received compensatory time instead of overtime pay pursuant to an invalid regulation had effectively had their pay withheld, and thus were victims of an "unjustified or unwarranted personnel action").

Here, agency failure to include COLAs and locality pay adjustments in the lump sum calculus falls within the broad definition of an "unjustified or unwarranted personnel action" because it too reflects a procedural error and failure to pay. Moreover, to the extent an argument might exist that the failure to include COLAs and locality pay adjustments that took effect after an employee's separation is akin to a failure to promote not covered by the BPA, it is to no avail. The upward adjustments alleged in this case were mandatory and thus would still qualify as the kind of error encompassed by the BPA. As the District of Columbia Circuit has explained, the BPA was amended in 1978 to cover just those unlawful failures to promote involving upgrades that were mandatory. See Brown v. Sec'y of Army, 918 F.2d 214, 219–21 (D.C. Cir. 1990). Only in those limited circumstances "[would] the employee be treated as one already 'duly appointed' to the higher position, [such] that the failure to confer the benefit [would] constitute[] a 'withdrawal or reduction' in compensation." Id. at 220. If the upgrade was not of the virtually automatic kind, then no relief would be available under the BPA. Id.

Defendant nevertheless contends that the failure to properly calculate lump sums is not the kind of adverse action contemplated by the BPA. Def.'s Br. 19, ECF No. 98, Kandel; Def.'s Br. 5, ECF No. 137, Kandel; Def.'s Br. 13–14, ECF No. 149, Kandel; Def.'s Br. 4–5, ECF No. 163 at 4–5, Kandel. Defendant relies on three cases. In Bell v. United States, 23 Cl. Ct. 73, 77 (1991), plaintiffs who were involuntarily separated did not challenge their separation but did challenge the agency's refusal to pay severance in accordance with the Severance Pay Act, 5 U.S.C. § 5595. The court held that plaintiffs stated a claim under the Severance Pay Act but not under the Back Pay Act, because the court was "not called upon to correct an adverse personnel action" and "no relief in the nature of an injunction or declaratory relief [was] sought." Id. Rather, "[p]laintiffs' claims [were] analogous to ones for unpaid salary for time actually worked." Id. The Claims Court reasoned that the "[m]ere failure by a government agency to pay money due is not the kind of adverse personnel action contemplated in the Back Pay Act." Id. So, too, in Gilbert v. Federal Deposit Ins. Corp., the district court held that the erroneous denial of plaintiff's severance pay did not, in and of itself, constitute an adverse perssonel action under the BPA. 950 F. Supp. 1194, 1198–99 (D.D.C. 1997) (discussing Bell). Lastly, in Garcia v. United States, the district court denied BPA relief to individuals who sought to correct allege errors involving their Thrift Savings Plan contributions, holding that the BPA was "inapplicable where . . . an employee's claim is merely that the government owes her money." 996 F. Supp. 39, 40–43 (D.D.C. 1998) (citing Bell, 23 Cl. Ct. at 73).

Defendant has made similar arguments in two earlier cases before the court, and in both instances the arguments were rejected.  See Adde, 98 Fed. Cl. at 522; Abramson, 42 Fed. Cl. at 331–32.  As the court in Adde and in Abramson noted, defendant's reliance on Bell is misplaced because Bell's primary focus was whether this court was an "appropriate authority" not whether an "unjustified or unwarranted personnel action" occurred.  See Bell, 23 Cl. Ct. at 77.  Moreover, to the extent Bell drew any conclusions with respect to the definition of an "unjustified or unwarranted personnel action," those conclusions were summary and no authority is cited.  See id.  In contradistinction, "[t]here is binding precedent showing that a variety of pay claims may be brought in this court under the BPA because these claims implicate personnel actions addressed by the statute."  Adde, 98 Fed. Cl. at 522 (citing Hall v. United States, 617 F.3d 1313, 1318 (Fed. Cir. 2010) (reversing a decision of this court dismissing a claim for "forfeited pre-removal pay" brought under the BPA); Worthington, 168 F.3d at 25–27 (reversing a decision of this court dismissing a claim for "compressed work schedule" back pay brought under the BPA)).

