# In the United States Court of Federal Claims

No. 99-2051C

Filed: July 21, 2020

| | |
|---|---|
| **ROBERT M. ATHEY,** *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>**THE UNITED STATES,**<br><br>*Defendant.* | **Keywords:** Equal Access to Justice Act; EAJA; 28 USC § 2412; Attorney's Fees; Class Action; Position of the United States; Substantially Justified; Notice to Class. |

*Ira M. Lechner*, Washington, D.C., for Plaintiffs.

*Bryan M. Byrd*, Trial Attorney, *Reginald T. Blades, Jr.*, Assistant Director, *Robert E. Kirshman, Jr.*, Director, and *Ethan P. Davis*, Assistant Attorney General, Civil Division, United States Department of Justice, with whom was *Gia Chemsian*, Department of Veteran Affairs, Washington D.C., for Defendant.

## MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**[1]

At the epilogue of protracted class action litigation, following a lump-sum settlement between the Department of Veterans Affairs ("the VA") and the class action plaintiffs (the "Class"), the Class seeks payment of attorney fees and expenses pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. Resolution of this issue requires the Court to juxtapose the Class's modest success on the merits with notice requirements and firmly rooted jurisprudence governing the payment of attorney fees and expenses where the position of the United States was substantially justified.

The Court reluctantly concludes these considerations preclude recovery. While this outcome does not implicate the financial interests of the Class, it directly affects Class counsel. Of equal importance, because recovery of the expenses of litigation is inexorably linked to the criteria of EAJA for attorney fees, the as-yet unpaid third-party Class Administrator is left adrift, burdened by continuing duties to the Class with no certainty of payment. Because the Class does

---

[1] This matter was initially assigned to Judge Loren A. Smith, reassigned to Judge Mary Ellen Coster Williams (ECF No. 203) in 2013, Judge Patricia Elaine Campbell-Smith (ECF No. 210) in 2014, and to the undersigned on December 3, 2019 (ECF No. 320).

not satisfy the conditions of 28 U.S.C. § 2412(b) or (d), the Motion for Attorney Fees (ECF No. 324) is **DENIED**.

## I. Background

The history of this litigation is well-documented. The Class comprises former employees of the VA. *Athey v. United States*, 908 F.3d 696, 698 (Fed. Cir. 2018). From 1993 through 1999, the Class members retired or separated from the VA. *Id*. In the Complaint, filed June 21, 2006,[2] the Class claimed the VA omitted pay increases from lump-sum payments received upon termination of their employment. *Id*. at 698–99; *see also* (Am. Compl., ECF No. 2).[3] These pay increases included Cost of Living Adjustments (COLA), Locality Pay Adjustments, Sunday premium pay, as well as evening and weekend pay.[4] Finally, Class members sought prejudgment interest under the Back Pay Act, 5 U.S.C. § 5596. *Athey*, 908 F.3d at 699.

In widely separated decisions, the Court determined that (1) "additional pay," which class members contended should have been included in the lump-sum payouts received by class members upon separation from the VA, did not include evening and weekend pay; (2) non-General Schedule employees were not entitled to relief; (3) Sunday pay was not available after October 1, 1997, *Athey v. United States*, 78 Fed. Cl. 157, 161–63 (2007) ("*Athey I*"); and (4) the Class was barred from recovering pre-judgment interest. *Athey v. United States*, 123 Fed. Cl. 42, 61 (2015) ("*Athey III*").

In early 2017, the parties entered into a final settlement agreement resolving the remaining claim between the parties. *Athey v. United States*, 132 Fed. Cl. 683 (2017) ("*Athey IV*"), *aff'd,* 908 F.3d 696 (Fed. Cir. 2018) ("*Athey V*"). During the fairness hearing, both parties acknowledged that the settlement agreement did not provide for payment of attorney fees pursuant to the Back Pay Act. (ECF No. 293). The Class thereafter appealed the decisions in *Athey I* and *Athey III*. *Athey V*, 908 F.3d at 696. The Federal Circuit affirmed each of the trial court rulings thus ending the merits litigation. *Id*. at 710.

The settlement agreement provided for the payment of $637,347.37 consisting of $570,374.49 in lump-sum pay and $66,972.88 for the employer's contribution of employment-related taxes to the Class consisting of 3,231 members. *Athey IV*, 132 Fed. Cl. at 687. On May 17, 2019, the Class filed its first Motion for Attorney Fees which the United States opposed on June 13, 2019 as deficient and premature due to the possibility the parties would be able to

---

[2] This case was severed from *Archuleta et al. v. United States*, Case No. 99-205C.

[3] The Court cites to many documents throughout this opinion, some only once. To avoid clutter, the Court cites only to the CM/ECF document number for many of these passing references.