Accordingly, the court is persuaded that the government's failure to properly calculate lump-sum payments for annual leave qualifies as an "unjustified or unwarranted personnel action" within the meaning of the Back Pay.

D.      "Pay, Allowances, or Differentials"

Even if plaintiffs qualify as "employee[s]" who suffered an "unjustified or unwarranted personnel action," they can only recover under the Back Pay Act if they also establish that the result was a "withdrawal or reduction of all or part of [their] pay, allowances, or differentials."  5 U.S.C. § 5596(b)(1).  There can be no dispute that various forms of "pay," "allowances," "differentials," and other "adjustments" are factors in the calculation of an individual's lump-sum payment for annual leave due upon separation.  See 5 U.S.C. § 5551(a) (providing the lump sum "shall equal the pay (excluding any differential under section 5925 [based on conditions of the environment] and any allowance under section 5928 [danger pay allowance]) the employee or individual would have received had he remained in the service until expiration of the [leave] period"); 5 C.F.R. § 550.1205(b) (listing the "types of pay and pay adjustments" to be included in calculating the lump sum, such as COLAs, locality pay adjustments, night differentials, supervisory differentials, and foreign post allowances).  But there is substantial dispute about whether the lump-sum payment itself qualifies as "pay, allowances, or differentials" for purposes of the Back Pay Act.

The Federal Circuit has plainly held that lump-sum payments for annual leave do not qualify as "pay, allowances, or differentials" for purposes of the Back Pay Act based on OPM revisions to the BPA regulations that took effect in 2000.  DeOcampo, 551 F. App'x at 1003 (explaining that the BPA's regulations amended in 2000 specifically exclude from "pay, allowances, or differentials" all monetary benefits "payable to separated or retired employees based upon a separation from service, such as retirement

benefits, severance payments, and lump-sum payments for annual leave." (quoting 5 C.F.R. § 550.803)); cf. Miscellaneous Changes in Compensation Regulations, 64 Fed. Reg. 69,165-01, 69,178 (Dec. 10, 1999) (amending 5 C.F.R. § 550.803).

However, the Federal Circuit has not directly considered whether the lump-sum payment for annual leave qualified as "pay, allowances, or differentials" before those explicit 2000 amendments took effect. The subject has come before the court only indirectly in one case. In American Federation of Government Employees, AFL-CIO v. United States, the district court considered "whether the lump-sum payment for military leave," payable under 37 U.S.C. § 501(b)(1), "constitute[d] deferred compensation, or [was] an ancillary fringe benefit afforded persons employed by the military." 622 F. Supp. at 1115. Given the similarities between Section 501(b)(1) and the civilian equivalent at 5 U.S.C. § 5551(a), the court compared the two statutes and concluded that they both authorized "a benefit, and not deferred compensation, to government and military employees." Id. First, Congress explicitly stated that the lump-sum payment is "pay for taxation purposes only," 5 U.S.C. § 5551(a), much like unused military leave "is not considered as service for any purpose," 37 U.S.C. § 501(c). Id. Second, "these statutes provide that the lump-sum amount may be paid only upon separation or discharge" and, in that sense, both statutes are unlike salary. See id. (citing 5 U.S.C. § 5551(a); 37 U.S.C. § 501(b)(1)). Third, "[b]oth statutes provide limitations, 37 U.S.C. § 501(b)(3) (payment for no more than sixty days); 5 U.S.C. § 5551(a) (period of leave not extended due to post-separation holiday)," and salary is not generally subject to such limitations or potential for reduction. See id.

Likewise, the Court of Claims has had occasion to comment on lump-sum liability in the process of determining that a plaintiff was not entitled to recover under the BPA for lost opportunities to purchase life and disability insurance because these were not "allowance[s]" to which he was entitled while an employee. Polos v. United States, 231 Ct. Cl. 929, 931 (Ct. Cl. 1982). In reaching this decision, the court reasoned that lost opportunities for insurance benefits "fall[] within the general category of claims for the monetary equivalent of annual leave, or for per diem expenses, or for interest, which have been denied in other cases as not being lost 'pay, allowances, or differentials' the employee would have earned, but for the wrongful personnel action." Id. (emphasis added).