[4] Employees of other federal agencies have initiated similar challenges to lump sum and back pay practices. *See* U.S. Gen. Accounting Office, *GGD-97-100, Federal Civilian Personnel: Cost of Lump-Sum Annual Leave Payments to Employees Separating from Government* (May 29, 1997) (Noting differences in agency practices regarding back pay and filing of court cases); *see also Kandel v. United States*, 85 Fed. Cl. 437 (2009) (involving employees of United States Information Agency, the Resolution Trust Corporation, and the Nuclear Regulatory Agency); *Archuleta et al. v. United States*, Case No. 99-205C (involving employees of an additional 17 agencies not including those involved in *Kandel*).

resolve the fees dispute. The Court stayed this case to facilitate those negotiations. On December 19, 2019, the Court lifted that stay and permitted the class administrator to distribute sums in accordance with the settlement agreement. The Class's present motion for attorney's fees and expenses and supporting brief followed on January 13, 2020.[5] (Pl.'s Second Mot. for Atty. Fees, ECF No. 324-4 ("Pl.'s Brief")). The United States responded on February 12, 2020. (Def.'s Resp., ECF No. 326). The Class filed its reply in support on March 20, 2020. (Pl.'s Reply, ECF No. 331).

On April 23, 2020, the Court heard oral argument and ordered additional briefing related to the RCFC 23(h) notice requirement, supporting invoices, and documents of the Class's consulting experts. These issues also prompted the filing of supplemental documentation by the Class on April 30, 2020 at the direction of the Court. (*See* Supp. Decl. of Ira Lechner, ECF No. 340). Thereafter, the United States and the Class submitted their final memoranda regarding the issue of attorneys' fees and expenses on May 18, 2020 and May 26, 2020, respectively. (Def.'s Resp. to Pl.'s Submission, ECF No. 344; Pl.'s Reply in Supp. of Submission, ECF No. 345). Additional facts will be developed as required.

**II.   Analysis**

The Court begins by examining its own provisions for the recovery of attorney's fees and expenses in class actions, as well as the specific sums sought by the Class, before turning to the substance of recovery pursuant to EAJA.

A.  *Procedure for Recovery of Attorney Fees.*

RCFC 23 sets forth the procedure for class actions in the Claims Court. Subsection (h) authorizes an application for reasonable attorney's fees and nontaxable costs if certain requirements are met:

> **(h) Attorney's Fees and Nontaxable Costs.** In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply:
>
> **(1)** A claim for an award must be made by motion under RCFC 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.
>
> **(2)** A class member, or party from whom payment is sought, may object to the motion.
>
> **(3)** The court may hold a hearing and must find the facts and state its legal conclusions under RCFC 52(a).

RCFC 23(h). Despite reciting these plainly worded provisions, (Pl.'s Brief at 6), Class counsel did not provide notice of the motion to class members as RCFC 23(h)(1) requires. Depending on

---

[5] The filing of the second motion seeking attorney fees and costs mooted the Class's initial motion. (ECF No. 304).

3

the nature of a fee request, as discussed below, literal compliance with the notice requirement of the rule can be significant.

### i. Class Counsel Did Not Provide the Required Notice to the Class.

Class counsel did not provide notice to members of the Class prior to filing the motion seeking an award of attorney's fees and expenses pursuant to § 2412(b) and (d). The text of RCFC 23 requires, without exception, notice be given to class members in order to file a motion for fees and expenses. *See Greenwood v. United States*, 131 Fed. Cl. 231, 243–44 (2017) (Advisory committee notes to analogous Fed. R. Civ. P. 23(h)(1) require "notice . . . in all instances."). Specifically, RCFC 23(h)(1) requires the class members be given "[n]otice of the *motion*" for a fee award; generalized notice of class counsel's proposed compensation arrangement is insufficient. *See* RCFC 23(h)(1) (emphasis added). A boilerplate summary regarding payment of class counsel, years following settlement of the claim, and nearly a decade prior to the motion provided for by RCFC 23(h), is not sufficient.[6]

Usually, notice to class members will accompany the notice of a proposed settlement agreement. *See* Fed. R. Civ. P. 23(h) advisory committee's note (2003) ("When a settlement is proposed for Rule 23(e) approval, either after certification or with a request for certification, notice to class members about class counsel's fee motion would ordinarily accompany the notice to the class about the settlement proposal itself."); *Greenwood*, 131 Fed. Cl. at 244 (notice regarding proposed settlement which "expressly discussed plaintiffs' motion for attorneys' fees and costs" was sufficient). Notice provided in this manner allows class members the opportunity to object or comment on the motion for attorney's fees and costs in writing and at the fairness hearing. *Id.* at 244.