Under OPM's 1981 regulations, which governed during the class periods here at issue (1993–1999), "pay, allowances, or differentials" were broadly defined as "monetary and employment benefits to which an employee is entitled by statute or regulation by virtue of the performance of a Federal function." Pay Administration (General); Back Pay Regulations, 46 Fed. Reg. 58,271-02, 58,275 (Dec. 1, 1981). In comments accompanying those regulations, OPM expressly excluded retirement benefits, but made no mention of lump-sum payments (either including them or excluding them from "pay, allowances, or differentials"). See id. at 58,272.

Athey II construed this silence and potential ambiguity in favor of including lump-sum payments within the BPA, 108 Fed. Cl. at 620, but on further reflection, the court finds the better interpretation excludes lump sums from coverage under the BPA.  Under well-established principles of sovereign immunity, waivers of sovereign immunity cannot be implied, and ambiguities must be construed in favor of the United States.  See supra Part V.A (citing, e.g., Lane, 518 U.S. at 192; Williams, 514 U.S. at 531; Shaw, 478 U.S. at 318).  Moreover, just as the lump sum does not qualify as "pay" under the BPA because a more specific definition in the lump-sum payment statute controls, see supra Part III.C, so too more specific definitions of "allowances" and "differentials" control over the BPA's more general definition.

The United States Code is replete with examples of authorized "allowances" and "differentials" payable to federal civilian employees in chapters 57 and 59 of title 5, but nowhere among these provisions is the lump-sum payment for annual leave defined to be, or included as, an "allowance" or "differential."  Moreover, cost-of-living increases and locality pay increases, which plaintiffs seek to include in their supplemental lump sums, are themselves defined by statute to be "adjustments" and "comparability payments," respectively, not "allowances" or "differentials."  See 5 U.S.C. §§ 5303, 5304; accord 5 C.F.R. § 550.1205(b)(2) (describing cost-of-living and locality pay increases to be included in the lump sums as "adjustments").  Moreover, by their very nature, all of these "allowances," "differentials," and "adjustments" are premiums that in practice are tacked on to increase an employee's "rate of basic pay."  In contrast, the lump-sum payment is a separate, distinct, and different kind of benefit.

Furthermore, the Back Pay Act itself distinguishes annual leave and the lump-sum payment for annual leave from "pay, allowances, and differentials."  The back payment of "pay, allowances, and differentials" is dealt with in 5 U.S.C. § 5596(b)(1)(A)(i), which authorizes a monetary payment in "an amount equal to all or any part of the pay, allowances, or differentials as applicable which the employee normally would have earned or received during the period if the personnel action had not occurred."  And it is payments due under this paragraph (b)(1)(A)(i), that "shall be payable with interest."  Id. § 5596(b)(2)(A).  In contrast, annual leave lost as a result of an adverse personnel action is addressed in a separate paragraph at 5 U.S.C. § 5596(b)(1)(B), which authorizes a re-crediting or restoration of that leave to an employee's leave account following correction of the adverse personnel action if the individual is still employed, or a lump-sum payment for annual leave pursuant to the lump-sum payment statute if and when they separate from federal civilian service.  No interest is authorized on payments of the lump sum.

Accordingly, the court cannot conclude that the lump-sum payment falls within the BPA's definition of "pay, allowances, or differentials."  Furthermore, since plaintiffs fail to meet one of the essential criteria for relief under the Back Pay Act, their claim for interest under the BPA must fail.