The settlement did not include terms related to the payment of attorney's fees and expenses. (*See* Settl. Agr. at ¶ 10, ECF No. 285-1 (specifically reserving issue of "attorney fees and expenses.")). While the notice of the settlement, posted on the Class website in early or mid-2017, specifically stated that the Court denied "payment of interest and attorney fees/expenses under the Back Pay Act[,]" it did not reference payment of attorney's fees and expenses pursuant

---

[6] Following the certification of the Class on November 5, 2010 (Order Approv. Class Cert., ECF 164), the following appeared on the Class website:

> If Class Counsel succeeds in recovering money for the Class, he will ask the Court for his fees and expenses. You will not have to pay these fees and expenses. If the Court grants Class Counsel's request, the fees and expenses would either be deducted from any money obtained for the Class, and/or paid separately by the United States. If the Class Counsel's fees and expenses are paid out of the money obtained for the Class, there will be a reduction in the amount available for distribution to Class Members, and it may reduce the amount of money you may be awarded. If there is no recovery in this case, you will not be required to pay any attorneys' fees or costs to Class Counsel, and if there is a recovery of money for the class in this case, you will NOT be asked to pay Class Counsel directly his fees and "out-of-pocket" costs.

to EAJA. (*See* Not. of Website Info., ECF No. 340-7).[7] Nor could it. Class counsel's motion followed years later. (*See* Pl.'s Brief (filed Jan. 13, 2020)).

        *ii.  Failure to Provide Notice was Harmless.*

No cases discuss the effect of the failure to provide notice required by RCFC 23(h)(1). Based on the purposes of RCFC 23(h), the importance of the notice requirement is dependent on the nature of the fee request. A motion for attorney's fees and expenses under the "common fund" doctrine, discussed below, is particularly significant for the Class.[8] An award under the "common fund" exception to the American Rule must be paid from the common fund of damages awarded to the class, thereby directly impacting the compensation payable to each Class member. Because fees are paid from the common fund, the relationship between class counsel and the Class transforms from a union of counsel and client aligned in advancing the client's interests, to both client and counsel competing for compensation from the limited funds in the common fund.

As some courts have noted in common fund cases, the relationship between clients and counsel is adversarial in the fees context. *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). This conflict over limited resources may also raise constitutional concerns: "[T]he fact that Rule 23 requires settlement and fee notice follows from the fact that these decisions are each likely to deprive the plaintiff of property . . .." Herbert B. Newberg, 6 *Newberg on Class Actions* § 18:43 (5th ed.) (notes eliminated). The deprivation of funds awarded to the Class "[triggers] a constitutional right to notice." *Id*. Without notice of counsel's efforts to be compensated from a common fund, Class members stand to lose some percentage of recovery, achieved after decades of litigation, without being made aware of their right to object. This result would hardly be comparable to the hypothetical "excellent result" justifying a fully compensable fee discussed in *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). (*See* Pl.'s Reply in Supp. of Subm. at 9).

This tension between counsel and Class members, both competing for the same common fund, mandates strict compliance with the notice provision of RCFC 23(h) when a fee petition is brought under the common fund exception permitted by § 2412(b). Such notice enables "potential objectors to examine the motion" and state objections to the reasonableness of the fees and expenses sought. *Cf.* Fed. R. Civ. P. 23 advisory committee's note (2003). Without notice, common fund beneficiaries who may challenge the reasonableness of the award have no meaningful opportunity to be heard. Even setting aside the other flaws with the Class's petition

---

[7] The exact date notice of the settlement appeared on the website could not be discerned from the record. On June 28, 2017, however, the Court noted that notice had previously been posted on the website. (Order Appr. of Settl. Agr. at 5, ECF No. 294).

[8] Class counsel takes the position that the notice requirement set forth in RCFC 23(h) does not apply to this action: "[I]t was procedurally unnecessary to post on the website the motion by Plaintiffs to award attorney fees and expenses . . .." (Decl. of Ira Lechner at 3). The Court respectfully disagrees with Class counsel's broad assertion. Moreover, Class counsel's current position, first advanced in briefing filed April 30, 2020, contrasts with Class counsel's earlier representation during oral argument: "So I believe that that notice occurred on the website and I – I hope it did, put it that way." (Or. Arg. Trans. at 11, ECF No. 343).

5

for fees under the common fund doctrine, Class counsel's failure to give notice to the class members prevents recovery under that theory.

Notice of a motion for payment of attorney's fees and expenses pursuant to § 2412(d) has distinct and less meaningful considerations because the fees and expenses are recovered directly from the losing party. Most importantly, a court's award of fees and expenses under § 2412(d) does not reduce the sums available to Class members. There is no "adversarial" tension between counsel and Class members and no constitutional implications from failure to provide notice. Because of this crucial distinction, the failure to provide notice of Class counsel's motion for attorney's fees and expenses pursuant to RCFC 23(h) in this instance is harmless. *See* RCFC 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."). Moreover, because the Court denies recovery of attorney's fees pursuant to § 2412(d), as explained below, the failure to provide notice is irrelevant.