VII.    NEITHER EQUITY, NOR INTEREST BY ANOTHER NAME, PROVIDE
        ANOTHER BASIS FOR RELIEF

Plaintiffs contend that "[p]rejudgment interest is an extremely important aspect of this case which actually was first filed in 1999 and has been pending for 14 years since the filing of the Archuleta complaint," a predecessor case.[6] Pls.' Br. 10, ECF No. 198-1, Athey; see Archuleta v. United States, No. 99-205C. It might seem inequitable that BPA interest is not available. But, "[e]very violation of a statute . . . does not give rise to a claim in this court." Ainslie v. United States, 55 Fed. Cl. 103, 108 (2003) (citing Testan, 424 U.S. at 401; Anderson v. Wilson, 289 U.S. 20, 27 (1933) (Cardozo, J.) ("We do not pause to consider whether a statute differently conceived and framed would yield results more consonant with fairness and reason. We take the statute as we find it.")), aff'd, 355 F.3d 1371 (Fed. Cir. 2004); accord Smith v. United States, 8 Cl. Ct. 69, 74 (1985), aff'd, 823 F.2d 532 (Fed. Cir. 1987).

Moreover, equity cannot factor into whether plaintiffs can recover under the Back Pay Act or elsewhere. "In Shaw, the Supreme Court held that Congress must expressly waive the Government's sovereign immunity from suits for interest payments before claimants can recover interest or delay damages." Doyle, 931 F.2d at 1550 (citing 478 U.S. at 319); see supra Part V.A (discussing Shaw). "[P]olicy, no matter how compelling, is insufficient, standing alone, to waive immunity" for interest. Shaw, 478 U.S. at 320–21. Courts lack the power to award interest against the United States on the basis of what they think is or is not sound policy." Id. (quoting N.Y. Rayon, 329 U.S. at 663).

Furthermore, to the extent plaintiffs seek "delay" damages as opposed to interest, Shaw also bars recovery. Doyle, 931 F.2d at 1550. "In Shaw, the Supreme Court drew no distinction between interest and delay damages:

---

[6]     Plaintiffs also filed a notice alerting the court to a then-recent decision of the Federal Circuit that plaintiffs have alleged "re-affirm[s] the primacy of an award of prejudgment interest 'because it is necessary to make [plaintiffs'] compensation complete.'" Pls.' Br., ECF. No. 194, Athey (quoting Gaylord v. United States, 678 F.3d 1339, 1345 (Fed. Cir. 2012). Gaylord awarded interest in a copyright infringement action based on 28 U.S.C. § 1498(b), which waives the United States' sovereign immunity for copyright infringement including "reasonable and entire compensation as damages for such infringement." 678 F.3d at 1342, 1345. Plaintiffs' reliance on this case is misplaced. Neither Athey nor Kandel involve copyright infringement. Thus, 28 U.S.C. § 1498(b), as well as the scope of the phrase "reasonable and entire compensation" contained in that statute, are inapposite to this case.

But the force of the no-interest rule cannot be avoided simply by devising a new name for an old institution:

[T]he character or nature of 'interest' cannot be changed by calling it 'damages,' 'loss,' 'earned increment,' 'just compensation,' 'discount,' 'offset,' or 'penalty,' or any other term because it is still interest and the no-interest rule applies to it.

. . .

Interest and a delay factor share an identical function. They are designed to compensate for the belated receipt of money. The no-interest rule has been applied to prevent parties from holding the United States liable on claims grounded on the belated receipt of funds, even when characterized as compensation for delay.

Doyle, 931 F.2d at 1550 (quoting Shaw, 478 U.S. at 321–22).

Plaintiffs, however, are not left without a remedy.  They may recover the balances on their underpaid lump sums pursuant to the lump-sum payment statute, just not interest as an additional measure of damages.

VIII.   CONCLUSION

Accordingly, plaintiffs are not entitled to recover interest under the Back Pay Act for miscalculation of their lump-sum payments for annual leave.  Plaintiffs' motions for summary judgment with respect to interest under the Back Pay Act are **DENIED**. Defendant's motions for summary judgment with respect to interest under the Back Pay Act are **GRANTED.**

IT IS SO ORDERED.

 s/ Patricia Campbell-Smith
PATRICIA CAMPBELL-SMITH
Chief Judge