### B. Recovery Under the Equal Access to Justice Act (EAJA).

The Court turns now to the substance of the EAJA claim. The Class seeks attorney fees and expenses under subsection (b) and/or (d) of EAJA. (Pl.'s Brief at 4). The United States counters that the Class is not entitled to an award of attorney fees under either subsection (b) or (d), but even if the class is entitled to award of fees and expenses, the sums sought by the Class should be significantly reduced. (Def.'s Resp. at 1–2). Before addressing the parties' respective arguments in detail, additional context is required.

"Congress enacted EAJA . . . in 1980 'to eliminate the barriers that prohibit small businesses and individuals from securing vindication of their rights in civil actions and administrative proceedings brought by or against the Federal Government.'" *Scarborough v. Principi*, 541 U.S. 401, 406 (2004) (quoting H.R. Rep. No. 96–1005, at 9 (1980)). One of the main reforms of EAJA was the amendment of § 2412 to allow parties who prevailed in civil litigation against the United States to recover awards of attorney's fees and expenses; awards that were previously unavailable under the statute. *Id*. "EAJA added two new prescriptions to § 2412 that expressly authorize attorney's fee awards" in addition to costs. *Id*.

Subsection (b) "made the United States liable for attorney's fees and expenses 'to the extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.'" *Id*. (quoting § 2412(b)). Subsection (d) "rendered the Government liable for a prevailing party's attorney's fees and expenses in cases in which suit would lie only against the United States or an agency of the United States." *Id*. at 406–07. Though similar in goal, these two provisions have different requirements. *See Hyatt v. Shalala*, 6 F.3d 250, 255 (4th Cir. 1993) (noting that the distinctions between the two sections of EAJA are of "considerable consequence" in the calculation of fees).

As explained below, the Court finds no basis for awarding fees under Subsection (b) of EAJA. Furthermore, because the Court finds the Class's EAJA application contains various defects, and the position of the United States was "substantially justified," the Court also rejects the Class's petition for costs and fees under Subsection (d).

> *i. The Class is Not Entitled to Award of Fees or Expenses Under 28 U.S.C. § 2412(b).*

The Class argues it is entitled to attorney's fees and expenses under Subsection (b) because it satisfies one or more common law exceptions to the "American Rule," which disfavors fee-shifting. (Pl.'s Brief at 18). The United States responds that the creation of a common fund does not shift the costs of litigation to the losing party, therefore the Class is not entitled to an additional award to the common fund to cover fees and costs. (Def.'s Resp. at 8–9). Further, the United States argues that the Class has failed to show that the United States committed any act in bad faith. (*Id.* at 10). Thus, the United States concludes that neither recognized common law exception to the "American Rule" is implicated here, and consequently, the Class is not entitled to fees or expenses under § 2412(b). As explained below, the Court agrees with the United States that the Class is not entitled to any award under § 2412(b).

To determine whether § 2412(b) allows the Class to recover additional fees, the Court must first look to the statute. *Consumer Prod. Safety Comm'n v. GTE Sylvania*, 447 U.S. 102, 109 (1980) ("[T]he starting point for interpreting a statute is the language of the statute itself."). Section 2412(b) provides:

> Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. *The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law* or under the terms of any statute which specifically provides for such an award.

(emphasis added).

This statutory formulation contemplates common law exceptions to the "American Rule," the idea that generally each party bears its own expenses. *See generally Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247–60 (1975) (describing the history of the "American Rule" and statutes that maintain recognized common law exceptions); *see also Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251–53 (2010). Common law exceptions recognized by Congress in drafting this statute included the "common fund" and "bad faith" exceptions. *Gavette v. Office of Pers. Mgmt.*, 808 F.2d 1456, 1460 (Fed. Cir. 1986) (quoting H.R. No. 96-1418 at 17). The Court agrees with the United States that neither common law exception permits the Class to recover fees or expenses in this case.

> *1. The Common Fund Exception Does Not Permit Recovery.*

The "common fund" exception to the American Rule is rooted in traditional notions of equity and derives from the equitable power of the courts under the doctrines of *quantum meruit* and unjust enrichment. *Haggart v. Woodley*, 809 F.3d 1336, 1352 (Fed. Cir. 2016) (citing *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 128 (1885) and *Trustees v. Greenough*, 105 U.S. 527, 532 (1881)). Under the common fund doctrine, "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to [reasonable attorney's

fees] from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). A common fund exists "when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Id*. at 479. The United States expressly concedes that a "'common fund' [in the amount of $637,347.37] exists in this case." (Def.'s Resp. at 9).

While acknowledging the existence of a "common fund," the United States correctly points out that attorney's fees and expenses may only be recovered from the fund; the exception does not permit an additional award to the fund earmarked for fees and expenses. (*Id*. at 8 (citing *Knight v. United States*, 982 F.2d 1573, 1579 (Fed. Cir. 1993) ("The common fund theory does not impose additional liability on the losing defendant.")). Furthermore, the existence of a common fund does not automatically establish that attorney's fees and expenses are recoverable from that fund. *Haggart*, 809 F.3d at 1356 ("[T]he fact that a common fund has been created does not mean that the common fund doctrine must be applied in awarding attorney's fees."). Recovery is limited to those situations where an inequity is borne by counsel or the litigant. *Haggart*, 809 F.3d at 1357 ("The *sine qua non* of the common fund doctrine is that some inequity must exist."). In a class action, such inequity exists where some opt-in plaintiffs are not contractually obligated to contribute to the costs of the litigation because they have not entered separate fee agreements with class counsel. *Id*. at 1354; *see also Kane County, Utah v. United States*, 145 Fed. Cl. 15, 18 (2019) (citing *Haggart)*. At oral argument, Class counsel represented there are no contingency fee arrangements with members of the class. (Or. Arg. Trans. at 13, ECF No. 343). Therefore, inequity arises from Class counsel's representation from the inception of litigation to its conclusion, and the advancement of litigation expenses by Class counsel.

However, the common fund has been disbursed to the class members. (Order Permitting Disb., ECF No. 323). The Class now seeks an *additional* award to the common fund earmarked for fees and expenses. (Pl.'s Brief at 49, (stating that the Class is "entitled to an award to be paid by defendant of an attorney's fee . . . to be *paid to the Common Fund*") (emphasis added)). This request misapprehends the purpose of the common fund exception. *See Haggart*, 809 F.3d at 1352. Counsel eschews payment of fees and expenses from the common fund. (Or. Arg. Trans. at 53–54). Because of the sums involved, if the common fund doctrine applied it would "result in the Plaintiffs getting absolutely nothing." (*Id.*). This the Court would not approve. Given that an award of attorney fees under the common fund doctrine cannot be an additional award but must instead be paid from the common fund, the relief sought by counsel is unavailable.

### 2. *The Bad Faith Exception Does Not Permit Recovery*.

The Class argues that the United States' conduct amounts to bad faith, such that an exception to the American Rule permits recovery of attorney's fees and expenses under § 2412(b). (Pl.'s Brief at 33–34). In support of its assertion of bad faith, the Class contends that the United States refused to "do the right thing" and consistently and aggressively resisted its "fiscal responsibility." (*Id*. at 36–37). The Class argues that the resulting twenty-three-and-one-half year delay from the accrual of the underlying claims subjects the United States to a finding of bad faith thus justifying application of that exception to the American Rule. (*Id*. at 32–43). The United States counters that the Class's "bad faith" argument relies on an erroneous assertion of meritlessness. (Def.'s Resp. at 12). Specifically, the United States points out that the Class improperly seeks § 2412(b) recovery based on prelitigation conduct and cannot demonstrate any

8

litigation activity conducted in bad faith. (*Id*. at 13–14). The Court agrees with the United States that the bad faith exception does not apply.

The "bad faith" exception to the American Rule arises from the inherent powers of courts "to manage their own affairs to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–631 (1962)). "[A] court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Chambers*, 501 U.S. at 45–46 (quoting *Alyeska Pipeline Serv. Co.*, 421 U.S. at 258–59). The bad faith exception applies to a full range of litigation abuses and depends not on which party wins, but on the parties' conduct during the litigation. *Id*. at 53. Consequently, because the focus is on litigation conduct, "fee awards cannot be assessed based on claims of bad faith primary conduct[,]" *i.e.* conduct of a party prior to litigation. *Centex Corp. v. United States*, 486 F.3d 1369, 1371–72 (Fed. Cir. 2007) (citing eight other circuits articulating a similar standard). To the extent that the Class invites the Court to consider the conduct of the VA prior to litigation, (Pl.'s Brief. at 37), the Court is unwilling to do so.

Though the Class consistently complains of the duration of this litigation, a cursory review of the prior proceedings demonstrates that both parties routinely sought enlargements of time which contributed to delay.[9] Other factors which contribute to delay, such as the duration of an appeal or other circumstances uniquely within the control of the courts, are neutral and should afford no adverse inference against either party. In addition, though the Class originally asserted claims relating to the cost of living adjustments (COLA), locality pay adjustments, Sunday premium pay, evening and weekend pay, and prejudgment interest, the United States prevailed on the bulk of these claims in this Court and on appeal, but only after more than a decade of litigation. *See generally*, *Athey V*, 908 F.3d 696 (discussing the extensive litigation history of this dispute). Considering the complete record, an exercise of the Court's inherent powers is unwarranted. Nothing within the record suggests bad faith on the part of the United States after litigation commenced.

> ii. *The Class is Not Entitled to Award of Fees or Expenses Under 28 U.S.C. § 2412(d).*

A prevailing party may be entitled to attorney's fees and expenses under § 2412(d) where the position of the United States was not "substantially justified" and no special circumstances are present which would make such an award unjust. These conditions may be found in § 2412(d)(1)(A) and (d)(1)(B), which provide:

---

[9] By the Court's reckoning, the parties sought enlargements of time no less than 35 times. Of these, the United States sought 25 while the Class sought nine. (*See* ECF Nos. 3, 18, 20, 27, 36, 52, 57, 66, 70, 75, 79, 85, 87, 89, 119, 136, 168, 172, 201, 215, 219, 221, 223, 225, 268, 271, 273, 275, 277, 279, 281, 293, 308, 327, 329). Moreover, on one occasion, the Court imposed a stay of proceedings following a requested enlargement of time to pursue settlement of the attorney fees dispute. (ECF No. 309; Order Lifting Stay, ECF No. 322). Significantly, the Class opposed only a single request for delay. (*See* ECF 119). While this history indicates a significant degree of collegiality, it does not support a notion of unfair prejudice arising from vexatious delaying tactics.

> **(d)(1)(A)** Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.
>
> **(B)** A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.

Stated differently, recovery of an award under the statute has five requirements, neatly summarized in *WHR Grp., Inc. v. United States*, 121 Fed. Cl. 673, 676 (2015):

> (1) the fee application must be submitted within 30 days of final judgment in the action and be supported by an itemized statement; (2) at the time the civil action was initiated, the applicant, if a corporation, must not have been valued at more than [the applicable] net worth [threshold] or employed more than 500 employees; (3) the applicant must have been the "prevailing party" in a civil action brought by or against the United States; (4) the Government's position must not have been "substantially justified;" and (5) there cannot exist any special circumstances that would make an award unjust.

The burden is on the fee petitioner to satisfy the first three requirements, then the burden shifts to the United States to show its position was "substantially justified" or that special circumstances make an award unjust. *See Impresa Construzioni Geom. Domenico Garufi v. United States*, 100 Fed. Cl. 750, 759 (2011) and *Helfer v. West*, 174 F.3d 1332, 1336 (Fed. Cir. 1999).

In its fee application, the Class commits multiple errors which ultimately preclude recovery under § 2412(d). For example, the Class has failed to affirmatively plead its members satisfy the net worth requirement. While acknowledging this defect, the United States declines to contest the eligibility of any class member under the net worth requirement. (Def.'s Resp. at 20–21). Instead, the United States argues that the Class is ineligible for award under § 2412(d) because: (1) the United States' position was substantially justified; (2) the Class has failed to submit a *contemporaneous* itemized statement; and (3) the Class is the "prevailing party" on only a narrow issue. (*Id*. at 21). Though counsel would ordinarily be permitted an opportunity to rectify its failure to provide contemporaneous records, as explained below, the Court finds the

10

position of the United States was substantially justified, thus there is no need for additional filings.

### 1. The Position of the United States was Substantially Justified.

Even if the Class had properly pleaded that its members met the net worth requirements, properly submitted contemporaneous itemized records supporting its fee application, and given proper notice to the class members, the United States has demonstrated its position was substantially justified. Thus, the Class's fee petition must fail.

The "position" of the United States "refers to the government's position throughout the dispute, including not only its litigating position but also the agency's administrative position." *Doty v. United States*, 71 F.3d 384, 386 (Fed. Cir. 1995), *as modified,* 109 F.3d 746 (Fed. Cir. 1997). "[T]rial courts are instructed to look at the entirety of the government's conduct and make a judgment call whether the government's overall position had a reasonable basis in both law and fact." *Chiu v. United States*, 948 F.2d 711, 715 (Fed. Cir. 1991). This judgment call is "quintessentially discretionary in nature" and courts "must be wary not to redistribute these weights among different positions unless a serious error in judgment has been made." *Id.* at 715 n.4. So long as the United States has offered a "plausible defense, explanation, or substantiation for its action[,]" fee awards under EAJA should be denied. *See Griffin & Dickson v. United States*, 21 Cl. Ct. 1, 6–7 (1990).

Whether the position of the United States was "substantially justified" is not determined solely by who won and lost on the merits. *See Pierce*, 487 U.S. at 569 ("Conceivably, the Government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified, yet lose."). To avoid liability for an EAJA fee award under § 2412(d), the United States' position must merely be "justified to a degree that could satisfy a reasonable person." *Id.* at 565.[10] Although the Class summarily alleges the position of the United States was not substantially justified, (Pl.'s Mot. at 2), the Class did not point the Court to the conduct that it might consider making that determination.[11]

Throughout its briefing, the Class's primary complaints about the position of the United States seem to focus on (1) the delay in obtaining relief for class members and (2) the failure of the United States to correct the procedures which led to class members failing to receive compensation to which they were entitled. (*See* Pl.'s Brief). In addition to providing plausible explanations or defenses to these criticisms, the United States submits that its "string of successes" weighs heavily in favor of finding substantial justification for its position. (*See* Def.'s Resp. at 25).

---

[10] There is, however, an alternative view. *Procopio v. Wilkie*, No. 2017-1821, 2019 WL 8641304, at *1 (Fed. Cir. Sept. 25, 2019), *cert. denied,* No. 19-819, 2020 WL 2105225 (U.S. May 4, 2020) (O'Malley, J. concurring) (Arguing for "a standard that recognizes that the statutory language [of EAJA] requires something more than reasonableness.").

[11] During Oral Argument, the Court specifically requested Class counsel to offer records cites to support its position. (Or. Arg. Trans. at 15–17). In response, the Court received little more than a general recitation of the procedural history of the case.

First, as the Court previously noted, (*supra* at n.9), the parties jointly agreed or acquiesced to numerous enlargements of time in this case. Litigation was also briefly stayed following a renewed attempt to extend existing deadlines. (ECF No. 309). The Class was entitled to voice objections or frustrations at any time yet chose not to, acquiescing to the sometimes-torpid pace of litigation. The Court sees no reason why agreed-upon delays, or other neutral factors affecting the progress of this case, should prejudice the United States.

Second, the Class admits that, prior to this lawsuit, the VA's failure to properly compensate the class members "could be fairly attributed to an innocent mistake of process within an extraordinarily large governmental institution."[12] (Pl.'s Brief at 34). The Class contends that this "innocent mistake" should have been rectified once highlighted by federal litigation. (*Id*.). But, importantly, the United States *did* attempt to rectify this mistake. In 2011, the United States explained to the Court that in 2006, the VA began the process of migrating its payroll systems to a new system, and during that process, it "examined the [new] system to ensure it was properly paying separated VA employees their accrued and accumulated lump-sum annual leave payments[.]" (ECF No. 176 at 2–3). During this examination, the United States "discovered that some of the VA employees who had been paid through the [new system] may not have been paid their supplemental payment" and "approached plaintiffs' counsel to determine if VA could, with the approval of the court, pay those employees their supplemental payment" but "[p]laintiffs' counsel declined the offer." (*Id*. at 3). In this regard, plaintiffs' counsel resisted the United States' efforts to resolve this dispute by "pay[ing] those employees and remov[ing] them from the class." (*See id*.). In its reply brief, the Class makes no attempt to rebut or explain these efforts by the United States. (*See* ECF No. 331). These attempts by the United States would surely satisfy a reasonable person that the VA was endeavoring to make its employees whole. But for the reticence of Class's counsel, many VA employees may have received compensation nearly a decade ago.

Finally, the United States establishes that its string of successes indicates its litigation posture was substantially justified. Although success or failure on the merits is not always determinative, in cases such as this one involving multiple issues and decisions, "a string of losses can be indicative; and even more so a string of successes." *Pierce*, 487 U.S. at 569. The United States prevailed on multiple key issues, including whether night premium pay, weekend additional pay, and Sunday pay after October 1, 1997 should be included in class members' back

---

[12] Even the Class's expert, a career VA employee in human resources, agrees that prior to the implementation of the new system, VA policy was to promptly correct lump sum payment errors:

> Whenever we discovered that someone was not being paid correctly, we immediately corrected the error and informed payroll to process any retroactive pay adjustments. In such circumstances, I never sought permission from senior leadership even in cases where the correction covered multiple employees because I understood that my action was in line with official policy at the agency to correct such payment errors retroactively.

(Aff. of D. Kowalski at 3, ECF No. 324-5) (emphasis added). While this method was certainly was not optimal, it does indicate that the United States was at least somewhat responsive to its statutory obligations.

lump-sum pay. *Athey I*, 78 Fed. Cl. 157. The United States also prevailed on whether non-General Schedule employees should be included in the class. (ECF No. 42). And the United States prevailed on the issue of class members' entitlement pre-judgment interest under the Back Pay Act. (ECF No. 242). This drumbeat of favorable decisions for the United States on multiple key issues, both in the trial court and on appeal, strongly indicates the United States' position was "justified to a degree that could satisfy a reasonable person." *See Pierce*, 487 U.S. at 569. It would be difficult to acknowledge this record of successes in both the trial court and the Federal Circuit but conclude the "overall position" of the United States did not have a "reasonable basis" in law and fact. *See Chiu*, 948 F.2d at 715. Therefore, the Court finds that the position of the United States was "substantially justified" under § 2412(d). Consequently, the Class is not entitled to recover fees and expenses under EAJA.

### 2. The Class Failed to Submit a Contemporaneous Itemized Statement.

In addition to the position of the United States being substantially justified, the Class has failed to submit contemporaneous itemized statements, a prerequisite to recovery under EAJA. The Federal Circuit has unequivocally held that a party seeking fees and expenses under EAJA must submit contemporaneous records to support the sums it seeks to recover. *Naporano Iron & Metal Co. v. United States*, 825 F.2d 403, 404 (Fed. Cir. 1987).

> The court needs *contemporaneous* records of exact time spent on the case, by whom, their status and usual billing rates, as well as a breakdown of expenses such as the amounts spent copying documents, telephone bills, mail costs and any other expenditures related to the case. In the absence of such an itemized statement, the court is unable to determine whether the hours, fees and expenses, are reasonable for any individual item.

*Id*. (emphasis added). Spreadsheets of time entries and expenses created years after the work was performed or the expenses accrued do not suffice. *See Prowest Diversified, Inc. v. United States*, 40 Fed. Cl. 879 (1998) (rejecting summary itemization and requiring fee petitioners to submit monthly billing records to satisfy documentation component).

The Class has submitted an itemized statement that fails to satisfy the contemporaneity requirement. (*See* Pl.'s Mot., Ex. 1). The Class's fee and expense statements submitted appear to have been generated solely for the instant fee dispute, unaccompanied by an affidavit or otherwise satisfying the contemporaneous requirement, and thus cannot be considered "contemporaneous." (*See* Pl.'s Mot., Ex. 1; Ex. 2; Ex. 3). Therefore, the Court concludes the Class has failed to carry its burden to satisfy the first requirement of § 2412(d). Even so, were it not for substantial justification of the United States' positions, the Class would be permitted to supplement the record in order to alleviate this defect. *See Forestwood National Bank of Dallas v. United States*, 852 F.2d 1294 (Fed. Cir. 1988) (stating that trial courts have broad discretion to permit amended application in EAJA petition regarding attorney hours expended). However, given the Court's determination that the position of the United States was substantially justified, any supplement would be in vain.

Agreeing with the United States that its position was substantially justified, the Court has no choice but to conclude that the Class is not entitled to an award of fees and expenses under § 2412(d). The Class's failure to comply with the procedural requirements of EAJA only bolsters this conclusion. While the consequences of this result are unquestionably harsh, the

responsibility for satisfying the requirements of EAJA lies solely with the Class. The Court enjoys no liberty to cure defects in an EAJA application to avoid a result mandated by law, no matter how severe the consequences may be. *Fid. Const. Co. v. United States*, 700 F.2d 1379, 1386 (Fed. Cir. 1983) ("Although the EAJA lifts the bar of sovereign immunity for award of fees in suits brought by litigants qualifying under the statute, it does so only to the extent explicitly and unequivocally provided.").

### 3. The Class was the Prevailing Party for the Purposes of § 2412(d).

An EAJA fee petitioner must demonstrate it is the "prevailing party" to shift the burden to the United States. A "prevailing party" must show it "receive[d] at least some relief on the merits of [its] claim[.]" *Hewitt v. Helms*, 482 U.S. 755, 760 (1987). A settlement in favor of the fee petitioner evinces success on the merits of at least some of its claims. *See Maher v. Gagne*, 448 U.S. 122, 129 (1980) ("The fact that respondent prevailed through a settlement rather than through litigation does not weaken her claim to fees."). The key consideration is whether there has been a "material alteration of the legal relationship [between] the parties[.]" *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989).

The United States concedes the Class prevailed on the issue of General Schedule employees' entitlement to COLA and locality pay adjustments not included in their lump-sum payouts. (Def.'s Resp. at 22 (citing Judgment, ECF No. 295)). However, the United States' attempt to frame this win for the Class as "narrow" is unpersuasive. The Class secured a settlement in excess of $600,000 for its members, which the Court approved, materially altering the parties' legal relationship. The Class is clearly a "prevailing party" for the purposes of § 2412(d). That determination, however, does not create a presumption that the Class is entitled to recover attorney's fees. *United States v. Hallmark Construction Co.*, 200 F.3d 1076, 1079 (Fed. Cir. 2000) (citing *Marcus v. Shalala*, 17 F.3d 1033, 1036 (7th Cir. 1994)).

### III. Conclusion

For the reasons stated above, the Class's petition for attorney fees and expenses pursuant to EAJA is **DENIED**. Additionally, the Class's first motion for attorney's fees (ECF No. 304) is **DENIED AS MOOT**. The parties are **DIRECTED** to file a status report on or before August 20, 2020 describing further proposed proceedings in this case.

**IT IS SO ORDERED.**

s/    David A. Tapp
DAVID A. TAPP, Judge